```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X
NECA-IBEW HEALTH & WELFARE FUND,
Individually and On Behalf of All
Others Similarly Situated,

                Plaintiff,            OPINION

        -against-                     08 Civ. 10783 (MGC)


GOLDMAN, SACHS & CO., et al.,

                Defendants.

----------------------------------X
```

APPEARANCES:

       ROBBINS GELLER RUDMAN & DOWD LLP
       Attorneys for Plaintiff
       655 West Broadway, Suite 1900
       San Diego, California 92101

       By:   Arthur C. Leahy, Esq.
             Thomas E. Egler, Esq.
             Scott H. Saham, Esq.
             Susan G. Taylor, Esq.
             Nathan R. Lindell, Esq.
             Matthew I. Alpert, Esq.

       ROBBINS GELLER RUDMAN & DOWD LLP
       Attorneys for Plaintiff
       58 South Service Road, Suite 200
       Melville, New York 11747

       By:   Samuel H. Rudman, Esq.
             David A. Rosenfeld, Esq.
             Carolina C. Torres, Esq.
             Jarrett S. Charo, Esq.

       CAVANAGH & O'HARA
       Attorneys for Plaintiff
       407 East Adams Street
       Springfield, Illinois 62701

       By:   Patrick J. O'Hara, Esq.

       SULLIVAN & CROMWELL LLP

```
          Attorneys for Defendants
          125 Broad Street
          New York, New York 10004

          By:  Richard H. Klapper, Esq.
               Theodore Edelman, Esq.
               Michael T. Tomaino, Jr., Esq.
               Harsh N. Trivedi, Esq.
               Maya Krugman, Esq.
```

**Cedarbaum, J.**

NECA-IBEW Health & Welfare Fund ("NECA") sues Goldman, Sachs & Co., Goldman Sachs Mortgage Co. ("GSMC"), GS Mortgage, and three individuals (collectively, "Defendants") for violations of Sections 11, 12(a)(2), and 15 of the Securities Act of 1933 (the "1933 Act"), in connection with the sale of mortgage-backed certificates pursuant to offering documents containing allegedly misleading information.

Defendants have moved to dismiss the Third Amended Complaint in its entirety pursuant to Federal Rules of Civil Procedure 12(b)(1) for lack of standing and 12(b)(6) for failure to state a claim.  I denied the motion with respect to the claims brought under Sections 12(a)(2) and 15 of the 1933 Act in open court on September 22, 2010, and reserved decision on whether the claim for violation of Section 11 should be dismissed for failure to allege a cognizable injury.  For the reasons that follow,

2

Defendants' motion to dismiss the claim for violation of Section 11 is granted.

## THE COMPLAINT

The following facts are alleged in the complaint or are incorporated by reference.

On October 15, 2007, NECA purchased GSAA Home Equity Trust 2007-10 Asset-Backed Certificates, Class A2A, with a face value of $390,000, directly from Goldman Sachs in the initial public offering. NECA later purchased GSAA Home Equity Trust 2007-5 Asset-Backed Certificates, Class 1AV1, with a face value of $49,827.56 (together, with the Class A2A GSAA Home Equity Trust 2007-10 Asset-Backed Certificates, the "Certificates").

Goldman Sachs was an underwriter in the sale of these certificates. GSMC purchased and pooled the mortgage loans underlying the certificates from various originators and was the sponsor of the offerings. GS Mortgage securitized the loans, depositing them in New York common law trusts and issuing asset-backed certificates through those trusts.

The Certificates entitle the holder to monthly distributions of interest, principal, or both. The Prospectus Supplements to the Registration Statement warn investors that the Certificates may not be liquid:

> <u>Your Investment May Not Be Liquid</u>. The underwriter intends to make a secondary market in the offered certificates, but it will have no obligation to do so.

> We cannot assure you that such a secondary market will develop or, if it develops, that it will continue. Consequently, you may not be able to sell your certificates readily or at prices that will enable you to realize your desired yield.

(2007-10 Prospectus Supplement at S-35; 2007-5 Prospectus Supplement at S-50.)

NECA continues to hold the Certificates it purchased. According to the complaint, "[t]here has been a market for the resale of investments like the Certificates since at least 2007," and NECA "would have netted, at most, between 35 and 45 cents on the dollar" in a hypothetical sale on the secondary market at the time of suit. (Complaint ¶ 93, emphasis added.) The complaint does not allege that NECA has failed to receive any monthly distributions due under the Certificates, but rather that "the holders of the Certificates are exposed to much more risk than the Offering Documents represented with respect to both the timing and absolute cash flow to be received." (Complaint ¶ 6.)

DISCUSSION

I. Standard on a Motion to Dismiss

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). The plaintiff bears the burden of establishing subject matter jurisdiction, and a court may consider evidence outside the

4

pleadings in evaluating a motion to dismiss brought under Rule 12(b)(1).  Id.

By contrast, a court adjudicating a motion to dismiss under Rule 12(b)(6) must accept the allegations of the complaint as true and draw all reasonable inferences in favor of the plaintiff.  See Gryl ex rel. Shire Pharm. Grp. PLC v. Shire Pharm. Grp. PLC, 298 F.3d 136, 140 (2d Cir. 2002).  Nonetheless, to survive a motion to dismiss, the complaint must contain factual allegations "rais[ing] a right to relief above the speculative level."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. E. 2d 929 (2007).  A complaint may not simply offer "'naked assertion[s]' devoid of 'further factual enhancement.'"  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949, 173 L. E. 2d 868 (2009) (quoting Twombly, 550 U.S. at 557).  Instead, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Id. (quoting Twombly, 550 U.S. at 570).  In considering whether the plaintiff has made a plausible claim for relief, a court may consider as part of the complaint any statement or documents incorporated in it by reference, as well as documents "integral" to it.  See Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d. Cir. 2002).

**II.  Cognizable Injury Under Section 11**

Section 11 authorizes a claim by purchasers of registered securities against issuers and other enumerated parties when false or misleading information is included in a registration statement.  See 15 U.S.C. § 77k (2006); Huddleston v. Herman & MacLean, 459 U.S. 375, 381, 103 S. Ct. 683, 74 L. E. 2d 548 (1983).  At the pleading stage, "[i]f a plaintiff purchased a security issued pursuant to a registration statement, he need only show a material misstatement or omission to establish his prima facie case."  Id. at 382.  Although NECA is not required to plead damages under Section 11, it fails to state a claim if the allegations of the complaint do not support any conceivable statutory damages.  See, e.g., In re Initial Pub. Offering Sec. Litig., 241 F. Supp. 2d 281, 351 (S.D.N.Y. 2003) (Scheindlin, J.) (dismissing claims of sellers who sold securities above the offering price for failure to allege cognizable damages).  Moreover, NECA lacks standing to sue if it fails to allege an injury in fact.  See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992).

Section 11(e) establishes the following measure of damages for plaintiffs:

> The suit authorized under subsection (a) of this section may be to recover such damages as shall represent the difference between the amount paid for the security (not exceeding the price at which the security was offered to the public) and (1) the value thereof as of the time such suit was brought, or (2) the price at which such security shall have been

6

>            disposed of in the market before suit, or (3) the price
>            at which such security shall have been disposed of
>            after suit but before judgment if such damages shall be
>            less than the damages [as calculated under
>            subsection (1).]

15 U.S.C. § 77k(e).  Section 11(e) makes the absence of loss causation an affirmative defense.  Id.

NECA contends that it has alleged an injury and damages cognizable under the statute by claiming that "the value of the Certificates has diminished greatly since their original offering, as has the price at which members of the Class can dispose of them in the secondary market for these Certificates." (Complaint ¶ 92.)  NECA alleges that there has been a secondary market for "investments like the Certificates since at least 2007," and that NECA "would have netted, at most, between 35 and 45 cents on the dollar" in a hypothetical sale at the time of suit.  (Complaint ¶ 93, emphasis added.)  NECA further claims that the value of the Certificates has declined because holders are exposed to greater risk regarding future cash flow.

Defendants argue that insofar as NECA does not allege a termination of monthly distributions due under the Certificates that it purchased, NECA has not suffered an injury cognizable under Section 11.  Defendants contend that NECA may not rely on any problem in the secondary market to allege an injury because it was expressly warned in the Prospectus Supplements that it could not rely on the salability of these Certificates.

7

Defendants argue that the allegations regarding the diminution in the "value" of the Certificates misconceive the nature of mortgage-backed securities because investors only suffer loss when they do not receive the "pass-through" cash flow payments to which they are entitled.  Because NECA continues to receive those payments, it has suffered no injury cognizable under Section 11 according to Defendants, and NECA's claim is premature.

NECA responds that Section 11(e) permits recovery based upon the decline in "value" of a security, and that its assertion that it could sell only at a loss supports its allegation that the value of the Certificates has declined, notwithstanding the warning regarding the potential illiquidity of the Certificates. NECA relies on New Jersey Carpenters Health Fund v. DLJ Mortgage Capital, Inc., No. 08 Civ. 5653 (PAC), 2010 WL 1473288 (S.D.N.Y. Mar. 29, 2010), in support of its argument that the continuing receipt of distributions under the Certificates does not render its claim premature.  In DLJ Mortgage, Judge Crotty permitted a Section 11 claim to proceed despite the plaintiff's continued receipt of periodic payments due under mortgage-backed certificates.  In that case, the plaintiff alleged a loss of market value and the "[p]laintiff may have purchased the Certificates expecting to resell them, making market value the critical valuation marker for Plaintiff." Id. at *5.  NECA

8

contends that this reasoning applies with equal force to its own allegations regarding value.

In this case, however, the Certificates were issued with the express warning that they might not be resalable.  This is unsurprising given the structure of asset-backed securities, which are "primarily serviced by the cash flows of a discrete pool of receivables or other financial assets, either fixed or revolving, that by their terms convert into cash within a finite time period."  17 C.F.R. § 229.1101(c).  Because NECA made an investment that it knew might not be liquid, it may not allege an injury based upon the hypothetical price of the Certificates on a secondary market at the time of suit.

Even assuming, arguendo, that a decline in market price could provide factual support for the contention that the Certificates have declined in value, the complaint lacks any factual enhancement of the bare assertion that a secondary market for their Certificates actually exists.  The complaint merely alleges that there has been a secondary market for "investments like the Certificates since at least 2007."  (Complaint ¶ 93, emphasis added.)  The complaint also fails in turn to allege any facts regarding the actual market price for the Certificates at the time of suit.  Thus, even if NECA could raise a cognizable

9

injury by claiming a decline in market price, it has failed to provide factual enhancement of that assertion.[1]

NECA next argues that the "value" of the Certificates has declined based upon their expected cash flow.  The complaint alleges that "the holders of the Certificates are exposed to much more risk than the Offering Documents represented with respect to both the timing and absolute cash flow to be received." (Complaint ¶ 6.)  NECA argues that the risk of diminished cash flow in the future establishes a present injury cognizable under Section 11.  But Section 11 does not permit recovery for increased risk.  Instead, to allege an injury cognizable under Section 11, NECA must allege the actual failure to receive payments due under the Certificates.  Although NECA has had three opportunities to amend its complaint, it has never made that allegation.

---

[1] Moreover, assuming further that NECA provided factual enhancement supporting the allegation of a decline in market price, it would not ultimately be able to recover for the decline attributable to principal payments it has already received. Under Section 11(e), however, the burden would be on Defendants to make that showing.

10

**CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss the claim for violation of Section 11 is granted.

SO ORDERED.

Date:    New York, New York
         October 14, 2010

                                    S/_____
                                       MIRIAM GOLDMAN CEDARBAUM
                                       United States District Judge