# SULLIVAN & CROMWELL LLP

TELEPHONE: 1-212-558-4000
FACSIMILE: 1-212-558-3588
WWW.SULLCROM.COM

*125 Broad Street*
*New York, NY 10004-2498*

LOS ANGELES • PALO ALTO • WASHINGTON, D.C.

FRANKFURT • LONDON • PARIS

BEIJING • HONG KONG • TOKYO

MELBOURNE • SYDNEY

July 1, 2014

*Via ECF and FedEx*

The Honorable Miriam Goldman Cedarbaum,
   U.S. District Judge,
      United States District Court, Southern District of New York,
         Daniel Patrick Moynihan U.S. Courthouse,
           500 Pearl Street,
              New York, New York 10007-1312.

        Re:    *NECA-IBEW Health & Welfare Fund* v.
                  <u>*Goldman, Sachs & Co., et al.*</u>, No. 08 Civ. 10783 (MGC)

Dear Judge Cedarbaum:

        I write on behalf of Defendants in the above-captioned action in advance of the July 8 conference with the Court regarding the schedule for discovery and other pretrial matters.

        As the Court directed during the status conference on February 25, 2014, the parties have met and conferred regarding a proposed Rule 26(f) Scheduling Order for the action, but have been unable to agree on three important elements of the schedule: (1) whether the parties should exchange "merits" expert reports simultaneously, rather than the usual practice, where plaintiff serves its reports and defendants thereafter serve their responsive reports; (2) whether non-party fact discovery may remain open after Plaintiff serves its initial "reunderwriting" expert reports concerning the origination of the loans underlying the RMBS securitizations at issue, to enable the parties to obtain non-party evidence responsive to factual assertions disclosed for the first time in those expert reports; and (3) whether the schedule for Plaintiff's anticipated class certification motion, including the time for Defendants' responsive briefs and expert reports, and depositions of both sides' class certification experts, should be set now, before Plaintiff has made its motion and disclosed its supporting expert reports, or negotiated by the parties after Plaintiff has served its motion and expert reports. The parties' respective positions on these issues are summarized below.[1] We also enclose for the Court's convenience Defendants' proposed Scheduling Order.

---

[1] The parties also disagree about the necessity of initial disclosures pursuant to Federal Rule of Civil Procedure 26(a)(1). Defendants' position is that initial disclosures are "not appropriate in this action," Fed. R. Civ. P. 26(a)(1)(C), including because Defendants have already produced nearly 670,000 pages of documents comprising,

The Hon. Miriam Goldman Cedarbaum                                                    -2-

***Expert Reports on Merits Issues.*** Plaintiff's position is that the parties should simultaneously exchange their initial reports, and then simultaneously exchange expert rebuttal reports. This is illogical, unfair and unusual, and all but guarantees that the parties' reports, like "ships passing in the night," fail to engage on disputed matters. Plaintiff bears the burden of proof on the primary issues in the action, *e.g.*, whether the offering documents for seven separate RMBS offerings "contain[ed] materially false and misleading statements and omissions concerning th[ose] Certificates, and the loans underlying them." (FAC ¶ 2.) Defendants cannot meaningfully prepare expert reports on these issues until Plaintiff identifies in its expert reports which of the nearly 15,000 underlying loans allegedly were materially misrepresented and the bases for those contentions. It would be inefficient and unfair to require Defendants to "shoot in the dark" by submitting expert reports concerning loan characteristics and disclosures without knowing which loans and disclosures plaintiff is challenging and the bases for plaintiff's assertions. Plaintiff accuses Defendants of seeking "an unfair advantage." (Dkt. 173 at 3.) This is not so. Rather, Defendants request only the more sensible, efficient and fair practice: for Plaintiff to serve its opening expert reports, followed a reasonable time later by Defendants' service of their reports, after which Plaintiff may serve rebuttal reports. This is the prevalent practice in RMBS and other securities law cases.

***Non-Party Fact Discovery.*** Plaintiff's position is that all fact discovery, including from non-parties, must close before plaintiff serves its "reunderwriting" expert reports identifying the loans it claims were materially misrepresented in the offering documents, and the ways in which those loans allegedly were underwritten in violation of the disclosed originator guidelines. Plaintiff's only justification for this position appears to be a desire to have "an orderly schedule of closing fact discovery prior to the submission of expert reports." (Dkt. 173 at 2-3.) Defendants' position is that non-party fact discovery must remain open for a period of time after plaintiff serves its reunderwriting expert reports so the parties have an opportunity to obtain evidence from non-parties relating to factual assertions in those reports. This procedure has been followed in other RMBS cases, and has proven effective in narrowing disputed loan underwriting issues.

Non-party discovery can help significantly reduce the scope of the parties' disputes. Although plaintiff's case is predicated upon alleged misrepresentations in the offering documents concerning the characteristics and origination of the nearly 15,000 individual mortgage loans underlying the seven offerings at issue here, plaintiff's complaint does not identify a single loan that allegedly was materially misrepresented or underwritten in violation of the originator's guidelines. In every other RMBS case in which defendants have been involved that has proceeded to expert discovery, the plaintiff has submitted "reunderwriting" expert reports that identify, based on the experts' review of the loan files and related documents, alleged deficiencies in the origination of a sample of the underlying loans. Given that Defendants were

---

among other things, working group lists, organizational charts and e-mails of certain Goldman Sachs employees who worked on the RMBS securitizations at issue in the case. Given that Defendants are already well into their substantive document production and initial disclosures would impose additional burdens on them as they continue producing documents, Plaintiff's rote citation to Rule 26(a)(1) (Dkt. 173 at 1) cannot justify requiring initial disclosures here.

The Hon. Miriam Goldman Cedarbaum                                              -3-

not the originators of all but a tiny number of the loans at issue here, the loan files and related origination documents—the key materials for assessing plaintiff's claims of misrepresentations and underwriting "defects"—are in the possession of unaffiliated non-parties.

Experience in other cases has shown that many of the alleged underwriting "defects" cited by plaintiffs' experts are based on assertions that (a) various required documents were missing from the current version of originators' or servicers' loan files, (b) appraisals were done improperly; and (c) borrowers misrepresented certain information to their lenders, such as their income or their intent to occupy the mortgaged home. Experience in these cases has also shown that, after defendants have notice of the plaintiff's experts' specific contentions regarding "missing" documents and other alleged underwriting "defects," the parties have engaged in productive discovery from non-parties to verify the accuracy of those contentions. Such discovery has shown, for example, that allegedly "missing" documents were, in fact, not missing from the loan file at the time of loan origination. Defendants have also been able to obtain discovery from non-party appraisers and borrowers relating to plaintiffs' experts' allegations. Plaintiff contends that "all discovery materials collected by the parties will be available to both plaintiff and defendants." (Dkt. 173 at 2.) But this ignores that it would be impossible for Defendants to conduct this non-party discovery without Plaintiff's experts first identifying the loans they claim have origination defects and describing those defects. If non-party discovery closes before Defendants receive plaintiff's re-underwriting reports, Defendants will have no opportunity to obtain discovery vital to their defenses and to the orderly and fair adjudication of the action.

***Schedule for Class Certification Briefing and Expert Discovery.*** Plaintiff's position is that the schedule should be set now for class certification briefing and expert discovery, and that Defendants should have 60 days from plaintiff's motion and supporting papers (including expert reports) to submit their responsive papers and expert reports. Plaintiff, however, has not disclosed when it will file its certification motion, or what expert opinions or analyses it will offer in support. Further, because merits discovery has already commenced and will proceed simultaneously with class discovery, it may be efficient to delay certification proceedings until the record is more fully developed. In these circumstances, it is unnecessary and unfair to establish a definitive deadline for Defendants' responsive submissions. Plaintiff's only justification for requiring a schedule now is that "this case does not differ from any other." (Dkt. 173 at 2.) But this ignores the circumstances here, including that the amount of time that Defendants would need to respond to Plaintiff's motion will vary considerably based on Plaintiff's theories, the number and location of its expert witnesses, and the nature of the experts' opinions and analyses.

Defendants propose that, after Plaintiff serves its certification motion and supporting materials, the parties meet and confer about an appropriate schedule for expert discovery regarding class certification issues, and service of Defendants' responsive briefs and expert reports and Plaintiff's reply papers. If the parties cannot agree, they can seek the Court's assistance at that time. If, however, the Court is inclined to set a specific schedule now, Defendants request that the Court set as the deadline for service of their class certification papers

The Hon. Miriam Goldman Cedarbaum						-4-

(including expert reports) 90 days following service of Plaintiff's class certification motion and submissions.

        We look forward to discussing these issues during our conference with the Court on July 8.

Respectfully submitted,

*Richard H. Klapper/ca*

Richard H. Klapper

(Enclosure)

cc:    Susan G. Taylor, Esq.
       (Robbins Geller Rudman & Dowd LLP)

       Patrick J. O'Hara, Esq.
       (Cavanagh & O'Hara)