```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X
NECA-IBEW HEALTH & WELFARE FUND,
Individually and On Behalf of All
Others Similarly Situated,

                 Plaintiff,            OPINION

        -against-                      08 CIV 10783 (MGC)


GOLDMAN, SACHS & CO., et al.,

                 Defendants.

-----------------------------------X

APPEARANCES:

    ROBINS GELLER RUDMAN & DOWD LLP
    Attorneys for Plaintiff

    By:  Arthur C. Leahy, Susan G. Taylor, Lucas F. Olts,
         Susannah R. Conn, Angel P. Lau, Jennifer N. Caringal,
         Samuel H. Rudman, David A. Rosenfeld


    CAVANAGH & O'HARA
    Attorneys for Plaintiff

    By:  Patrick J. O'Hara


    SULLIVAN & CROMWELL LLP
    Attorneys for Defendants

    By:  Richard H. Klapper, Theodore Edelman,
         Michael T. Tomaino, Jr.
```

**Cedarbaum, J.**

Plaintiff NECA-IBEW Health & Welfare Fund ("NECA") requests certification of interlocutory appeal, pursuant to 28 U.S.C.

§ 1292(b), of the July 10, 2014 order granting in part and denying in part defendants' motion to dismiss the Fourth Amended Complaint.  Specifically, NECA seeks interlocutory review of the decision not to allow reinstatement of claims under the 1933 Securities Act relating to seven securities offerings: GSAA Home Equity Trust 2007-8; GSAMP Trust 2007-HE1, 2007-HE2; and GSR Mortgage Loan Trust 2007-OA1, 2007-OA2, 2007-4F, and 2007-5F. The request is denied.

## BACKGROUND

In this action, NECA seeks to assert claims on behalf of a class of purchasers of mortgage-backed certificates that defendants sold in seventeen separate offerings through seventeen separate trusts pursuant to the same shelf registration statement but using separate prospectus supplements.  NECA itself purchased certificates from two of those offerings backed by trusts GSAA Home Equity Trust 2007-10 and GSAA Home Equity Trust 2007-5.

In September 2009, defendants' motion to dismiss the First Amended Complaint was granted with leave to amend.  In January 2010, defendants' motion to dismiss the Second Amended Complaint was also granted because, among other things, NECA lacked standing to bring securities fraud claims on behalf of purchasers of certificates from offerings other than the two offerings from which NECA bought certificates.  NECA was given

2

leave to amend, but only with respect to the offerings from which NECA purchased certificates.  In October 2010, defendants' motion to dismiss the Third Amended Complaint was granted, and, in June 2011, final judgment was entered.

NECA appealed.  The Second Circuit affirmed in part and vacated in part, stating that NECA had standing to bring claims on behalf of purchasers of offerings backed by loans made by the same originators that contributed loans to the two offerings NECA purchased:

> to the extent certain [o]fferings were backed by loans originated by originators common to those backing the 2007–5 and 2007–10 [o]fferings, NECA's claims raise a sufficiently similar set of concerns to permit it to purport to represent [c]ertificate-holders from those [o]fferings.  Therefore, under the Second Amended Complaint, plaintiff has class standing to assert the claims of purchasers of [c]ertificates from the 5 additional [t]rusts containing loans originated by GreenPoint, Wells Fargo, or both. . . . However, plaintiff lacks standing to assert claims on behalf of purchasers of [c]ertificates from the other 10 Trusts.

NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co., 693 F.3d 145, 164 (2d Cir. 2012).

The "other 10 Trusts" were the GSAA Home Equity Trust 2007-8; GSAMP Trust 2007-FM2, 2007-HEI, 2007-HE2, and 2007-HSBC1; GSR Mortgage Loan Trust 2007-OA1, 2007-OA2, 2007-4F, and 2007-5F; and the STARM Mortgage Loan Trust 2007-4 ("Dismissed Offerings").  Id. at 164 n.12.  Thus the Second Circuit concluded, "we affirm in part and vacate in part the judgment of

3

the district court dismissing plaintiff's claims and remand with instructions to reinstate plaintiff's §§ 11, 12(a)(2), and 15 claims in respect of the GSAA Home Equity Trust 2007-3, 2007-4, 2007-5, 2007-6, 2007-7, and 2007-10 Offerings, and the GSR Mortgage Loan Trust 2007-3F Offering" ("Reinstated Offerings"). Id. at 168.

On remand, NECA was allowed to file a Fourth Amended Complaint ("FAC"), and, in addition to the claims based on the Reinstated Offerings, it attempted to restore claims based on seven of the ten Dismissed Offerings. In July 2014, defendants' motion to dismiss the Dismissed Offerings was granted. NECA's motion for interlocutory appeal on that issue is now pending.

## DISCUSSION

"'[I]nterlocutory appeals are strongly disfavored in federal practice.'" In re Facebook, Inc., IPO Sec. & Derivative Litig., 986 F. Supp. 2d 524, 530 (S.D.N.Y. 2014) (quoting In re Adelphia Commc'ns Corp., 2008 WL 361082, at *1 (S.D.N.Y. Feb. 7, 2008)). A district court judge may recommend interlocutory review of an order otherwise not appealable when she is of the "opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). Use of § 1292(b) is "'strictly limited'

4

because 'only exceptional circumstances [will] justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment.'" Facebook, 986 F. Supp. 2d at 529-30 (quoting McNeil v. Aguilos, 820 F. Supp. 77, 79 (S.D.N.Y. 1993) (Sotomayor, J.)).  Even if the requirements of § 1292(b) are met, "district courts retain unfettered discretion to deny certification" for "any reason." Facebook, 986 F. Supp. 2d at 530 (internal quotation marks omitted).

"Substantial ground for difference of opinion" exists when "(1) there is conflicting authority on the issue, or (2) the issue is particularly difficult and of first impression for the Second Circuit." Id. at 539 (internal quotation marks omitted). The question at issue here is whether NECA should be afforded the opportunity to restore claims based on the Dismissed Offerings.  There is no conflicting authority as to that inquiry, nor is it an issue of first impression, because the Second Circuit's opinion in this case itself dismissed those claims: "plaintiff lacks standing to assert claims on behalf of purchasers of [c]ertificates from the other 10 [t]rusts." NECA-IBEW, 693 F.3d at 164.

NECA argues that references to the Second Amended Complaint earlier in that paragraph of the opinion qualify the dismissal to the context of that complaint.  Yet, the Second Circuit went on in its conclusion to make clear again that "we affirm in part

5

and vacate in part the judgment of the district court dismissing plaintiff's claims and remand with instructions to reinstate" NECA's claims with respect to the seven Reinstated Offerings. Id. at 168.  This Court is obligated on remand to follow the court of appeals on issues it "explicitly or implicitly decided on appeal." Day v. Moscow, 955 F.2d 807, 812 (2d Cir. 1992) (internal quotation marks omitted).  The Second Circuit gave no instruction regarding an opportunity to restore the Dismissed Offerings, but it did specifically identify seven other offerings for reinstatement on remand.  The court thus affirmed dismissal of the Dismissed Offerings, and, by implication, decided that the Dismissed Offerings should not be repled.  See id. ("[S]ince in vacating the dismissal of the arrest/search claims we stated that Day should be allowed to 'file an amended complaint amplifying *those* claims,' we implicitly, if not explicitly, ruled that any amended complaint was to be limited to those claims." (quoting Day v. Morgenthau, 909 F.2d 75, 78 (2d Cir. 1990))).

     Even if NECA-IBEW had not mandated dismissal of the Dismissed Offerings, the decision to allow repleading would be left to this Court's discretion.  Although Fed. R. Civ. P. 15(a)(2) states that judges "should freely give leave [to amend] when justice so requires," courts nonetheless retain "broad" discretion in determining whether to allow amendments to a

complaint. Local 802, Associated Musicians of Greater New York v. Parker Meridien Hotel, 145 F.3d 85, 89 (2d Cir. 1998).

Here, it is evident from the allegations in the FAC that NECA's request to replead the Dismissed Offerings is futile. See, e.g., id. (one reason courts deny amendments is futility). The Second Circuit held that NECA has class standing to assert the claims of other members of the putative class if the defendants' conduct as to others implicates "the same set of concerns" as the conduct injuring NECA itself. NECA-IBEW, 693 F.3d at 162. In the context of claims "alleging misstatements about origination guidelines . . . differences in the identity of the originators backing the [c]ertificates matters for the purposes of assessing whether those claims raise the same set of concerns." Id. at 163. Driving the Second Circuit's decision was the recognition that the proof required to show the falsity of the alleged representations "would center on whether the particular originators of the loans backing the particular [o]ffering from which a [c]ertificate-holder purchased a security had in fact abandoned its underwriting guidelines." Id. In the absence of a common loan originator, the injuries arising from the purchase of a given offering would have "the potential to be very different -- and could turn on very different proof" from the injuries arising from the purchase of a different offering. Id.

7

NECA claims that the loan originator common to the Dismissed Offerings is the Goldman Sachs Mortgage Company's ("GSMC") Conduit Program. Yet, the FAC itself contradicts that labelling by consistently describing GSMC as a purchaser of loans. E.g., FAC ¶ 30 ("Under the Conduit Program, GSMC acquired loans from a variety of banks, savings and loans associations, mortgage bankers and other mortgage loan originators and purchasers of loans in the secondary market."). The FAC cannot merely label GSMC an "originator" -- in conflict with its factual allegations -- in order to satisfy class standing. See, e.g., In re Livent, Inc. Noteholders Sec. Litig., 151 F. Supp. 2d 371, 405 (S.D.N.Y. 2001) (courts need not accept as true allegations "that are contradicted . . . by statements in the complaint").

Citing In re Morgan Stanley Mortgage Pass-Through Certificates Litig., 2013 WL 139556 (S.D.N.Y. Jan. 11, 2013), NECA alternatively suggests that misrepresentations concerning GSMC's purchasing (as opposed to origination) guidelines provide the common set of concerns necessary for class standing. See id. at *3 ("because [Morgan Stanley Mortgage Capital], in its capacity as a loan purchaser, misrepresented its compliance with its stated purchasing guidelines" a common set of concerns were implicated across offerings for which that entity purchased underlying loans). Yet, the FAC's allegations that GSMC's

8

Conduit Program violated its own purchasing guidelines are unavoidably tied to the lenders' conduct in underwriting the loans at issue. The misrepresentations NECA points to in the registration statement are that, for example, "all of the mortgage loans acquired by GSMC . . . were acquired generally in accordance with the underwriting criteria described in this section," and that such criteria included that "the originating lender makes a determination about whether the borrower's monthly income (if required to be stated) will be sufficient to enable the borrower to meet its monthly obligations on the mortgage loan and other expenses related to the property."

These statements are misleading only if GSMC bought loans from lenders who violated that criteria. As such, the determination as to whether GSMC purchased loans that were not underwritten pursuant to the stated criteria once again depends on the conduct of the originating lenders. To allow class standing solely on the basis that GSMC was the purchaser of a variety of loans underwritten by different lenders would be to ignore the Second Circuit's test. Whether defendants misrepresented that the loans GSMC purchased met identified standards "could turn on very different proof" due to the variety of originators underwriting the loans. NECA-IBEW, 693 F.3d at 163. Thus, NECA's assertion of misrepresented purchasing guidelines, as pled in the FAC, raises such a

9

"'fundamentally different set of concerns'" from offering to offering as to defeat class standing. Id. at 164 (quoting Gratz v. Bollinger, 539 U.S. 244, 264 (2003)).

## CONCLUSION

Because of the lack of substantial ground for difference of opinion as to whether NECA may replead claims based on the Dismissed Offerings, NECA's motion for interlocutory appeal is denied.

SO ORDERED.

Dated:   New York, New York
         January 6, 2015

                                    S/_____
                                      MIRIAM GOLDMAN CEDARBAUM
                                      United States District Judge