UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

——————————————————————— x
NECA-IBEW HEALTH & WELFARE FUND, :      Civil Action No. 1:08-cv-10783-MGC
Individually and On Behalf of All Others      :
Similarly Situated,                           :      "ECF Case"
                                              :
                         Plaintiff,           :      CLASS ACTION
                                              :
        vs.                                   :
                                              :
GOLDMAN, SACHS & CO., et al.,                 :
                                              :
                         Defendants.          :
——————————————————————— x

POLICE AND FIRE RETIREMENT SYSTEM :      Civil Action No. 10 Civ. 4429-MGC
OF THE CITY OF DETROIT, Individually      :
and On Behalf of All Others Similarly Situated, :      "ECF Case"
                                              :
                         Plaintiff,           :      CLASS ACTION
                                              :
        vs.                                   :
                                              :
GOLDMAN, SACHS & CO., et al.,                 :
                                              :
                         Defendants.          :
——————————————————————— x


PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR (1)
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; (2) CERTIFICATION
OF SETTLEMENT CLASS; (3) DISSEMINATION OF NOTICE; AND (4) SCHEDULING
FINAL APPROVAL HEARING


1060756_1

## TABLE OF CONTENTS

Page

I.      INTRODUCTION ....................................................................................................1

II.     HISTORY OF THE LITIGATION ........................................................................3

        A.      The NECA Action..........................................................................................3

        B.      The PFRS Action ...........................................................................................7

III.    SETTLEMENT NEGOTIATIONS .........................................................................7

IV.     Preliminary Approval of the Settlement is Warranted............................................8

        A.      Summary of Settlement Terms .......................................................................8

        B.      The Standards for Reviewing a Proposed Settlement for Preliminary
                Approval ..........................................................................................................9

        C.      Preliminary Approval of the Settlement Should Be Granted...............................11

V.      CERTIFICATION OF THE SETTLEMENT CLASS FOR SETTLEMENT
        PURPOSES IS APPROPRIATE ..........................................................................15

        A.      The Settlement Class Satisfies the Requirements of Rule 23(a)...........................18

                1.      Numerosity.................................................................................19

                2.      Commonality...............................................................................20

                3.      Typicality ...................................................................................21

                4.      Adequate Representation ...........................................................22

                5.      Rule 23(b)(3) Is Satisfied..........................................................24

                6.      Common Legal and Factual Questions Predominate..................24

        B.      A Class Action Is Superior to Other Methods of Adjudication.............................27

VI.     THE PROPOSED FORM AND METHOD OF CLASS NOTICE AND THE
        FORM OF THE PROOF OF CLAIM ARE APPROPRIATE...........................28

        A.      The Scope of the Proposed Notice Program Is Adequate......................................28

        B.      The Proposed Form of Notice Comports with the Requirements of Due
                Process, the Private Securities Litigation Reform Act of 1995 and Rule 23

|  | and Is the Same or Similar to the Form(s) of Notice Routinely Approved by Courts in This Jurisdiction | 29 |
| VII. | PROPOSED SCHEDULE OF SETTLEMENT EVENTS | 31 |
| VIII. | CONCLUSION | 32 |

## TABLE OF AUTHORITIES

**Page**

## CASES

*Allen v. Dairy Farmers of Am., Inc.*,
No. 5:09-CV-230, 2011 U.S. Dist. LEXIS 48479
(D. Vt. May 4, 2011)............................................................................................................10, 11

*Amchem Prods. v. Windsor*,
521 U.S. 591 (1997)............................................................................................................24, 25

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
__ U.S. __, 133 S. Ct. 1184 (2013).........................................................................................26

*Cent. States Se. & Sw. Areas Health & Welfare Fund v.*
*Merck-Medco Managed Care, L.L.C.*,
504 F.3d 229 (2d Cir. 2007).............................................................................................19, 20

*Charron v. Wiener*,
731 F.3d 241 (2d Cir. 2013),
*cert. denied*, __ U.S. __, 134 S. Ct. 1941 (2014)....................................................................14

*City of Livonia Emps.' Ret. Sys. v. Wyeth*,
284 F.R.D. 173 (S.D.N.Y. 2012) ..........................................................................................24

*Consol. Rail Corp. v. Town of Hyde Park*,
47 F.3d 473 (2d Cir. 1995).....................................................................................................19

*Dandong v. Pinnacle Performance Ltd.*,
No. 10 Civ. 8086 (JMF), 2013 U.S. Dist. LEXIS 150259
(S.D.N.Y. Oct. 17, 2013) ........................................................................................................25

*Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974)..............................................................................................11, 12

*Dodona I, LLC v. Goldman, Sachs & Co.*,
296 F.R.D. 261 (S.D.N.Y. 2014) ...........................................................................................19

*Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*,
301 F.R.D. 116 (S.D.N.Y. 2014) ....................................................................................passim

*Hicks v. Morgan Stanley & Co.*,
No. 01 Civ. 10071 (HB), 2003 U.S. Dist. LEXIS 11972
(S.D.N.Y. July 16, 2003) .........................................................................................................23

**Page**

*In re Am. Bank Note Holographics,*
   127 F. Supp. 2d 418 (S.D.N.Y. 2001)......................................................................................17

*In re Am. Int'l Grp. Sec. Litig.,*
   689 F.3d 229 (2d Cir. 2012)....................................................................................................16

*In re AMF Bowling Sec. Litig.,*
   334 F. Supp. 2d 462 (S.D.N.Y. 2004)......................................................................................12

*In re Bear Stearns Mortg. Pass-Through Certificates Litig.,*
   No. 08-cv-8093-LTS, slip op. (S.D.N.Y. Feb. 2, 2015) ..........................................................30

*In re Bear Stearns Mortg. Pass-Through Certificates Litig.,*
   No. 1:08-cv-08093-LTS, slip op. (S.D.N.Y. Feb. 19, 2015) ...................................................28

*In re Beef Indus. Antitrust Litig.,*
   607 F.2d 167 (5th Cir. 1979) ..................................................................................................16

*In re Dynex Capital Sec. Litig.,*
   No. 05 Civ. 1897 (HB), 2011 U.S. Dist. LEXIS 22484
   (S.D.N.Y. Mar. 7, 2011) .........................................................................................................22

*In re Flag Telecom Holdings, Ltd. Sec. Litig.,*
   574 F.3d 29 (2d Cir. 2009)......................................................................................................21

*In re Giant Interactive Grp., Inc.,*
   279 F.R.D. 151 (S.D.N.Y. 2011) .............................................................................................14

*In re Global Crossing Sec. & ERISA Litig.,*
   225 F.R.D. 436 (S.D.N.Y. 2004) .......................................................................................12, 15

*In re IMAX Sec. Litig.,*
   283 F.R.D. 178 (S.D.N.Y. 2012) ...............................................................................................9

*In re IndyMac Mortg.-Backed Sec. Litig.,*
   286 F.R.D. 226 (S.D.N.Y. 2012) ...................................................................................... passim

*In re Initial Pub. Offering Sec. Litig.,*
   226 F.R.D. 186 (S.D.N.Y. 2005) .............................................................................................17

*In re Lehman Bros. Sec. & ERISA Litig.,*
   No. 09 MD 2017 (LAK), 2013 U.S. Dist. LEXIS 13999
   (S.D.N.Y. Jan. 23, 2013)..........................................................................................................26

1060756_1

**Page**

*In re Luxottica Grp. S.p.A. Sec. Litig.*,
No. CV 01-3285 (JBW)(MDG), 2005 U.S. Dist. LEXIS 27765
(E.D.N.Y. Nov. 15, 2005)............................................................................................................28

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
No. 04-cv-8144(CM), 2009 U.S. Dist. LEXIS 120953
(S.D.N.Y. Dec. 23, 2009) ................................................................................15, 16, 21, 25

*In re Merrill Lynch & Co. Research Reports Sec. Litig.*,
No. 02 MDL 1484 (JFK), 2007 U.S. Dist. LEXIS 9450
(S.D.N.Y. Feb. 1, 2007)...............................................................................................................28

*In re MicroStrategy, Inc. Sec. Litig.*,
148 F. Supp. 2d 654 (E.D. Va. 2001) .....................................................................................17

*In re Morgan Stanley Mortg. Pass-Through Certificates Litig.*,
No. 09-CV-2137-KBF, slip op. (S.D.N.Y. Sept. 10, 2014).....................................................30

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
176 F.R.D. 99 (S.D.N.Y. 1997) ...............................................................................................11

*In re NYSE Specialists Sec. Litig.*,
260 F.R.D. 55 (S.D.N.Y. 2009) ...............................................................................................27

*In re Platinum & Palladium Commodities Litig.*,
No. 10cv3617, 2014 U.S. Dist. LEXIS 96457
(S.D.N.Y. July 15, 2014) ..................................................................................................11, 12

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
163 F.R.D. 200 (S.D.N.Y. 1995) ....................................................................................9, 10, 16

*In re Prudential Sec. Ltd. P'ships Litig.*,
164 F.R.D. 362 (S.D.N.Y.),
*aff'd sub nom. Toland v. Prudential Sec. P'ship Litig.*,
107 F.3d 3 (2d Cir. 1996) ........................................................................................................28

*In re US FoodService Pricing Litig.*,
729 F.3d 108 (2d Cir. 2013),
*cert. denied*, __ U.S. __, 134 S. Ct. 1938 (2014).....................................................................24

*In re Warner Chilcott Ltd. Sec. Litig.*,
No. 06 Civ. 11515 (WHP), 2008 U.S. Dist. LEXIS 99840
(S.D.N.Y. Nov. 20, 2008).....................................................................................................12, 31

- v -

**Page**

*In re Wells Fargo Mortg.-Backed Certificates Litig.*,
No. 09-CV-01376-LHK, 2011 U.S. Dist. LEXIS 81196
(N.D. Cal. July 26, 2011) ............................................................................................18

*In re WorldCom, Inc. Sec. Litig.*,
219 F.R.D. 267 (S.D.N.Y. 2003) ..................................................................................23

*N.J. Carpenters Health Fund v. DLJ Mortg. Capital, Inc.*,
No. 08 Civ. 5653 (PAC), 2011 U.S. Dist. LEXIS 92597
(S.D.N.Y. Aug. 16, 2011) .............................................................................................26

*N.J. Carpenters Health Fund v. DLJ Mortg. Capital, Inc.*,
No. 08 Civ. 5653 (PAC), 2014 U.S. Dist. LEXIS 35326
(S.D.N.Y. Mar. 17, 2014) ....................................................................................*passim*

*N.J. Carpenters Health Fund* v. *Residential Capital, LLC*,
272 F.R.D. 160 (S.D.N.Y. 2011),
*aff'd sub nom.*, *N.J. Carpenters Health Fund* v. *RALI Series 2006-QO1*,
477 F. App'x 809 (2d Cir. 2012) ..................................................................................14

*N.J. Carpenters Health Fund v. Residential Capital, LLC*,
No. 08 CV 8781 (HB), 2013 U.S. Dist. LEXIS 180913
(S.D.N.Y. Dec. 27, 2013) .............................................................................................19

*N.J. Carpenters Health Fund v. Residential Capital, LLC*,
288 F.R.D. 290 (S.D.N.Y. 2013) ..................................................................................20

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*,
693 F.3d 145 (2d Cir. 2012),
*cert. denied*, __ U.S. __, 133 S. Ct. 1624 (2013) ..........................................................5

*Nieves v. Cmty. Choice Health Plan of Westchester, Inc.*,
No. 08 CV 321 (VB) (PED), 2012 WL 857891
(S.D.N.Y. Feb. 24, 2012) .......................................................................................10, 19

*Passafiume v. NRA Grp., LLC*,
274 F.R.D. 424 (E.D.N.Y. 2010) ..................................................................................16

*Plumbers' & Pipefitters' Local #562 Supplemental Plan & Trust v.*
*J.P. Morgan Acceptance Corp. I*,
No. 08-cv-1713 (PKC) (WDW), slip op. (E.D.N.Y. May 2, 2014) .........................30

*Pub. Emps.' Ret. Sys. of Miss. v. Goldman Sachs Grp., Inc.*,
280 F.R.D. 130 (S.D.N.Y. 2012) ................................................................19, 22, 25, 26

Page

*Pub. Emps.' Ret. Sys. of Miss. v. Goldman Sachs Grp., Inc.,*
No. 09-CV-1110 (HB), slip op. (S.D.N.Y. Aug. 13, 2012) ....................................................30

*Pub. Emps.' Ret. Sys. of Miss. v. Merrill Lynch & Co.,*
277 F.R.D. 97 (S.D.N.Y. 2011) ...................................................................................... *passim*

*Pub. Emps.' Ret. Sys. of Miss. v. Merrill Lynch & Co., Inc.,*
No. 08-cv-10841-JSR-JCL, slip op. (S.D.N.Y. Dec. 15, 2011) ..............................................30

*Ramirez v. DeCoster,*
142 F. Supp. 2d 104 (D. Me. 2001) ......................................................................................18

*Spann v. AOL Time Warner, Inc.,*
No. 02 Civ. 8238 (DLC), 2005 U.S. Dist. LEXIS 10848
(S.D.N.Y. June 7, 2005).........................................................................................................17

*TSC Indus., Inc. v. Northway, Inc.,*
426 U.S. 438 (1976).............................................................................................................26

*Tsereteli v. Residential,*
283 F.R.D. 199 (S.D.N.Y. 2012)........................................................................20, 21, 25, 26

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.,*
396 F.3d 96 (2d Cir. 2005)..........................................................................................9, 15, 31

*Wallace v. Intralinks,*
302 F.R.D. 310 (S.D.N.Y. 2014) .........................................................................................22

*Weinberger v. Kendrick,*
698 F.2d 61 (2d Cir. 1982)....................................................................................................16

## STATUTES, RULES AND REGULATIONS

15 U.S.C.
§77k(e) ..................................................................................................................................26
§77l(b)...................................................................................................................................26
§77z-1(a)(7) ......................................................................................................................3, 30

1060756_1

Page

Federal Rules of Civil Procedure
Rule 23 ...................................................................................................................... *passim*
Rule 23(a)..........................................................................................................15, 18, 19
Rule 23(a)(1)...................................................................................................................19
Rule 23(a)(2)...........................................................................................................20, 21
Rule 23(a)(3)...................................................................................................................21
Rule 23(a)(4)...................................................................................................................22
Rule 23(b)(3)...................................................................................................15, 18, 24, 27
Rule 23(e)......................................................................................................................10
Rule 60(b) .......................................................................................................................5

**SECONDARY AUTHORITIES**

H.R. Conf. Rep. No. 104-369 (1995),
*reprinted in* 1995 U.S.C.C.A.N. 730 ...................................................................24

4 Herbert Newberg & Alba Conte,
*Newberg on Class Actions* (4th ed. 2002)
§11.25..........................................................................................................................10

*Manual for Complex Litigation (Third)* (1995)
§30.41..........................................................................................................................11
§30.42..........................................................................................................................15

*Manual for Complex Litigation (Fourth)* (2004)
§21.632........................................................................................................................10
§21.633........................................................................................................................10

Plaintiffs NECA-IBEW Health & Welfare Fund ("NECA") and Police and Fire Retirement System of the City of Detroit ("PFRS") (collectively, "Plaintiffs"), in the above-captioned class action lawsuits, *NECA-IBEW Health & Welfare Fund v. Goldman, Sachs & Co.*, No. 1:08-cv-10783-MGC (the "NECA Action"), and *Police and Fire Retirement Systems of the City of Detroit v. Goldman, Sachs & Co.*, No. 10 Civ. 4429 (MGC) (the "PFRS Action") (collectively, the "Actions"), respectfully submit this memorandum of law in support of their motion for: (i) preliminary approval of the proposed Settlement between Plaintiffs, on behalf of the proposed Settlement Class, and Defendants Goldman, Sachs & Co., Goldman Sachs Mortgage Company, GS Mortgage Securities Corp., Daniel L. Sparks, Michelle Gill, and Kevin Gasvoda ("Defendants"); (ii) certification of the proposed Settlement Class for purposes of the Settlement only; (iii) approval of the form and manner of the settlement notice to Settlement Class Members; and (iv) the scheduling of a hearing ("Final Approval Hearing" or "Settlement Hearing") on final approval of the Settlement, proposed Plan of Allocation and Lead Counsel's motion for an award of attorneys' fees and Litigation Expenses.  The requested relief is embodied in the Settling Parties' agreed-upon form of Proposed Order Certifying a Settlement Class, Preliminarily Approving the Settlement, and Providing for Notice ("Preliminary Approval Order") and exhibits thereto, which are attached to the accompanying Stipulation and Agreement of Settlement ("Stipulation").

## I.       INTRODUCTION

Following extensive litigation and settlement negotiations, Plaintiffs, on behalf of the Settlement Class, and Defendants have reached an agreement to resolve these securities class actions

- 1 -

for $272 million (the "Settlement Amount").  The terms of the Settlement are set forth in the Stipulation, filed simultaneously herewith.[1]

The Settling Parties reached settlement only after seven years of hard-fought litigation and extensive negotiations.  By the time the Settlement was reached, Plaintiffs were fully informed about the strengths and weaknesses of their case.  Indeed, this result was possible only after the filing of seven class action complaints; adjudication of multiple rounds of motions to dismiss and supplemental briefing involving rapidly-evolving areas of law; appeal of the Court's dismissal of NECA's claims to the Second Circuit, resulting in the landmark opinion establishing a new standard for standing that greatly expanded the number of certificates for which Plaintiffs were able to bring claims on behalf of a class; review and analysis of over 8 million pages of documents; full class certification briefing; and engagement and consultation with multiple experts on issues such as negative causation, materiality, damages, mortgage loan underwriting, and statistics.

Plaintiffs and Plaintiffs' Counsel – based on their experience, evaluation of the facts and applicable law, and the risk and expense of continued litigation – submit that the proposed Settlement is fair, reasonable and adequate.  The Settlement represents a very good result and is in the best interests of the Settlement Class.

Plaintiffs respectfully request that the Court grant preliminary approval of the Settlement so that notice may be provided to the Settlement Class.  Plaintiffs also request that the Court enter the Settling Parties' agreed-upon Preliminary Approval Order, submitted herewith as Exhibit A to the Stipulation, which among other things, will:

        (a)        preliminarily approve the Settlement on the terms set forth in the Stipulation;

---

[1]   Unless otherwise stated or defined, all capitalized terms used herein shall have the meanings provided in the Stipulation.

(b)   certify the proposed Settlement Class for purposes of the Settlement only;

(c)   approve the form and content of the Notice and Summary Notice attached as Exhibits A-1 and A-3 to the Stipulation;

(d)   find that the procedures for distribution of the Notice and publication of the Summary Notice in the manner and form set forth in the Preliminary Approval Order constitute the best notice practicable under the circumstances, and comply with the notice requirements of due process, Rule 23 of the Federal Rules of Civil Procedure, and §27(a)(7) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §77z-1(a)(7), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"); and

(e)   set a schedule and procedures for:  disseminating the Notice and publication of the Summary Notice; requesting exclusion from the Settlement Class; commenting on the Settlement, the Plan of Allocation or Lead Counsel's application for attorneys' fees and Litigation Expenses; submitting papers in support of final approval of the Settlement; and the Final Approval Hearing.

## II.   HISTORY OF THE LITIGATION

These cases arise from the sale of residential mortgage-backed securities ("RMBS") by certain Goldman Sachs entities.  Plaintiffs allege violations of the Securities Act based on alleged false and misleading statements and omissions by Defendants in the offering documents regarding the loans which underlie the RMBS at issue.

### A.   The NECA Action

On December 11, 2008, NECA filed its initial complaint against Defendants and certain other defendants in the United States District Court for the Southern District of New York ("Initial Complaint").  NECA Action Dkt. No. 1.  The Initial Complaint asserted claims under §§11, 12(a)(2),

- 3 -

and 15 of the Securities Act on behalf of all persons or entities acquiring asset-backed certificates in 17 offerings pursuant and/or traceable to offering documents that were filed with the U.S. Securities and Exchange Commission ("SEC") between 2007 and 2008.

On April 2, 2009, the Court issued an oral ruling appointing NECA as Lead Plaintiffs and approving its selection of Robbins Geller Rudman & Dowd LLP (then Coughlin Stoia Geller Rudman & Robbins LLP) as Lead Counsel. NECA Action Dkt. No. 40 at 20:7-8.

Thereafter, on May 15, 2009, NECA filed the Amended Complaint. NECA Action Dkt. No. 41. On September 17, 2009, the Court granted Defendants' motion to dismiss the Amended Complaint, affording NECA leave to file a second amended complaint, and ordering supplemental briefing on whether NECA had standing to assert claims on behalf of purchasers of all 17 certificates. NECA Action Dkt. No. 67 at 38:8-41:9.

On November 9, 2009, NECA filed the Second Amended Complaint ("SAC"). NECA Action Dkt. No. 71. On January 28, 2010, the Court granted Defendants' motion to dismiss the SAC, holding, *inter alia*, that NECA lacked standing to assert claims on behalf of purchasers of certificates in the 15 of the 17 offerings alleged in the SAC because NECA did not purchase certificates in the 15 offerings. NECA Action Dkt. No. 86 at 40:5-43:24. NECA was granted leave to amend, but only with respect to the two offerings from which it purchased certificates. *Id.*

On March 31, 2010, NECA filed the Third Amended Complaint ("TAC"). NECA Action Dkt. No. 88. In the TAC, NECA alleged claims on behalf of purchasers from the two remaining offerings. On September 22, 2010, the Court denied Defendants' motion to dismiss the TAC as to NECA's §§12 and 15 claims. NECA Action Dkt. No. 106 at 57:6-20. The Court reserved judgment on NECA's §11 claims and took them under submission. *Id.* On October 15, 2010, the Court

entered an order dismissing the §11 claims, holding that NECA had no legally cognizable injury. NECA Action Dkt. No. 107.

On February 8, 2011, NECA filed a Motion for Leave to File Amended Complaint and for Relief Pursuant to Fed. R. Civ. P. 60(b) (NECA Action Dkt. Nos. 128-130), requesting to amend the TAC to allege the sale of the certificates it owned at a loss, and for the Court to reinstate its cause of action under §11. *See, e.g.*, NECA Action Dkt. No. 106 at 16:1-13, 17:6-10. At a hearing on March 3, 2011, the Court denied NECA's motion to amend and to reinstate its §11 claims and suggested that all of NECA's claims, including its §12 rescission claims were extinguished due to NECA's sale of its certificates. NECA Action Dkt. No. 142 at 14:21-15:7; NECA Action Dkt. No 137.

On April 5, 2011, NECA moved alternatively for clarification of the Court's March 3, 2011 Order, or for entry of final judgment, and on June 10, 2011, the Court granted NECA's motion for entry of a final judgment. NECA Action Dkt. Nos. 144-146, 151. On July 6, 2011, NECA filed a Notice of Appeal of, *inter alia*, the Court's January 28, 2010 Order limiting NECA's standing to assert claims only on behalf of purchasers of certificates in the two offerings purchased by NECA, and the Court's October 15, 2010 Order holding that NECA had no cognizable injury under §11. NECA Action Dkt. No. 155.

On September 6, 2012, the Second Circuit affirmed in part and vacated in part, and remanded for further proceedings. *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145 (2d Cir. 2012), *cert. denied*, __ U.S. __, 133 S. Ct. 1624 (2013). In the *NECA* decision, the Second Circuit enunciated certain principles of "class standing," and held that NECA had "class standing" as to certain offerings of certificates it had not purchased. *Id.* at 162-65. In addition, the Court held that NECA had alleged a cognizable injury under §11. *Id.* at 166. Defendants' Petition

- 5 -

for Writ of *Certiorari* to the Supreme Court of the United States was filed on October 26, 2012 and denied on March 18, 2013.

During the pendency of Defendants' *certiorari* petition, NECA filed the operative Fourth Amended Complaint ("FAC"), which alleged claims regarding 14 offerings.  NECA Action Dkt. No. 157 (filed November 5, 2012).  After Defendants' petition was denied, the parties engaged in an extensive meet-and-confer process to resolve disputes regarding the implications of the Second Circuit's holding, the permissible scope of Defendants' subsequent motion to dismiss, and the commencement of discovery.

By June 10, 2014, Defendants' motion to dismiss the FAC was fully briefed.  NECA Action Dkt. Nos. 164, 167-171.  Defendants argued, *inter alia*, that the "mandate rule" precluded NECA's claims on behalf of seven of their offerings alleged in the FAC.  NECA Action Dkt. No. 167.  On July 10, 2014, the Court granted Defendants' motion with respect to those seven offerings.  NECA Action Dkt. No. 176.  On July 28, 2014, NECA filed a motion requesting certification of an interlocutory appeal pursuant to 28 U.S.C. §1292(b) of the July 10, 2014 Order.  NECA Action Dkt. No. 180.  During the pendency of NECA's motion, on September 30, 2014, Defendants filed their answer to the FAC.  NECA Action Dkt. No. 189.  On January 6, 2015, the Court denied NECA's motion requesting certification of interlocutory appeal.  NECA Action Dkt. No. 192.

NECA filed a Motion for Class Certification and Appointment of Class Representative and Class Counsel on March 23, 2015.  NECA Action Dkt. No. 197.  Support for the motion included evidence in the record and the accompanying declaration of Dr. Joseph R. Mason.  *See* NECA Action Dkt. Nos. 198, 199.  Dr. Mason was deposed by Defendants on May 8, 2015, and NECA's corporate representative was deposed on May 12, 2015.  On May 19, 2015, Defendants filed their Opposition to Plaintiffs' Motion for Class Certification.  NECA Action Dkt. Nos. 209-212.

### B.       The PFRS Action

On June 3, 2010, PFRS filed the PFRS Action asserting claims under the Securities Act on behalf of all persons or entities who acquired the GSR Mortgage Loan Trust 2007-4F Mortgage-Backed Certificates. On January 19, 2011, Defendants moved to dismiss the PFRS complaint.  On September 13, 2011, the Court dismissed PFRS' initial complaint with leave to amend.

On October 20, 2011, PFRS filed its First Amended Complaint ("PFRS FAC").   On December 27, 2011, Defendants moved to dismiss the PFRS FAC, which the Court granted, with leave to amend, on May 31, 2012.

On July 9, 2012, PFRS filed its Second Amended Complaint ("PFRS SAC").   On September 21, 2012, Defendants moved to dismiss PFRS SAC.

On December 26, 2012, PFRS moved to amend the PFRS SAC to seek to represent holders of additional certificates in response to the Second Circuit's decision in *NECA*.

On March 27, 2014, the Court denied Defendants' motion to dismiss the PFRS SAC with respect to all claims except with respect to PFRS' claim that the offering documents misled investors as to the rating agencies' opinions.  The Court also denied PFRS' motion to amend the PFRS SAC.

On March 20, 2015, PFRS served Defendants with a Motion for Class Certification and Appointment of Class Representative and Class Counsel.

## III.    SETTLEMENT NEGOTIATIONS

The Settling Parties engaged in extensive arm's-length negotiations to resolve the Actions. The Hon. Daniel Weinstein (Ret.) facilitated the settlement negotiations over an extended period of time.  After these extended negotiations and with the assistance of Judge Weinstein, the parties reached an agreement-in-principle to resolve the Actions, subject to satisfaction of certain conditions

and negotiation of the Stipulation.  The Settling Parties are pleased to present the Stipulation, dated as of August 12, 2015, to the Court for preliminary approval.

## IV.     Preliminary Approval of the Settlement is Warranted

### A.     Summary of Settlement Terms

Defendants have agreed to pay or cause to be paid $272,000,000.00 in cash to resolve the claims against them and their related parties in connection with the Settlement Class Members' purchases or other acquisitions of the Certificates.  Any award of attorneys' fees and Litigation Expenses that the Court approves will be paid from the Settlement Amount.  Within 10 business days of the entry of the Preliminary Approval Order, Defendants have agreed to pay the entire $272 million Settlement Amount to the Escrow Agent.  Stipulation, ¶4.1.

The recovery to individual Settlement Class Members will be determined by statutory formula and will depend on several variables, including: the aggregate value of the Recognized Claims represented by valid and acceptable Proof of Claim and Release Forms ("Claim Form" or "Proof of Claim Form"); when the Settlement Class Member's Certificates were purchased or acquired and the price at the time of purchase; any principal amounts received by the Settlement Class Member; whether the Certificates were sold, and if so, when they were sold and for how much; and, if held by the Settlement Class Member on the applicable date of suit for that Certificate, the value of the Certificate on that date.  *See* Stipulation, Ex. A-1, ¶3.

The Notice explains that the Net Settlement Fund will be distributed to eligible Settlement Class Members who submit valid and timely Proof of Claim Forms pursuant to the proposed Plan of Allocation included in the Notice and subject to this Court's approval; there will be no reversion to Defendants.  The Notice also advises Settlement Class Members of, among other information: (i) Lead Counsel's application for attorneys' fees and expenses; (ii) the procedures for objecting to

- 8 -

the Settlement, the Plan of Allocation, or the request for attorneys' fees and Litigation Expenses, and (iii) the date, time and location of the Final Approval Hearing.  *See id.*, ¶¶31-64.

If the Court grants preliminary approval, the Claims Administrator will mail the Notice and Proof of Claim Form (Exhibits A-1 and A-2 to the Stipulation) to Settlement Class Members who can be identified with reasonable effort.[2]  Additionally, Lead Counsel will cause the Summary Notice (Exhibit A-3 to the Stipulation) to be published in the national edition of *Investor's Business Daily* and once over a national newswire service.

## B. The Standards for Reviewing a Proposed Settlement for Preliminary Approval

The settlement of complex class action litigation is favored by public policy and strongly encouraged by the courts.  *See Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116-17 (2d Cir. 2005) ("We are mindful of the 'strong judicial policy in favor of settlements, particularly in the class action context.'  'The compromise of complex litigation is encouraged by the courts and favored by public policy.'")[3]; *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 188 (S.D.N.Y. 2012) ("[W]e emphasize that there is a 'strong judicial policy in favor of settlements, particularly in the class action context.'"); *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995) ("It is well established that there is an overriding public interest in settling and quieting litigation, and this is particularly true in class actions.").

---

[2]   Plaintiffs request that the Court grant approval to retain Gilardi & Co. LLC ("Gilardi") as the claims administrator for this case.  Gilardi has administered numerous complex securities class action settlements to date, including the mortgage-backed securities settlements in *Mass. Bricklayers & Masons Trust Funds v. Deutsche Alt-A Sec., Inc.*, No. 08-cv-03178-LDW (E.D.N.Y.) and *City of Ann Arbor Emps.' Ret. Sys. v. Citigroup Mortg. Loan Trust Inc.*, No. 08-cv-01418 (E.D.N.Y.).

[3]   All citations and footnotes are omitted and emphasis is added throughout unless otherwise noted.

Federal Rule of Civil Procedure 23(e) requires judicial approval for a compromise of claims brought on a class basis. Fed. R. Civ. P. 23(e) ("The claims . . . of a certified class may be settled . . . only with the court's approval."). The approval process typically takes place in two stages. In the first stage, a court preliminarily approves the settlement pending a fairness hearing, certifies the class for settlement purposes, and authorizes notice to be given to the class. *Manual for Complex Litigation (Fourth)* §21.632, at 320 (2004). Once the class has received notice, and has had an opportunity to object or opt out of the proposed settlement class, the court then holds a final settlement hearing. *Id.* §21.633, at 321-22; *see also* 4 Herbert Newberg & Alba Conte, *Newberg on Class Actions* §11.25, at 38-39 (4th ed. 2002) (endorsing two-step process).

When reviewing a proposed settlement in the context of preliminary approval, courts make a preliminary determination regarding the fairness, reasonableness, and adequacy of the settlement terms prior to allowing notice to be sent to the potential class. At the preliminary approval stage, the court's function is "'to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing.'" *Prudential*, 163 F.R.D. at 209. "'Preliminary approval of a class action settlement . . . "is at most a determination that there is what might be termed 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness."'" *Nieves v. Cmty. Choice Health Plan of Westchester, Inc.*, No. 08 CV 321 (VB) (PED), 2012 WL 857891, at *4 (S.D.N.Y. Feb. 24, 2012).

At this stage, the Court need not answer the ultimate question of whether the Settlement is fair, reasonable and adequate. "Preliminary approval is merely the first step in a multi-step process in which the . . . Settlement will be scrutinized by both the court and class members." *Allen v. Dairy Farmers of Am., Inc.*, No. 5:09-CV-230, 2011 U.S. Dist. LEXIS 48479, at *10 (D. Vt. May 4, 2011). "It deprives no party or non-party of any procedural or substantive rights, and provides a mechanism

- 10 -

through which class members who object to the . . . Settlement can voice those objections." *Id.* "Once preliminary approval is bestowed, the second step of the process ensues; notice is given to the class members of a hearing, at which time class members and the settling parties may be heard with respect to final court approval." *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997).

### C.   Preliminary Approval of the Settlement Should Be Granted

Plaintiffs are requesting only that the Court take the first step in the settlement approval process and grant preliminary approval of the proposed Settlement so that notice to the Settlement Class can be distributed and they can weigh in on the proposed Settlement.  In that vein, Plaintiffs submit that the Settlement is an excellent result for the Settlement Class. It provides a significant recovery in a case where Plaintiffs had been conducting merits discovery, had briefed class certification, had retained experts, and were therefore in a strong position to judge the strengths and weaknesses of their cases.  The $272 million recovery is certainly within the range of what would be determined to be fair, reasonable, and adequate.

Where, as here, the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, and falls within the range of approval, preliminary approval is generally granted.  *See NASDAQ*, 176 F.R.D. at 102 (citing *Manual for Complex Litigation (Third)* §30.41 (1995)); *In re Platinum & Palladium Commodities Litig.*, No. 10cv3617, 2014 U.S. Dist. LEXIS 96457, at *36 (S.D.N.Y. July 15, 2014) ("Preliminary approval, at issue here, 'is at most a determination that there is what might be termed "probable cause" to submit the proposal to class members and hold a full-scale hearing as to its fairness.'").

When the Court makes that ultimate determination at a later stage (*i.e.*, after the Final Approval Hearing), it will be asked to review the following "*Grinnell* factors":

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of
> the class to the settlement; (3) the stage of the proceedings and the amount of
> discovery completed; (4) the risks of establishing liability; (5) the risks of
> establishing damages; (6) the risks of maintaining the class action through the trial;
> (7) the ability of the defendants to withstand a greater judgment; (8) the range of
> reasonableness of the settlement fund in light of the best possible recovery; [and]
> (9) the range of reasonableness of the settlement fund to a possible recovery in light
> of all the attendant risks of litigation.

*Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974); *see also In re AMF Bowling Sec. Litig.*,

334 F. Supp. 2d 462, 464 (S.D.N.Y. 2004).[4]

Here, an analysis of the *Grinnell* factors supports preliminary approval of the Settlement.

*See In re Warner Chilcott Ltd. Sec. Litig.*, No. 06 Civ. 11515 (WHP), 2008 U.S. Dist. LEXIS 99840,

at *4 (S.D.N.Y. Nov. 20, 2008) ("Although a complete analysis of [the *Grinnell*] factors is required

for final approval, at the preliminary approval stage, 'the Court need only find that the proposed

settlement fits "within the range of possible approval"' to proceed."); *Platinum*, 2014 U.S. Dist.

LEXIS 96457, at *38 ("At preliminary approval, it is not necessary to exhaustively consider the

factors applicable to final approval.").

For example, with respect to the *Grinnell* factors concerning the risks to the Actions,

although Plaintiffs and Lead Counsel believe that the claims asserted are meritorious, continued

litigation against Defendants posed significant risks that made any recovery uncertain.  The NECA

Action was filed with this Court in December 2008, nearly seven years ago. At the time of the initial

filing, there was little established precedent for RMBS litigation, and no court had sustained claims

under the federal securities laws for purchasers of RMBS securities.  In the intervening years,

Plaintiffs have advanced numerous complex legal and factual issues under the federal securities

---

[4]   "In finding that a settlement is fair, not every factor must weigh in favor of settlement, 'rather the
court should consider the totality of these factors in light of the particular circumstances.'"  *In re
Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 456 (S.D.N.Y. 2004).

laws, requiring extensive motion practice, fact and expert discovery, and deposition testimony. Still, the Members of the Settlement Class faced substantial risk in establishing liability, which required extensive additional fact discovery and complex expert testimony. The Settlement Class also risked the prospect of summary dismissal at the summary judgment stage.

Assuming Plaintiffs prevailed at summary judgment, the eventual trial would have lasted multiple weeks and been very complicated for jurors, in addition to being very expensive for the Settlement Class. Indeed, very little precedent has been established for summary judgment in RMBS actions, not to mention for trial and subsequent appeals. This lack of precedent substantially increased the risk as to whether Plaintiffs would ultimately succeed in persuading the Court that an issue of fact existed at summary judgment and how the jury would react to Plaintiffs' arguments at trial. An appeal would undoubtedly have followed, likely taking years to complete, adding substantial additional risks for the Settlement Class, regardless of the outcome.

In addition, Defendants' defenses, which infused the Actions with much risk, included the following: (i) Plaintiffs had "actual knowledge" of the false and misleading statements at the time they purchased the securities, creating a defense to liability; (ii) the evidence did not support a finding that the offering documents contained any material misstatements, and, in fact, they fully disclosed to investors the standards employed when purchasing loans; and (iii) the "due diligence" conducted by Defendants on the loans they purchased and securitized absolved them of any liability. If Defendants could establish any or all of these defenses, they could have terminated the Actions.

Establishing damages for the Settlement Class also posed risks. Section 11 damages are subject to reduction or elimination as a result of "negative causation" (*i.e.*, that some or all of the losses were attributable to causes other than the misstatements or omissions). Indeed, during the course of the litigation, Defendants contended that any losses were caused by factors other than

- 13 -

untrue statements in the offering documents (such as the downturn in the economy and the housing market).  At the very least, Defendants' "negative causation" defense was an argument that would have to be resolved through extensive expert testimony.  *See, e.g.*, *In re Giant Interactive Grp., Inc.*, 279 F.R.D. 151, 161-62 (S.D.N.Y. 2011) (approving settlement where the litigation risks included a "credible defense of 'negative causation'").

Achieving class certification, and maintaining certification through trial, were also significant risks to the Actions.  Defendants' vigorously opposed class certification in the NECA Action, and were preparing to oppose class certification in the PFRS Action.  NECA Action Dkt. No. 209.  As evidenced by some recent decisions in this Circuit, there was no certainty that the Court would have granted certification of the classes sought in either case.  *See, e.g.*, *N.J. Carpenters Health Fund* v. *Residential Capital, LLC*, 272 F.R.D. 160, 170 (S.D.N.Y. 2011), *aff'd sub nom.*, *N.J. Carpenters Health Fund* v. *RALI Series 2006-QO1*, 477 F. App'x 809 (2d Cir. 2012); *see also Charron v. Wiener*, 731 F.3d 241, 249 (2d Cir. 2013) ("[W]e cannot find that the district court abused its discretion in finding that the class faced significant risks of decertification, that decertification would drastically reduce the chances of any member of the class achieving meaningful relief, and that the litigation risks attendant to these possibilities weighed heavily in favor of the fairness of a settlement . . . ."), *cert. denied*, __ U.S. __, 134 S. Ct. 1941 (2014).  If the Court were to deny class certification, or limit the proposed class definitions in any way, numerous class members would potentially not be able to recover anything.  Thus, the risk of certifying and maintaining the Actions as class cases weighs in favor of preliminary approval of the Settlement.

Finally, the proposed Settlement of $272 million – when viewed in the context of these significant risks and the uncertainties involved with any litigation – is extremely beneficial to the Settlement Class.  The Settlement was negotiated at arm's length in an adversarial manner, by

- 14 -

counsel who are experienced in complex securities litigation and who were acting in an informed manner.  The fact that the Settlement was negotiated at the direction of NECA and PFRS, which are sophisticated institutional investors, also further strengthens the presumption of fairness.  *See Global Crossing*, 225 F.R.D. at 462 (participation of sophisticated institutional investor lead plaintiffs in settlement process supports approval of settlement).

As discussed above, the Actions have been actively prosecuted for more than seven years, beginning at a time when there was little or no precedent in the RMBS area.  Plaintiffs' Counsel conducted substantial investigations and discovery during this time and, accordingly, are well-informed as to the operative facts and potential risks of the Actions.  Under these circumstances, a presumption of fairness attaches to the proposed Settlement.  *See Wal-Mart*, 396 F.3d at 116 ("A 'presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.'") (quoting *Manual for Complex Litigation (Third)* §30.42 (1995)); *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, No. 04-cv-8144(CM), 2009 U.S. Dist. LEXIS 120953, at *14-*16 (S.D.N.Y. Dec. 23, 2009) (same).

Moreover, the Settlement was negotiated at the direction of NECA and PFRS, which are sophisticated institutional investors.  This fact further strengthens the presumption of fairness.  *See Global Crossing*, 225 F.R.D. at 462 (participation of sophisticated institutional investor lead plaintiffs in settlement process supports approval of settlement).

## V.   CERTIFICATION OF THE SETTLEMENT CLASS FOR SETTLEMENT PURPOSES IS APPROPRIATE

In granting preliminary settlement approval, the Court is also requested to certify the proposed Settlement Class for purposes of the Settlement under Rules 23(a) and (b)(3) of the Federal

- 15 -

Rules of Civil Procedure.  Pursuant to ¶1.39 of the Stipulation, the proposed Settlement Class is defined as follows:

> [A]ll Persons who prior to December 11, 2008 purchased or otherwise acquired any of the Certificates in the Offerings and were damaged thereby.  Excluded from the Settlement Class are:  (i) Defendants, originators of any loans underlying the Certificates, and Defendants' and the originators' successors and assigns, and the directors and officers of such entities at all relevant times, as well as members of such Persons' immediate families and their legal representatives, heirs, successors or assigns, and any entity in which any excluded Person has or had a controlling interest, except that affiliates and entities in which such excluded Person has or had a controlling interest are excluded from the Settlement Class only to the extent that such entities themselves had a proprietary (*i.e.*, for their own account) interest in the Certificates and not to the extent that they held the Certificates in a fiduciary capacity or otherwise on behalf of any third-party client, account, fund, trust, or employee benefit plan that otherwise falls within the Settlement Class, and Investment Vehicles shall not be excluded from the Settlement Class; and (ii) Persons who have filed a timely and valid request for exclusion in accordance with the requirements set forth in the Notice, it being understood and agreed that those Persons who have filed individual actions to separately pursue claims against the Defendants relating to the Certificates or the Offerings are nevertheless required to file a timely and valid request for exclusion in order to be excluded from the Settlement Class.

For many years, the Second Circuit has acknowledged the propriety of certifying a settlement class and recognized that "concerns about whether individual issues would create 'intractable management problems' at trial drop out of the predominance analysis because 'the proposal is that there be no trial.'"  *In re Am. Int'l Grp. Sec. Litig.*, 689 F.3d 229, 240 (2d Cir. 2012); *see also Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982); *see also Passafiume v. NRA Grp., LLC*, 274 F.R.D. 424, 428 (E.D.N.Y. 2010); *Marsh & McLennan*, 2009 U.S. Dist. LEXIS 120953, at *14-*16.  Certification of a settlement class "has been recognized throughout the country as the best, most practical way to effectuate settlements involving large numbers of claims by relatively small claimants."  *Prudential*, 163 F.R.D. at 205.  "'[S]ettlement classes are favored when there is little or no likelihood of abuse, and the settlement is fair and reasonable and under the scrutiny of the trial judge.'"  *Id.* (quoting *In re Beef Indus. Antitrust Litig.*, 607 F.2d 167, 174 (5th Cir. 1979)).

1060756_1

Here, the proposed Settlement Class includes purchasers in the 14 Offerings alleged in NECA's and PFRS' complaints.  Claims pertaining to eight of the 14 Offerings were sustained by this Court after reinstatement by the Second Circuit (the "Reinstated Offerings").[5]  Claims pertaining to the other six Offerings were dismissed by this Court, yet remain subject to appellate review (the "Additional Offerings").[6]  To account for the fact that the Additional Offerings have appellate rights which are being settled, the proposed Plan of Allocation – as explained in the Notice – provides that claimants in the Additional Offerings will be entitled to claim 30% of their net recognized losses. *See In re Am. Bank Note Holographics*, 127 F. Supp. 2d 418, 429 (S.D.N.Y. 2001) ("Allocation formulas, including certain discounts for certain securities, are recognized as an appropriate means to reflect the comparative strengths and values of different categories of the claim.").  Courts have repeatedly held that it is appropriate to certify a class for purposes of a settlement that is broader than a litigation class that was previously proposed or certified.  *See, e.g.*, *In re Initial Pub. Offering Sec. Litig.*, 226 F.R.D. 186, 190 (S.D.N.Y. 2005) ("a court may approve a settlement class broader than a litigation class that has already been certified"); *In re MicroStrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d 654, 661 & n.12 (E.D. Va. 2001) (certifying a class for settlement that was broader than the original certified class and noting that "[s]uch . . . expansion is permissible under the circumstances, as all the requirements of Rule 23 . . . are satisfied"); *see also Spann v. AOL Time Warner, Inc.*, No. 02 Civ. 8238 (DLC), 2005 U.S. Dist. LEXIS 10848, at *17-*18 (S.D.N.Y. June 7, 2005) (certifying a

---

[5]    The Reinstated Offerings are: (1) GSAA Home Equity Trust 2007-3; (2) GSR Mortgage Loan Trust 2007-3F; (3) GSAA Home Equity Trust 2007-4; (4) GSAA Home Equity Trust 2007-5; (5) GSAA Home Equity Trust 2007-6; (6) GSAA Home Equity Trust 2007-7; (7) GSAA Home Equity Trust 2007-10; and (8) GSR Mortgage Loan Trust 2007-4F.

[6]    The Additional Offerings are: (1) GSAA Home Equity Trust 2007-8; (2) GSAMP Trust 2007-HE1; (3) GSAMP Trust 2007-HE2; (4) GSR Mortgage Loan Trust 2007-OA1; (5) GSR Mortgage Loan Trust 2007-OA2; and (6) GSR Mortgage Loan Trust 2007-5F.

settlement-only class after earlier denying class certification for failure to establish typicality, adequacy and predominance); *Ramirez v. DeCoster*, 142 F. Supp. 2d 104, 111 n.9 (D. Me. 2001) (certifying a settlement class after declining to certify a litigation class).

Classes for the purpose of settlement have been routinely certified in mortgage-backed-securities cases with similar factual records as here, including where the district court had previously dismissed certain claims that were being included in the settlement. *See, e.g., In re Wells Fargo Mortg.-Backed Certificates Litig.*, No. 09-CV-01376-LHK, 2011 U.S. Dist. LEXIS 81196, at *9 (N.D. Cal. July 26, 2011) (granting preliminary approval in a settlement that "also addresses claims that were previously dismissed by this Court, which [were then] the subject of several different appeals"); *In re Morgan Stanley Mortg. Pass-Through Certificates Litig.*, No. 1:09-cv-02137-KBF, Dkt. No. 334 (S.D.N.Y. Dec. 19, 2014); *IndyMac Mortg.-Backed Sec. Litig.*, No. 1:09-cv-04583-LAK, Dkt. No. 565 (S.D.N.Y. Feb. 23, 2015); *New Jersey Carpenters Vacation Fund v. The Royal Bank of Scotland Grp. PLC*, No. 1:08-cv-05093-LAP-DCF, Dkt. No. 281 (S.D.N.Y. Nov. 4, 2014).

As set forth below, the proposed Settlement Class meets all the requirements of Rule 23(a) and Rule 23(b)(3), there is no likelihood of abuse of the class action device, and the Settlement remains subject to the Court's approval at the Final Approval Hearing.[7]

## A.     The Settlement Class Satisfies the Requirements of Rule 23(a)

Certification is appropriate under Rule 23(a) if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

---

[7]     Plaintiffs incorporates by reference the applicable arguments and evidence in support of class certification as discussed in Plaintiffs' Memorandum of Law in Support of Motion for Class Certification and Appointment of Class Representative and Class Counsel, filed on March 23, 2015, in the NECA Action (NECA Action Dkt. Nos. 198, 199).

(4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

     **1.**      **Numerosity**

Class certification under Rule 23(a)(1) is appropriate where a class contains so many members that joinder of all would be "impracticable." Fed. R. Civ. P. 23(a)(1). A plaintiff is not required to show that joinder is impossible, *Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*, 301 F.R.D. 116, 131 (S.D.N.Y. 2014), but "only that the difficulty or inconvenience of joining all members of the class make use of the class action appropriate." *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 244-45 (2d Cir. 2007). Numerosity is presumed when a class consists of forty members or more. *See Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).

NECA's expert applied a conservative method of counting investors and concluded that there are more than 400 investors who purchased or otherwise acquired Certificates in the Offerings for which the Court sustained NECA's claims. NECA Action Dkt. No. 198. Notably, an RMBS class action is properly certified "even where certain sub-groups of that class do not meet the presumptive 40-member requirement." *In re IndyMac Mortg.-Backed Sec. Litig.*, 286 F.R.D. 226, 232 (S.D.N.Y. 2012); *see also Dodona I, LLC v. Goldman, Sachs & Co.*, 296 F.R.D. 261, 266 (S.D.N.Y. 2014) (rejecting defendants' argument that investors who purchased in different offerings should not be "pooled into one class" because the "offering circulars . . . were similar in all relevant aspects"); *N.J. Carpenters Health Fund v. Residential Capital, LLC*, No. 08 CV 8781 (HB), 2013 U.S. Dist. LEXIS 180913, at *18 (S.D.N.Y. Dec. 27, 2013) (same).

Other courts have readily determined that numerosity is satisfied in the context of similar RMBS class actions. *See, e.g., J.P. Morgan*, 301 F.R.D. at 131; *Pub. Emps.' Ret. Sys. of Miss. v.*

- 19 -

*Goldman Sachs Grp., Inc.*, 280 F.R.D. 130, 134 (S.D.N.Y. 2012); *Pub. Emps.' Ret. Sys. of Miss. v. Merrill Lynch & Co.*, 277 F.R.D. 97, 104-05 (S.D.N.Y. 2011).[8]

### 2.    Commonality

Rule 23(a)(2) requires the existence of at least one question of law or fact common to the class. *See Cent. States*, 504 F.3d at 245; Fed. R. Civ. P. 23(a)(2). Federal securities cases easily meet the commonality requirement, because commonality is "'plainly satisfied in a securities case where the alleged misrepresentations in the prospectus relate to all the investors, because the existence and materiality of such misrepresentations obviously present important common issues.'" *J.P. Morgan*, 301 F.R.D. at 131 (quoting *IndyMac*, 286 F.R.D. at 233).

Here, the record reflects the existence of common questions. Defendants' misrepresentations and omissions were common across all Offerings. Examples of the questions of law and fact common to all Settlement Class Members include the following:

1.    Whether Defendants violated the Securities Act by the acts and conduct alleged in the Complaints;

2.    Whether the Defendants participated in the course of conduct alleged in the Complaints;

3.    Whether the offering documents issued by Defendants to the investing public negligently omitted and/or misrepresented material facts about the Certificates and the underlying mortgage loans;

4.    Whether Plaintiffs' and Settlement Class Members' claims are subject to common affirmative defenses; and

---

8    *See also IndyMac*, 286 F.R.D. at 233; *N.J. Carpenters Health Fund v. Residential Capital, LLC*, 288 F.R.D. 290, 296 (S.D.N.Y. 2013); *Tsereteli v. Residential*, 283 F.R.D. 199, 206 (S.D.N.Y. 2012).

5.      Whether the Settlement Class sustained damages and the appropriate measure thereof.

These common questions are more than sufficient to establish Rule 23(a)(2) "commonality." On a similar record, the court in *Merrill Lynch*, 277 F.R.D. at 106, found that "[t]he common questions presented by this case – essentially, whether the offering documents were false or misleading in one or more respects – are clearly susceptible to common answers"; this was especially true given that all of the Offerings at issue emanate from the same investment bank and were structured, offered, and sold by the same entities and personnel. *Id.* at 113; *see also Tsereteli*, 283 F.R.D. at 207 ("[T]he central issue is whether the Offering Documents contain material misstatements or omissions, an issue that is common to all class members.").

### 3.      Typicality

Rule 23(a)(3) requires that the claims of the class representatives be "typical" of the claims of the class. Fed. R. Civ. P. 23(a)(3). Typicality is satisfied where "'each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability.'" *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009). "'Typical' does not mean 'identical.'" *See Marsh & McLennan*, 2009 U.S. Dist. LEXIS 120953, at *31.

Like commonality, typicality is plainly satisfied here. Plaintiffs and the Settlement Class Members assert identical legal theories arising from the same facts and course of conduct by Defendants; namely, Defendants' systematic acquisition and securitization of noncompliant loans and the offering documents' misstatements regarding the issued Certificates. As the court in *J.P. Morgan* recently held in certifying nearly identical claims as to those alleged here, typicality is established where the "claims of the class members arise from the same course of events:  all purchased Certificates that contained similar statements in their offering documents regarding

- 21 -

underwriting standards.  As other courts have determined, typicality 'may be found in a securities

class action based on something as simple as a common "disregard of underwriting guidelines."'"

*J.P. Morgan*, 301 F.R.D. at 132.[9]  All of the Offerings were assembled by the same sponsor,

depositor and underwriter, and the Offerings contain loans from many of the same originators.

In sum, Plaintiffs' and the Settlement Class's claims "arise from the same course of events,

namely, the events giving rise to the issuance of the Offering Documents in connection with the . . .

relevant Offerings, and the same allegedly misleading statements made in each of those Offering

Documents." *Merrill Lynch*, 277 F.R.D. at 107.

### 4.	Adequate Representation

Rule 23(a)(4) is satisfied if "the representative parties will fairly and adequately protect the

interests of the class." Fed. R. Civ. P. 23(a)(4).  "The adequacy inquiry overlaps with the typicality

inquiry, so that a finding of typicality usually suggests that the class representative will also satisfy

the adequacy requirement."  *Wallace v. Intralinks*, 302 F.R.D. 310, 316 (S.D.N.Y. 2014).  "The

adequacy requirement is not demanding."  *Id.*  "'Generally, adequacy of representation entails

inquiry as to whether: 1) plaintiff's interests are antagonistic to the interest of other members of the

class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation.'"  *N.J.

Carpenters Health Fund v. DLJ Mortg. Capital, Inc.*, No. 08 Civ. 5653 (PAC), 2014 U.S. Dist.

LEXIS 35326, at *18  (S.D.N.Y. Mar. 17, 2014).  A "'class representative must . . . possess the same

interest and suffer the same injury as the class members.'"  *Id.*  Although Plaintiffs did not purchase

Certificates in all of the Offerings, "a proposed class representative may 'adequately represent class

---

[9]	Numerous other courts determined that typicality is satisfied in RMBS class actions.  *See, e.g.*, *Merrill Lynch*, 277 F.R.D. at 106-09; *Goldman Sachs*, 280 F.R.D. at 135; *IndyMac*, 286 F.R.D. at 233-35; *see also In re Dynex Capital Sec. Litig.*, No. 05 Civ. 1897 (HB), 2011 U.S. Dist. LEXIS 22484, at *8-*10 (S.D.N.Y. Mar. 7, 2011).

- 22 -

members who purchased certificates in other offerings . . . as long as conflicts or antagonism do not exist between class members and representatives.'" *Id.* at *19.

Here, Plaintiffs' interests are not antagonistic with the Settlement Class and no fundamental conflict exists.  Moreover, NECA's and PFRS' interests are "directly aligned with the interests of all the class members, who collectively purchased Certificates in each of the Offerings pursuant to the same material untrue statements and omissions in the Offering Documents." *Merrill Lynch*, 277 F.R.D. at 110 (citing *Hicks v. Morgan Stanley & Co.*, No. 01 Civ. 10071 (HB), 2003 U.S. Dist. LEXIS 11972, at *12-*13 (S.D.N.Y. July 16, 2003)); *In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267, 282 (S.D.N.Y. 2003).

Plaintiffs suffered damages arising from Defendants' conduct in disseminating false and misleading statements and omissions in the offering documents, just as all the other Settlement Class Members did, and have every incentive to fully litigate this case to the fullest extent and maximize the amount recovered for the entire Settlement Class.  Further, NECA has been involved in this litigation every step of the way, dating back to the case's inception nearly seven years ago, in 2008. PFRS has diligently pursued its claims since 2010.  As part of their involvement, Plaintiffs have been active participants, which have included monitoring and supervising the prosecution of the Actions, reviewing periodic updates and other documents concerning the litigation, reviewing pleadings and consulting with their counsel regarding significant developments, responding to interrogatories, collecting and producing documents.

Furthermore, Plaintiffs are the very type of institutional investor that Congress sought to lead securities litigation when it passed the PSLRA.  Congress enacted the PSLRA in large part to encourage institutional investors like Plaintiffs to take control of securities class actions by

"participat[ing] in the litigation and exercis[ing] control over the selection and actions of plaintiff's counsel." H.R. Conf. Rep. No. 104-369, at 32 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 731.

Last, Lead Counsel has demonstrated that they are qualified and capable of prosecuting the claims at issue and overseeing the settlement process, having prosecuted securities class actions (including mortgage-backed securities cases) for many years with proven track records of success.[10]

### 5.    Rule 23(b)(3) Is Satisfied

Rule 23(b)(3) authorizes class certification if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Rule 23(b)(3) is "designed to secure judgments binding all class members save those who affirmatively elect[] to be excluded," where a class action will "'achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" *Amchem Prods. v. Windsor*, 521 U.S. 591, 614-15 (1997). Certification of the Settlement Class for settlement serves these purposes.

### 6.    Common Legal and Factual Questions Predominate

"The predominance requirement is satisfied 'if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof.'" *In re US FoodService Pricing Litig.*, 729 F.3d 108, 118 (2d Cir. 2013), *cert.*

---

[10]   *See J.P. Morgan*, 301 F.R.D. at 135 (granting class certification in an RMBS case, finding that "Robbins Geller, the firm acting as counsel to Plaintiffs, is experienced in securities class action litigation and qualified to conduct this lawsuit"); *City of Livonia Emps.' Ret. Sys. v. Wyeth*, 284 F.R.D. 173, 180 (S.D.N.Y. 2012) ("[T]his Court agrees with other courts in this district that Robbins Geller is 'qualified, experienced, and able to conduct the litigation.'").

- 24 -

*denied*, __ U.S. __, 134 S. Ct. 1938 (2014).  Common issues will predominate where each class member is alleged to have suffered the same kind of harm pursuant to the same legal theory arising out of the same alleged course of conduct, and the only individualized questions concern the amount of damages.  *See Marsh & McLennan*, 2009 U.S. Dist. LEXIS 120953, at *11.  As the Supreme Court has noted, predominance is a test "readily met" in cases alleging securities fraud.  *Amchem*, 521 U.S. at 625.

Courts have routinely found mortgage-backed securities cases with similar factual records to satisfy the predominance standard for class certification.[11]  Indeed, where, as here, plaintiffs' prima facie case may be established through common proof of the defendant's liability, the predominance inquiry is "satisfied."  *Dandong v. Pinnacle Performance Ltd.*, No. 10 Civ. 8086 (JMF), 2013 U.S. Dist. LEXIS 150259, at *23-*24 (S.D.N.Y. Oct. 17, 2013).  As Judge Oetken recently recognized when presented with similar facts and evidence in *J.P. Morgan*:

> The class members' proof of liability will principally require an examination of the Defendants' issuance of the Certificates pursuant to the same basic process for purchase by the class members.  "***The alleged flaws common to that process, which resulted in the misstatements, will be the subject of common proof.***"  As in previous cases, there is "substantial factual and legal overlap" between the Offerings, due to similarities in the alleged falsehoods in the offering documents, along with "the same entities and employees involved in making the offerings, the same 'wrongful course of conduct' with regard to underwriting guidelines, and the overlap in mortgage originators."

*J.P. Morgan*, 301 F.R.D. at 136.  For the following reasons, this Court should find similarly here.

Plaintiffs' claims, including the elements of falsity, materiality, and damages are all susceptible to common evidence and proof, such as through internal Goldman Sachs documents,

---

[11]   *See J.P. Morgan*, 301 F.R.D. at 136-38 (certifying class of RMBS investors after finding predominance test satisfied); *IndyMac*, 286 F.R.D. at 236, 240-42 (same); *Tsereteli*, 283 F.R.D. at 218 (same); *Goldman Sachs*, 280 F.R.D. at 142 (same); *Merrill Lynch*, 277 F.R.D. at 121 (same); *DLJ*, 2014 U.S. Dist. LEXIS 35326, at *22-*23 (same)

witnesses at Goldman Sachs, and third party originators who were involved in almost every transaction or securitization, as well as the testimony of expert witnesses. *See DLJ*, 2014 U.S. Dist. LEXIS 35326, at *27 ("'Liability will turn first and primarily on whether the Offering Documents contained misstatements and omissions as plaintiff alleges – an issue clearly subject to "generalized proof."'"). In addition, materiality is an objective question, and would be "proved through evidence common to the class." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, __ U.S. __, 133 S. Ct. 1184, 1195-96 (2013) (citing *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 445 (1976)); *see also DLJ*, 2014 U.S. Dist. LEXIS 35326, at *14. Moreover, damages would be established through the statutory method described in the Securities Act. *See* 15 U.S.C. §§77k(e), 77l(b). Such damages are subject to a common methodology that is readily applicable to all Settlement Class Members. *See IndyMac*, 286 F.R.D. at 235 ("Similarly [to demonstrating materiality], damages in Securities Act claims are calculated based on a statutory formula, so any differences in damages awards do not defeat class certification . . . ."). Lastly, Defendants' affirmative defenses would also be subject to generalized proof and, as such, "[n]umerous courts have held" that they are insufficient to defeat predominance or prevent class certification.[12]

---

[12] *See, e.g.*, *In re Lehman Bros. Sec. & ERISA Litig.*, No. 09 MD 2017 (LAK), 2013 U.S. Dist. LEXIS 13999, at *22-*23 (S.D.N.Y. Jan. 23, 2013); *IndyMac*, 286 F.R.D. at 237-42 (rejecting defendants' arguments that affirmative defenses of knowledge, statute of limitations, reliance, due diligence and loss causation created individual issues sufficient to defeat predominance); *Tsereteli*, 283 F.R.D. at 212-17 (same as to knowledge, statute of limitations, reliance and loss causation defenses); *Merrill Lynch*, 277 F.R.D. at 114-20 (same); *Goldman Sachs*, 280 F.R.D. at 137-41 (same as to knowledge, statute of limitations and loss causation defenses); *N.J. Carpenters Health Fund v. DLJ Mortg. Capital, Inc.*, No. 08 Civ. 5653 (PAC), 2011 U.S. Dist. LEXIS 92597, at *17-*26 (S.D.N.Y. Aug. 16, 2011) (reaching same conclusion, where defendants raised affirmative defenses of knowledge, reliance, and loss causation); *J.P. Morgan*, 301 F.R.D. at 136-38 (predominance standard met notwithstanding defendants' affirmative defense claims pertaining to knowledge of putative class members and negative loss causation).

Because Plaintiffs can demonstrate Defendants' liability using generalized proof on a class-wide basis, and because these core issues outweigh any individual ones, Rule 23(b)(3)'s predominance requirement is satisfied.

**B.     A Class Action Is Superior to Other Methods of Adjudication**

Rule 23(b)(3) sets forth the following non-exhaustive factors to be considered in making a determination of whether class certification is the superior method of litigation:  "(A) the class members' interests in individually controlling the prosecution . . . of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by . . . class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action."  *See* Fed. R. Civ. P. 23(b)(3).

Considering these factors, the class action is clearly "superior to other available methods for fairly and efficiently adjudicating" the federal securities law claims of the large number of purchasers of the RMBS at issue in the Actions.  Indeed, courts have concluded that the class action device in securities cases is usually the superior method of redressing injuries to a large number of individual plaintiffs.  *See Merrill Lynch*, 277 F.R.D. at 120; *see also DLJ*, 2014 U.S. Dist. LEXIS 35326, at *33 (quoting *In re NYSE Specialists Sec. Litig.*, 260 F.R.D. 55, 80 (S.D.N.Y. 2009)).

Each of these factors and the purposes of Rule 23 weigh in favor of certifying the Settlement Class for purposes of the Settlement.  Certification will not prejudice the Settlement Class Members' interests in controlling individual actions because requiring multiple actions would be costly and inefficient and could significantly reduce the prospects for recovery.  *See Merrill Lynch*, 277 F.R.D. at 120.

## VI.   THE PROPOSED FORM AND METHOD OF CLASS NOTICE AND THE FORM OF THE PROOF OF CLAIM ARE APPROPRIATE

### A.   The Scope of the Proposed Notice Program Is Adequate

There are no "rigid rules" that apply when determining the adequacy of notice for a class action settlement.  Rather, when measuring the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules, the court should look to its reasonableness. *In re Merrill Lynch & Co. Research Reports Sec. Litig.*, No. 02 MDL 1484 (JFK), 2007 U.S. Dist. LEXIS 9450, at *26 (S.D.N.Y. Feb. 1, 2007).  It is clearly established that "[n]otice need not be perfect, but need be only the best notice practicable under the circumstances, and each and every class member need not receive actual notice, so long as class counsel acted reasonably in choosing the means likely to inform potential class members." *Id.* at *27.  In fact, notice programs such as the one proposed by Lead Counsel have been approved as adequate under the Due Process Clause and Rule 23 in a multitude of class action settlements.  *See, e.g.*, *In re Bear Stearns Mortg. Pass-Through Certificates Litig.*, No. 1:08-cv-08093-LTS, slip op. at 4-5 (S.D.N.Y. Feb. 19, 2015) (Dkt. No. 268 at 4-5) (approving notice program consisting of mailing and summary notice publication); *In re Luxottica Grp. S.p.A. Sec. Litig.*, No. CV 01-3285 (JBW)(MDG), 2005 U.S. Dist. LEXIS 27765, at *5 (E.D.N.Y. Nov. 15, 2005) (approving notice program, consisting of mailing and summary notice publication); *In re Prudential Sec. Ltd. P'ships Litig.*, 164 F.R.D. 362, 368 (S.D.N.Y.) (approving proposed notice and noting mailing of notice to each identifiable class member's last known address is "a procedure that has been given wide-spread approval in other class actions"), *aff'd sub nom. Toland v. Prudential Sec. P'ship Litig.*, 107 F.3d 3 (2d Cir. 1996).

Here, the parties propose disseminating notice by mail and through publication.  Through consultation with Defendants' Counsel, Lead Counsel are ensuring that every known avenue for obtaining the identity of Settlement Class Members is being utilized to disseminate the Notice by

mail. Therefore, it is reasonable to conclude that the Notice will reach the vast majority of the Settlement Class Members, is adequate, and should be approved by the Court.

      **B.**      **The Proposed Form of Notice Comports with the Requirements of Due Process, the Private Securities Litigation Reform Act of 1995 and Rule 23 and Is the Same or Similar to the Form(s) of Notice Routinely Approved by Courts in This Jurisdiction**

As outlined in the agreed-upon form of proposed Preliminary Approval Order (Exhibit A to the Stipulation), Plaintiffs will notify Settlement Class Members of the Settlement by mailing the Notice and Proof of Claim to all Settlement Class Members who can be identified with reasonable effort, including through the cooperation of Defendants and/or their agents, as set forth in the proposed Preliminary Approval Order, ¶¶8, 9. The identities of at least some of the Settlement Class Members were also obtained during the discovery in this Action. The Notice will advise Settlement Class Members of (i) the pendency of the Actions; (ii) the essential terms of the Settlement; and (iii) information regarding Lead Counsel's motion for attorneys' fees and Litigation Expenses. The Notice also will provide specifics on the date, time and place of the Final Approval Hearing and set forth the procedures for objecting to the Settlement, the proposed Plan of Allocation or the motion for attorneys' fees and Litigation Expenses, and the procedure for requesting exclusion from the Settlement Class. *See* Stipulation, Ex. A-1.

In addition to mailing the Notice and Proof of Claim Form, Lead Counsel will cause publication of a Summary Notice in the national edition of *Investor's Business Daily* and once over a national newswire service. Stipulation, Ex. A, ¶7(b).

The form and manner of providing notice to the Settlement Class satisfy the requirements of due process, Rule 23, and the PSLRA, 15 U.S.C. §77z-1(a)(7).  It is also similar to other notice programs that courts have approved and that have been used successfully in other RMBS cases.[13]

Specifically with respect to cases filed under the PSLRA, notices of settlements must state: (i) the amount of the settlement proposed to be distributed to the parties to the action, determined in the aggregate and on an average per share basis; (ii) if the parties do not agree on the average amount of damages per share that would be recoverable in the event plaintiff prevailed, a statement from each party concerning the issue(s) on which the parties disagree; (iii) a statement indicating which parties or counsel intend to make an application for an award of attorneys' fees and costs (including the amount of such fees and costs determined on an average per share basis), and a brief explanation supporting the fees and costs sought; (iv) the name, telephone number, and address of one or more representatives of counsel for the plaintiff class who will be reasonably available to answer questions concerning any matter contained in the notice of settlement published or otherwise disseminated to the class; (v) a brief statement explaining the reasons why the parties are proposing the settlement; and (vi) such other information as may be required by the court.  *See* 15 U.S.C. §77z-1(a)(7).

The proposed Notice contains all of the information required by the PSLRA.  *See generally* Stipulation, Ex. A-1.  The information is also provided in a format that is accessible to the reader.  In addition, the Notice advises recipients that they have the right to object to any aspect of the

---

[13]  *See, e.g.*, *In re Bear Stearns Mortg. Pass-Through Certificates Litig.*, No. 08-cv-8093-LTS, slip op. (S.D.N.Y. Feb. 2, 2015) (Dkt. No. 268); *In re Morgan Stanley Mortg. Pass-Through Certificates Litig.*, No. 09-CV-2137-KBF, slip op. (S.D.N.Y. Sept. 10, 2014) (Dkt. No. 309); *Pub. Emps.' Ret. Sys. of Miss. v. Merrill Lynch & Co., Inc.*, No. 08-cv-10841-JSR-JCL, slip op. (S.D.N.Y. Dec. 15, 2011) (Dkt. No. 176); *Pub. Emps.' Ret. Sys. of Miss. v. Goldman Sachs Grp., Inc.*, No. 09-CV-1110 (HB), slip op. (S.D.N.Y. Aug. 13, 2012) (Dkt. No. 141); *Plumbers' & Pipefitters' Local #562 Supplemental Plan & Trust v. J.P. Morgan Acceptance Corp. I*, No. 08-cv-1713 (PKC) (WDW), slip op. (E.D.N.Y. May 2, 2014) (Dkt. No. 219).

1060756_1

Settlement, the Plan of Allocation, or the fee and Litigation Expense application. *See id.*, ¶¶31-64. Furthermore, the Notice provides recipients with the contact information for Lead Counsel, Defendants' Counsel, and the Claims Administrator. *See id.*, ¶¶6, 57, 64. Finally, the proposed format is the same as or similar to those that have been approved by many other courts in this jurisdiction. Lead Counsel therefore respectfully submits that the Court should approve the form of notice. *See supra* n.13.

In short, the Notice and Summary Notice "'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.'" *Wal-Mart*, 396 F.3d at 114. The manner of providing notice, which includes individual notice by mail to all Settlement Class Members who can be reasonably identified, represents the best notice practicable under the circumstances and satisfies the requirements of due process and Rule 23. *See Warner Chilcott*, 2008 U.S. Dist. LEXIS 99840, at *7-*8.

## VII.   PROPOSED SCHEDULE OF SETTLEMENT EVENTS

If the Court grants preliminary approval of the proposed Settlement, the Settling Parties respectfully submit the following procedural schedule for the Court's review:

| Event | Proposed Due Date | Date/Deadline |
|---|---|---|
| Deadline for the commencement of mailing the Notice and Proof of Claim to Settlement Class Members (which date shall be the "Notice Date") (Preliminary Approval Order ¶7(a)) | 10 business days after entry of Preliminary Approval Order | _____, 2015 |
| Deadline for publishing the Summary Notice (Preliminary Approval Order ¶7(b)) | 14 calendar days after the Notice Date | _____, 2015 |
| Deadline for filing of papers in support of final approval of Settlement, Plan of Allocation, and Lead Counsel's application for attorneys' fees and expenses (Preliminary Approval Order ¶15) | 35 calendar days after the Notice Date | _____, 2015 |
| Deadline for receipt of exclusion requests or objections (Preliminary Approval Order ¶¶16, 17) | 50 calendar days after the Notice Date | _____, 2015 |
| Deadline for filing reply papers (Preliminary Approval Order ¶15) | 65 calendar days after the Notice Date | _____, 2015 |

| Event | Proposed Due Date | Date/Deadline |
|---|---|---|
| Final Approval Hearing (Preliminary Approval Order ¶13) | At least 100 calendar days from the date of the Preliminary Approval Order | _____, 2015 |
| Deadline for submitting Claims Forms (Preliminary Approval Order ¶19(a)) | 120 calendar days after the Notice Date | _____, 2015 |

## VIII.   CONCLUSION

Plaintiffs respectfully request that the Court: (i) preliminarily approve the Settlement; (ii) certify the proposed Settlement Class for the purposes of the Settlement; (iii) approve the proposed form and manner of notice to Settlement Class Members; and (iv) schedule a hearing on Plaintiffs' motion for final approval of the Settlement and Lead Counsel's motion for an award of attorneys' fees and Litigation Expenses.  The Settling Parties' agreed-upon form of proposed Preliminary Approval Order is attached to the accompanying Stipulation as Exhibit A.

DATED:  August 13, 2015                     Respectfully submitted,

                                            ROBBINS GELLER RUDMAN
                                              & DOWD LLP
                                            ARTHUR C. LEAHY
                                            THOMAS E. EGLER
                                            SUSAN G. TAYLOR
                                            LUCAS F. OLTS
                                            SUSANNAH R. CONN
                                            ANGEL P. LAU
                                            JENNIFER N. CARINGAL


                                                   s/ Lucas F. Olts
                                            _____
                                                  LUCAS F. OLTS

                                            655 West Broadway, Suite 1900
                                            San Diego, CA  92101
                                            Telephone:  619/231-1058
                                            619/231-7423 (fax)

- 32 -

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
DAVID A. ROSENFELD
58 South Service Road, Suite 200
Melville, NY 11747
Telephone: 631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
drosenfeld@rgrdlaw.com

Lead Counsel for Plaintiff NECA-IBEW Health &
Welfare Fund

CAVANAGH & O'HARA
PATRICK J. O'HARA
407 East Adams Street
Springfield, IL 62701
Telephone: 217/544-1771
217/544-9894 (fax)

Additional Counsel for Plaintiff NECA-IBEW
Health & Welfare Fund


WOLF HALDENSTEIN ADLER
  FREEMAN & HERZ, LLP
LAWRENCE P. KOLKER
MICHAEL LISKOW


                  s/ Lawrence P. Kolker
                LAWRENCE P. KOLKER

270 Madison Avenue
New York, New York 10016
Telephone: 212/545-4600
212/545-4653 (fax)

Counsel for Plaintiff The Police and Fire
Retirement System of the City of Detroit

- 33 -

KOHN, SWIFT & GRAF, P.C.
JOSEPH C. KOHN
DENIS F. SHEILS
WILLIAM E. HOESE
BARBARA L. GIBSON


                          s/ Denis F. Sheils
                        DENIS F. SHEILS

One South Broad Street
Suite 2100
Philadelphia, PA  19107-3389
Telephone:  215/238-1700
215/238-1968 (fax)

Counsel for Plaintiff The Police and Fire
Retirement System of the City of Detroit


## ECF CERTIFICATION

The filing attorney attests that he has obtained concurrence regarding the filing of this

document from the signatories to this document.


Dated:  August 13, 2015              By:   s/ Lucas F. Olts
                                           LUCAS F. OLTS

- 34 -

1060756_1

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 13, 2015, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on August 13, 2015.

s/ Lucas F. Olts
LUCAS F. OLTS

ROBBINS GELLER RUDMAN
   & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail:   lolts@rgrdlaw.com

1060756_1

## Mailing Information for a Case 1:08-cv-10783-MGC

**Electronic Mail Notice List**

The following are those who are currently on the list to receive e-mail notices for this case.

- **Matthew I. Alpert**
  malpert@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Jennifer Nunez Caringal**
  jcaringal@rgrdlaw.com

- **Joanna Ka Wai Chan**
  jchan@cohengresser.com,managingclerksoffice@cohengresser.com

- **Susannah R Conn**
  sconn@rgrdlaw.com,MAlbert@rgrdlaw.com

- **Courtland W. Creekmore**
  courtland.creekmore@gmail.com

- **Christopher James Dunne**
  dunnec@sullcrom.com,s&cmanagingclerk@sullcrom.com,martelj@sullcrom.com

- **Theodore Edelman**
  edelmant@sullcrom.com,holtzmanb@sullcrom.com,pierrej@sullcrom.com,Bellwarej@sullcrom.com,katzmand@sulllcrom.com,Trapsl@sullcrom.com,Rabinl@sullcrom

- **Thomas Edward Egler**
  tome@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Lawrence Thomas Gresser**
  ltgresser@cohengresser.com,managingclerksoffice@cohengresser.com

- **Evan Jay Kaufman**
  ekaufman@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Richard Howard Klapper**
  klapperr@sullcrom.com,josepht@sullcrom.com,Bellwarej@sullcrom.com,gottliebal@sullcrom.com,Trapsl@sullcrom.com,cedenom@sullcrom.com,s&cmanagingclerk

- **Lawrence Paul Kolker**
  kolker@whafh.com

- **Maya Krugman**
  krugmanm@sullcrom.com,s&cmanagingclerk@sullcrom.com

- **Angel P. Lau**
  alau@rgrdlaw.com

- **Arthur C. Leahy**
  artl@rgrdlaw.com

- **Nathan R. Lindell**
  nlindell@rgrdlaw.com

- **Ryan A. Llorens**
  ryanl@rgrdlaw.com,SBierl@rgrdlaw.com

- **L. Dana Martindale**
  dmartindale@rgrdlaw.com

- **Ivy T. Ngo**
  ingo@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Lucas F. Olts**
  lolts@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **D. Andrew Pietro**
  pietroda@sullcrom.com,s&cmanagingclerk@sullcrom.com

- **Nathaniel P. T. Read**
  NRead@CohenGresser.com,managingclerksoffice@cohengresser.com,ecf-67ec60b93076@ecf.pacerpro.com

- **David Maxwell Rein**
  reind@sullcrom.com,druckj@sullcrom.com,s&cmanagingclerk@sullcrom.com,pierrej@sullcrom.com

- **David Avi Rosenfeld**
  drosenfeld@rgrdlaw.com,e_file_ny@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Patrice Alecia Rouse**
  rousep@sullcrom.com

- **Samuel Howard Rudman**
  srudman@rgrdlaw.com,e_file_ny@rgrdlaw.com,mblasy@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Scott H. Saham**
  scotts@rgrdlaw.com,karenc@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Denis Francis Sheils**
  dsheils@kohnswift.com

- **Gerald H. Silk**
  jerry@blbglaw.com,errol.hall@blbglaw.com,ross@blbglaw.com

- **Susan G. Taylor**
  susant@rgrdlaw.com

- **Michael Thomas Tomaino , Jr**
  tomainom@sullcrom.com,s&cmanagingclerk@sullcrom.com,pierrej@sullcrom.com,katzmand@sulllcrom.com

- **Harsh Nayan Trivedi**
  s&cmanagingclerk@sullcrom.com,gilmorek@sullcrom.com,trivedih@sullcrom.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)