UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————— x

NECA-IBEW HEALTH & WELFARE FUND, :
Individually and On Behalf of All Others :
Similarly Situated, :
:
Plaintiff, :
:
vs. :
:
GOLDMAN, SACHS & CO., et al., :
:
Defendants. :

———————————————————— x

Civil Action No. 1:08-cv-10783-LAP

"ECF Case"

<u>CLASS ACTION</u>

POLICE AND FIRE RETIREMENT SYSTEM :
OF THE CITY OF DETROIT, Individually :
and On Behalf of All Others Similarly Situated, :
:
Plaintiff, :
:
vs. :
:
GOLDMAN, SACHS & CO., et al., :
:
Defendants. :

——————————————————— :x

Civil Action No. 10 Civ. 4429-LAP

"ECF Case"

CLASS ACTION

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION

# TABLE OF CONTENTS

**Page**

I.     PRELIMINARY STATEMENT ...................................................................................1

II.    PROCEDURAL AND FACTUAL BACKGROUND.........................................................5

III.   THE PROPOSED SETTLEMENT IS FAIR, ADEQUATE, AND
       REASONABLE, AND NOT COLLUSIVE ...................................................................6

       A.     Settlements Are Favored and Encouraged ...............................................6

       B.     The Settlement Is Presumptively Fair .....................................................7

       C.     The Settlement Meets the Second Circuit Requirements for Approval.................7

              1.     The Complexity, Expense, and Likely Duration of the Litigation
                     Justifies the Settlement ...............................................................8

              2.     The Reaction of the Class to the Settlement ...............................10

              3.     The Stage of the Proceedings and Discovery Completed.........................10

              4.     The Risks of Establishing Liability and Damages....................................12

              5.     The Risks of Maintaining the Class Action Through Trial.......................14

              6.     The Ability of Defendants to Withstand a Greater Judgment...................15

              7.     The Reasonableness of the Settlement in Light of the Best Possible
                     Recovery and the Attendant Risks of Litigation.......................................16

IV.    THE NOTICE OF PROPOSED SETTLEMENT SATISFIES DUE PROCESS
       REQUIREMENTS AND IS REASONABLE ..................................................................17

V.     THE PLAN OF ALLOCATION IS FAIR AND REASONABLE...................................18

VI.    CONCLUSION......................................................................................................20

1113689_2

# TABLE OF AUTHORITIES

**Page**

## CASES

*Am. Pipe & Constr. Co. v. Utah,*
    414 U.S. 538 (1974)................................................................................................13

*Beecher v. Able,*
    575 F.2d 1010 (2d Cir. 1978)................................................................................18

*Charron v. Wiener,*
    731 F.3d 241 (2d Cir. 2013), *cert denied,*
    *Suarez v. Charron,* ___ U.S. ___,
    134 S. Ct. 1941 (2014)..........................................................................................14

*Chavarria v. N.Y. Airport Serv., LLC,*
    875 F. Supp. 2d 164 (E.D.N.Y. 2012) ...................................................................6

*D'Amato v. Deutsche Bank,*
    236 F.3d 78 (2d Cir. 2001)...............................................................................7, 10

*Detroit v. Grinnell Corp.,*
    495 F.2d 448 (2d Cir. 1974)...................................................................... *passim*

*Eisen v. Carlisle & Jacquelin,*
    417 U.S. 156 (1974)..............................................................................................17

*Glickenhaus & Co. v. Household Int'l, Inc.,*
    787 F.3d 408 (7th Cir. 2015) ...............................................................................15

*In re "Agent Orange" Prod. Liab. Litig.,*
    597 F. Supp. 740 (E.D.N.Y. 1984),
    *aff'd,* 818 F.2d 145 (2d Cir. 1987)......................................................................16

*In re Am. Bank Note Holographics,*
    127 F. Supp. 2d 418 (S.D.N.Y. 2001)............................................................14, 18

*In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.,*
    No. MDL 1500, 2006 WL 903236
    (S.D.N.Y. Apr. 6, 2006)..................................................................................10, 16

*In re Austrian & German Bank Holocaust Litig.,*
    80 F. Supp. 2d 164 (S.D.N.Y. 2000).....................................................................10

*In re Giant Interactive Grp., Inc.,*
    279 F.R.D. 151 (S.D.N.Y. 2011) .....................................................................12, 13

**Page**

*In re Global Crossing Sec. & ERISA Litig.,*
225 F.R.D. 436 (S.D.N.Y. 2004) ........................................................................7

*In re IMAX Sec. Litig.,*
283 F.R.D. 178 (S.D.N.Y. 2012) ........................................................................8

*In re Lehman Bros. Mortg.-Backed Sec. Litig.,*
No. 08-CV-6762-LAK (S.D.N.Y.) ......................................................................20

*In re Luxottica Grp. S.p.A. Sec. Litig.,*
233 F.R.D. 306 (E.D.N.Y. 2006) .........................................................6, 7, 10, 18

*In re Metlife Demutualization Litig.,*
689 F. Supp. 2d 297 (E.D.N.Y. 2010) ...............................................................14

*In re PaineWebber Ltd. P'ships Litig.,*
171 F.R.D. 104 (S.D.N.Y.), *aff'd,*
117 F.3d 721 (2d Cir. 1997)..................................................................7, 10, 16, 18

*In re Sinus Buster Prods. Consumer Litig.,*
No. 12-CV-2429 (ADS)(AKT), 2014 WL 5819921
(E.D.N.Y. Nov. 10, 2014)..................................................................................10

*In re Sony SXRD Rear Projection Television Class Action Litig.,*
No. 06 Civ. 5173 (RPP), 2008 WL 1956267
(S.D.N.Y. May 1, 2008)......................................................................................15

*In re Veeco Instruments Inc. Sec. Litig.,*
No. 05 MDL 01695 (CM), 2007 WL 4115809
(S.D.N.Y. Nov. 7, 2007) ........................................................................17, 19, 20

*In re WorldCom, Inc. Sec. Litig.,*
388 F. Supp. 2d 319 (S.D.N.Y. 2005)..................................................................13

*Maley v. Del Global Techs. Corp.,*
186 F. Supp. 2d 358 (S.D.N.Y. 2002)..................................................................20

*Milstein v. Huck,*
600 F. Supp. 254 (E.D.N.Y. 1984) .......................................................................8

*N.J. Carpenters Health Fund v. Rali Series 2006-Q01,*
477 F. App'x 809 (2d Cir. 2012) .........................................................................14

*N.J. Carpenters Health Fund v. Residential Capital LLC,*
272 F.R.D. 160 (S.D.N.Y. 2011) ........................................................................14

- iii -

**Page**

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*,
 693 F.3d 145 (2d Cir. 2012)........................................................................*passim*

*Newman v. Stein*,
 464 F.2d 689 (2d Cir. 1972)..................................................................6, 16

*Padro v. Astrue*,
 No. 11-CV-1788 (CBA)(RLM), 2013 WL 5719076
 (E.D.N.Y. Oct. 18, 2013) ............................................................................8

*Plummer v. Chem. Bank*,
 668 F.2d 654 (2d Cir. 1982).....................................................................10

*Police & Fire Ret. Sys. of Detroit v. IndyMac MBS, Inc.*,
 721 F.3d 95 (2d Cir. 2013)........................................................................13

*Strougo v. Bassini*,
 258 F. Supp. 2d 254 (S.D.N.Y. 2003) .........................................................9

*Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*,
 No. 01-CV-11814(MP), 2004 WL 1087261
 (S.D.N.Y. May 14, 2004)..........................................................................11

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
 396 F.3d 96 (2d Cir. 2005)................................................................6, 7, 17

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
 §77k(e) ........................................................................................4, 12, 19

Federal Rules of Civil Procedure
 Rule 23 ..................................................................................3, 14, 15
 Rule 23(c)(2) ....................................................................................17
 Rule 23(c)(2)(B).................................................................................17
 Rule 23(e)..............................................................................1, 17, 18
 Rule 23(f)..........................................................................................15

**SECONDARY AUTHORITIES**

4 Alba Conte & Herbert B. Newberg,
*Newberg on Class Actions* (4th ed. 2002)
 §11.45 ...............................................................................................10

- iv -

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, plaintiffs NECA-IBEW Health & Welfare Fund ("NECA") and Police and Fire Retirement System of the City of Detroit ("PFRS") (collectively, "Plaintiffs"), respectfully move this Court for orders approving the proposed settlement (the "Settlement") of the above-captions actions and the proposed Plan of Allocation of the Net Settlement Fund.[1]  The Settlement proposes to resolve two separate actions, (1) *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co., et al.*, No. 1:08-cv-10783-LAP (the "NECA Action"), and (2) *The Police & Fire Retirement System of the City of Detroit v. Goldman Sachs & Co., et al.*, No. 1:10-cv-04429-LAP (the "PFRS Action") (collectively, the "Actions"), which both assert claims in connection with the issuance of residential mortgage-backed securities ("RMBS") by Goldman, Sachs & Co. ("Goldman Sachs").[2]

# I.   PRELIMINARY STATEMENT

The parties have agreed to the Settlement pursuant to which Goldman Sachs, on behalf of itself and the other Defendants, has paid $272,000,000 in cash into an escrow account maintained on

---

[1]   Unless otherwise stated or defined, all capitalized terms used herein shall have the meanings provided in the Stipulation and Agreement of Settlement (the "Stipulation"), dated as of August 12, 2015.  Dkt. No. 216.  The accompanying Declaration of Arthur C. Leahy in Support of (1) Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation and (2) Plaintiffs' Counsel's Motion for an Award of Attorneys' Fees and Expenses ("Leahy Decl."), the Declaration of Lawrence P. Kolker in Support of Plaintiffs' Counsel's Motion for Attorneys' Fees and Reimbursement of Expenses Filed on Behalf of Wolf Haldenstein Adler Freeman & Herz LLP ("Kolker Decl."), and the Declaration of Denis F. Sheils Filed on Behalf of Kohn, Swift, & Graf, P.C. in Support of Application for Award of Attorneys' Fees and Expenses ("Sheils Decl.") are an integral part of this submission.  The Court is respectfully referred to these Declarations for a full discussion of the factual background and procedural history of the Actions, the extensive litigation efforts of Plaintiffs' Counsel, a discussion of the negotiations leading up to the Settlement, and the reasons why the Settlement and Plan of Allocation are fair, reasonable, and adequate, and should be approved.

[2]   The PFRS Action was filed nearly two years after the NECA Action, after Judge Cedarbaum's dismissal of NECA's claims as to certain offerings for lack of standing.  Kolker Decl., ¶4.  The PFRS and NECA Actions assert essentially identical claims against the same defendants.

- 1 -

behalf of the Settlement Class in accordance with the terms of the Stipulation.  This Settlement represents an excellent recovery in a litigation in which no other class member or law firm filed a complaint or lead plaintiff motion because of the risks and uncertainties involved at the time of the filing.  *See* NECA Action, Dkt. No. 40 at 20:11-14 (Judge Cedarbaum noting that "I think this is the first purported class action I've ever had where there was no competition for lead plaintiff.").

This is an outstanding result by any measure, and even more so when considering the $272 million recovery is the fourth largest ever obtained in this District in a purchaser RMBS class action in terms of average recovery per dollar of the initial face value of securities at issue.  Leahy Decl., ¶6.  For example, although the settlement approved by this Court in *New Jersey Carpenters Vacation Fund v. The Royal Bank of Scotland Group PLC*, No. 08-CV-5093-LAP ("*Harborview*") was $275 million, the Settlement here represents a recovery of over 48% more than the *Harborview* case on a per dollar of initial face amount basis.  *Id.*[3]

The Settlement is also notable for the significant legal hurdles that Plaintiffs' Counsel overcame during the nearly seven years of litigation and the unwavering commitment of the Plaintiffs and their counsel to the Settlement Class in the face of adverse rulings.  This result was achieved only after Plaintiffs:  (i) conducted extensive factual investigations regarding their claims; (ii) filed seven initial or amended class action complaints in the Actions based on their investigations; (iii) opposed seven rounds of motions to dismiss their complaints, which raised multiple complex and novel issues requiring supplemental briefing; (iv) successfully litigated an appeal to the Second Circuit after Judge Cedarbaum's dismissal of the Third Amended Complaint in the NECA Action, resulting in a landmark opinion establishing a new standard for standing that

---

[3]     The Settlement affords investors $24.90 per $1000 of initial face value, versus $16.73 in *Harborview*.  *Id.*

greatly expanded the number of certificates for which Plaintiffs and other RMBS plaintiffs were able to assert claims on a class-wide basis (*see NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145 (2d Cir. 2012) ("*NECA*"); (v) successfully opposed Defendants' highly-publicized petition for a writ of certiorari to the Supreme Court of the United States in the NECA Action; (vi) obtained and analyzed millions of pages of documents produced by Defendants and non-parties in discovery; (vii) briefed class certification in the Actions; (viii) engaged multiple experts on key issues such as damages, mortgage loan underwriting, statistics and certain elements of Rule 23; and (ix) participated with Defendants in extensive arm's-length settlement negotiations conducted by the Honorable Daniel H. Weinstein (Ret.) of JAMS, a former judge and highly-respected mediator with substantial experience mediating RMBS matters.  *See* Leahy Decl., ¶¶4, 6.

Importantly, NECA could have settled the litigation during the pendency of its appeal to the Second Circuit for an amount that would have been the second largest RMBS litigation settlement at that time.  But NECA declined to settle, won its appeal, and ultimately obtained the $272 million now before the Court, which represents an amount that is many multiples higher than the offer made during the appeal.  Leahy Decl., ¶¶105-106, 111; Declaration of Steven L. Myers ("NECA Decl."), ¶¶9-11; Declaration of Arthur R. Miller ("Miller Decl."), ¶20.  By pursuing the case through the appeal and then conducting substantial discovery, NECA and its counsel fully understood every aspect of the case, including its strengths and weaknesses, and to maximize the amount obtained for the Settlement Class.

Had this Settlement not been reached, Plaintiffs would have faced a myriad of factual and legal challenges.  For example, Plaintiffs would have needed to prevail on the pending class certification motions, defeat Defendants' challenges to Plaintiffs' experts and inevitable summary judgment motions, prove Defendants' liability and the amount of recoverable damages at trial, and

- 3 -

subsequently defeat Defendants' appeals.  In addition to the burden of proving the falsity and materiality of Defendants' statements, Plaintiffs also faced numerous affirmative defenses, including "negative causation," "actual knowledge," "due diligence" and "statute of repose."  In light of the scarcity of precedent in RMBS cases during much of the litigation, all of these risks carried with them a high level of uncertainty and could have resulted in dismissal of Plaintiffs' claims or a reduction of recoverable damages.  The Settlement eliminates these risks and uncertainties and provides a definite recovery for the Settlement Class.

Notably, after considering the foregoing risks and proposed Settlement Amount, Plaintiffs agreed that the Settlement is a fair, reasonable, and adequate resolution of the Actions.  *See, e.g.*, NECA Decl., ¶16; Declaration of Ronald King ("PFRS Decl."), ¶4.  In addition, class action expert Professor Arthur Miller, retained as Special Counsel to NECA to provide additional independent guidance on (i) the likelihood of success on the merits in light of the risks of ongoing litigation; (ii) the evaluation of any possible settlement; and (iii) attorneys' fees issues, wholeheartedly endorses the Settlement.  Miller Decl., ¶¶24-26.

Plaintiffs also request that the Court approve the Plan of Allocation of the Net Settlement Fund.  The Plan of Allocation was developed with the assistance of Plaintiffs' economic consultants and is based on the methodology for calculating damages set forth in §11(e) of the Securities Act of 1933 ("Securities Act").[4]  It is substantively the same as allocation plans that have been approved in other RMBS class actions.  The Plan of Allocation is fair, reasonable, and adequate and therefore should be approved.

---

[4]    *See* Declaration of Brett Brandenberg in Support of Plan of Allocation ("Brandenberg Decl.").

## II.    PROCEDURAL AND FACTUAL BACKGROUND

The NECA Action was filed on December 11, 2008, and dismissed – for the second time – in large part on January 28, 2010, when Judge Cedarbaum held that NECA lacked standing to assert claims for 15 of the 17 offerings in which NECA did not purchase.  Leahy Decl, ¶32.  On June 3, 2010, the PFRS Action was filed, asserting essentially identical claims against the same defendants as the NECA Action, but on behalf of purchasers of one of the offerings dismissed from the NECA Action.  Sheils Decl., ¶4.  After the Second Circuit reinstated the NECA Action, and with discovery actively underway and Plaintiffs' motions for class certification pending, the parties were able to reach an agreement to settle both Actions.

On December 30, 2015, this Court entered its Order Certifying a Settlement Class, Preliminarily Approving the Settlement, and Providing for Notice (Dkt. No. 220, the "Preliminary Approval Order").  In accordance with the Preliminary Approval Order, on January 14, 2016, the Claims Administrator began mailing the Notice of Pendency of Class Action and Proposed Settlement and Final Approval Hearing (the "Notice") to potential Settlement Class Members.  As of February 18, 2016, the Notice had been mailed to over 5,800 potential Settlement Class Members and nominees.[5]

Further, the Notice, the Proof of Claim and Release form ("Proof of Claim"), the Schedule of Exchanged Certificates, the Tables to the Plan of Allocation, the Stipulation and its Exhibits, and the Preliminary Approval Order were posted on a website created by the Claims Administrator (www.goldmansachsmbssettlement.com), and pursuant to the Preliminary Approval Order, a

---

[5]    *See* Declaration of Carole K. Sylvester Regarding (A) Mailing of the Notice of Pendency of Class Action and Proposed Settlement and Final Approval Hearing and the Proof of Claim and Release Form, (B) Publication of the Summary Notice, (C) Internet Posting, and (D) Requests for Exclusion Received to Date ("Sylvester Decl."), ¶¶4-11.

Summary Notice was published in *Investor's Business Daily* and transmitted over the *PR Newswire* on January 26, 2016.  *See* Sylvester Decl., ¶¶13-14.

## III.   THE PROPOSED SETTLEMENT IS FAIR, ADEQUATE, AND REASONABLE, AND NOT COLLUSIVE

### A.   Settlements Are Favored and Encouraged

The Court may approve a "class action settlement if it is 'fair, adequate, and reasonable, and not a product of collusion.'"  *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005).[6]   The evaluation of a proposed settlement requires the Court to consider "both the settlement's terms and the negotiating process leading to settlement."  *Id.*  While the decision to grant or deny approval of a settlement lies within the sound discretion of the Court, a general policy favoring settlement exists, especially with respect to class actions.  *Id.*  Moreover, "[c]lass action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation."  *In re Luxottica Grp. S.p.A. Sec. Litig.*, 233 F.R.D. 306, 310 (E.D.N.Y. 2006).

Recognizing that a settlement represents an exercise of judgment by the negotiating parties, the Second Circuit has cautioned that, while a court should not give "rubber stamp approval" to a proposed settlement, it should "stop short of the detailed and thorough investigation that it would undertake if it were actually trying the case."  *Detroit v. Grinnell Corp.*, 495 F.2d 448, 462 (2d Cir. 1974); *Newman v. Stein*, 464 F.2d 689, 691-92 (2d Cir. 1972); *see also Chavarria v. N.Y. Airport Serv., LLC*, 875 F. Supp. 2d 164, 172 (E.D.N.Y. 2012) (a court should not "conduct a mini-trial of the merits of the action").

---

[6]   Citations are omitted and emphasis is added throughout unless otherwise indicated.

- 6 -

### B.     The Settlement Is Presumptively Fair

"A court determines a settlement's fairness by looking at both the settlement's terms and the negotiating process leading to settlement." *Wal-Mart*, 396 F.3d at 116. "So long as the integrity of the arm's length negotiation process is preserved . . . a strong initial presumption of fairness attaches to the proposed settlement." *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y.), *aff'd*, 117 F.3d 721 (2d Cir. 1997); *Luxottica Grp.*, 233 F.R.D. at 315.

This initial presumption of fairness and adequacy applies in this case because the Settlement was reached on behalf of the parties by fully-informed counsel with extensive experience in complex securities litigation. Leahy Decl., ¶160; Kolker Decl., ¶¶3, 12. Furthermore, the Honorable Daniel Weinstein (Ret.), a highly respected mediator, facilitated the settlement negotiations which spanned several years, a fact that further evidences the fairness of the Settlement. *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (the involvement of a mediator "helps to ensure that the proceedings were free of collusion and undue pressure"). The fact that the Settlement was negotiated at the direction of a sophisticated institutional investor, and with the assistance of NECA's Special Counsel Professor Arthur Miller, is yet another indicator of the Settlement's adequacy. *See In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 462 (S.D.N.Y. 2004). This Settlement is thus entitled to the presumption of fairness under Second Circuit law.

### C.     The Settlement Meets the Second Circuit Requirements for Approval

The Second Circuit has identified nine factors (the "*Grinnell* factors") that courts should consider to determine whether to approve a proposed settlement of a class action:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and]

(9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Grinnell*, 495 F.2d at 463.  "'A court need not find that every factor militates in favor of a finding of fairness; rather, a court considers the totality of these factors in light of the particular circumstances.'" *Padro v. Astrue*, No. 11-CV-1788 (CBA)(RLM), 2013 WL 5719076, at *4 (E.D.N.Y. Oct. 18, 2013).

As demonstrated below, the Settlement meets the *Grinnell* factors and warrants this Court's final approval.

### 1.      The Complexity, Expense, and Likely Duration of the Litigation Justifies the Settlement

Courts have long recognized that the expense and possible duration of the litigation should be considered in evaluating the reasonableness of a settlement.  *Milstein v. Huck*, 600 F. Supp. 254, 267 (E.D.N.Y. 1984).  Securities class actions are notoriously complex, difficult, and expensive to prosecute.  As a result, there is no guarantee that the outcome will favor class members.  *See In re IMAX Sec. Litig.*, 283 F.R.D. 178, 189 (S.D.N.Y. 2012) (holding that securities class action litigation is "'notably difficult and notoriously uncertain'").  Given Defendants' relentless challenges to Plaintiffs' claims based on novel procedural and substantive grounds over nearly seven years of litigation, including the appeal to the Second Circuit and a petition for a writ of certiorari to the Supreme Court, Goldman Sachs' commitment to defending against the Settlement Class's claims through and beyond trial was clear.

Plaintiffs' claims, arising out of the complex process of packaging thousands of mortgage loans and securitizing them into RMBS, have presented numerous complicated and novel legal and factual issues at every stage of the litigation, including class certification briefing, which was ongoing at the time the Settlement was reached.  The large number of mortgages and entities

involved in constructing each offering resulted in voluminous and complex fact discovery, requiring Plaintiffs to engage experts and consultants to assist them in analyzing various factual issues. For example, NECA engaged an expert in statistical sampling to facilitate the creation of representative mortgage loan samples to enable the mortgage loan re-underwriting process. Leahy Decl., ¶82. Moreover, there are numerous legal issues – falsity, materiality, rebutting negative causation, and establishing damages – that, absent this Settlement, would require expert testimony from both sides at summary judgment and at trial. *Id.*, ¶¶137-142. These issues were challenging and would have unquestionably added complexity and length to the Actions.

Absent this Settlement, continued litigation would have resulted in an even greater expenditure of time, money and judicial resources. Even if Plaintiffs prevailed on class certification, summary judgment and trial, there undoubtedly would have been post-trial motions, a lengthy claims process, and ultimately another appeal to the Second Circuit. It would have been years before finality was obtained and Plaintiffs would have also spent millions more on expert testimony, consultants, and other costs. The $272,000,000 Settlement at this juncture results in an immediate and substantial recovery for the Settlement Class, without the considerable risk, expense and delay of further discovery, motion practice, expert consultations and reports, trial, and subsequent appeal. *See Strougo v. Bassini*, 258 F. Supp. 2d 254, 261 (S.D.N.Y. 2003) ("even if a shareholder or class member was willing to assume all the risks of pursuing the actions through further litigation . . . the passage of time would introduce yet more risks . . . and would, in light of the time value of money, make future recoveries less valuable than this current recovery"). Therefore, Plaintiffs submit that this factor weighs heavily in favor of approving the proposed Settlement.

### 2.     The Reaction of the Class to the Settlement

The reaction of the class to the settlement is a significant factor in assessing its fairness and adequacy, and "'the absence of objectants may itself be taken as evidencing the fairness of a settlement.'" *PaineWebber*, 171 F.R.D. at 126; *see also Luxottica Grp.*, 233 F.R.D. at 311-12. Here, in response to the mailing of notices to over 5,800 potential Settlement Class Members and/or their nominees, Sylvester Decl., ¶11, and the publication of the Summary Notice on January 26, 2016, *id.*, ¶14, and although the deadline for objections is March 4, 2016, no objections to the Settlement have been received.[7]   Accordingly, at this time, the factor also favors approval of the Settlement.

### 3.     The Stage of the Proceedings and Discovery Completed

"There is no precise formula for what constitutes sufficient evidence to enable the court to analyze intelligently the contested questions of fact.  It is clear that the court need not possess evidence to decide the merits of the issue, because the compromise is proposed in order to avoid further litigation. . . .  At minimum, the court must possess sufficient information to raise its decision above mere conjecture."  4 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* §11.45, at 127-28 (4th ed. 2002).[8]

---

[7]   If Lead Counsel receives any objections to the Settlement or Plan of Allocation, they will be addressed in Plaintiffs' reply memorandum scheduled to be filed on March 21, 2016.

[8]   *See also In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 176 (S.D.N.Y. 2000) (it is not necessary for a court to find parties engaged in extensive discovery; a court must merely find that they engaged in sufficient investigation to enable court to make intelligent appraisal of case) (citing *Plummer v. Chem. Bank*, 668 F.2d 654 (2d Cir. 1982)), *aff'd sub nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001); *see also In re Sinus Buster Prods. Consumer Litig.*, No. 12-CV-2429 (ADS)(AKT), 2014 WL 5819921, at *9 (E.D.N.Y. Nov. 10, 2014) ("Under this factor the relevant inquiry 'is whether the plaintiffs have obtained a sufficient understanding of the case to gauge the strengths and weaknesses of their claims and the adequacy of the settlement.'") (quoting *In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, No. MDL 1500, 2006 WL 903236, at *10 (S.D.N.Y. Apr. 6, 2006)).

Plaintiffs' Counsel unquestionably understood the strengths and weaknesses of the case at the time of Settlement, given the nearly seven years of litigation which included: (i) conducting an investigation into Plaintiffs' claims; (ii) researching and briefing several rounds of motions to dismiss; (iii) filing multiple complaints; (iv) analyzing millions of pages of documents obtained through discovery from Defendants and non-parties; (v) briefing class certification and completing substantial class certification discovery; and (vi) engaging experts and consultants who analyzed issues related to electronic discovery, class certification, statistics, materiality, mortgage loan re-underwriting, and loan due diligence.  Leahy Decl., ¶¶4, 79-80; Kolker Decl., ¶12.

Significant fact discovery had been completed in the Actions at the time of the Settlement.  In the NECA Action, plaintiff propounded 158 document requests to Defendants, responded to 41 document requests, and served 61 non-parties with document subpoenas.  Leahy Decl., ¶¶85-88, 101.  Pursuant to those requests, Lead Counsel obtained over seven million pages of documents from Defendants and over 449,000 pages of documents from subpoenaed non-parties.  *Id*.,¶¶90,102.  NECA's knowledge of the central factual issues was further expanded through the review of over 85,000 pages of deposition testimony and exhibits contained in transcripts from civil suits related to RMBS and government investigations against Goldman Sachs that Lead Counsel negotiated for and obtained from Defendants.  *Id*., ¶94.  In addition to document discovery, the parties deposed five witnesses on issues relating to class certification.  *Id*., ¶¶73, 75, 103.  In the PFRS Action, over 400,000 pages of documents and emails were exchanged between the parties, and the parties conducted extensive non-party and expert discovery.  Sheils Decl, ¶¶9-12.

Accordingly, the Plaintiffs certainly "'ha[d] a clear view of the strengths and weaknesses of their cases.'"  *Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*, No. 01-CV-11814(MP), 2004 WL

1087261, at *3 (S.D.N.Y. May 14, 2004); *see also In re Giant Interactive Grp., Inc.*, 279 F.R.D.

151, 161 (S.D.N.Y. 2011).  Therefore, this factor further supports approval of the Settlement.

### 4.  The Risks of Establishing Liability and Damages

In assessing the Settlement, the Court should balance the benefits afforded to the Settlement

Class, including the immediacy and certainty of a recovery, against the continuing risks of litigation.

*See Grinnell*, 495 F.2d at 463.  The liability risks here included the following:

**Risks of Establishing Liability**.  To avoid summary judgment and prevail at trial, Plaintiffs

would need to present evidence that the offering documents contained an untrue statement of a

material fact or omitted to state a material fact required to be stated therein related to (i) the

underwriting of the loans underlying the Offerings; and/or (ii) the appraisals and loan-to-value ratios

of the loans underlying the Offerings.  Defendants have argued and would continue to argue that the

offering documents contained no untrue statements or omissions.

**Risks of Establishing Damages**.  Assuming that Plaintiffs prevailed at trial in establishing

liability, they would still have to prove recoverable damages under §11 of the Securities Act.[9]

Defendants maintained that establishing damages posed significant obstacles for Plaintiffs because

damages under §11 may be reduced or eliminated if a defendant proves that a portion or all of the

statutory damages are attributable to causes other than the alleged misstatements or omissions.  *See*

15 U.S.C. §77k(e).  Throughout the course of the Actions, Defendants claimed that any losses

suffered by the Settlement Class were caused by factors other than untrue statements in the offering

---

[9]   Under §11, damages are based on "the difference between the amount paid for the security (not
exceeding the price at which the security was offered to the public) and (1) the value thereof as of
the time such suit was brought, or (2) the price at which such security shall have been disposed of in
the market before suit, or (3) the price at which such security shall have been disposed of after suit
but before judgment if such damages shall be less than the damages representing the difference
between the amount paid for the security (not exceeding the price at which the security was offered
to the public) and the value thereof as of the time such suit was brought."  15 U.S.C. §77k(e).

1113689_2

documents – that the overall global economic downturn and national decline in housing prices caused any losses. This "negative causation" defense was an argument that would have to be resolved through expert testimony and was likely to be a defense that survived any summary judgment motion. *See, e.g.*, *Giant Interactive*, 279 F.R.D. at 161-62 (approving settlement where the litigation risks included a "credible defense of 'negative causation'"). Thus, this argument created substantial risk to Plaintiffs' ability to establish damages.

     ***Risks Related to Other Defenses***. Defendants raised numerous other defenses, including: (i) a "due diligence" defense; (ii) that certain Settlement Class Members had "knowledge" of the alleged misstatements rendering their claims inactionable; and (iii) that the statute of repose barred the claims.

-    ***Due Diligence***. Defendants contended that they conducted appropriate reviews and analyses of the character and quality of loans prior to the loans being securitized in the Offerings. While Defendants would have the burden of establishing this "due diligence" defense, if they were successful in establishing the reasonableness of their investigation, it could provide a complete defense to liability. Moreover, the question as to what constituted a "reasonable investigation" in these circumstances would likely have been the subject of competing expert testimony at trial. *See, e.g.*, *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 338 (S.D.N.Y. 2005) (risks of litigation supported the settlement where defendants "had asserted due diligence defenses and might have been successful at establishing the adequacy of their efforts at trial").

-    ***Knowledge***. Defendants argued that some Settlement Class Members had actual knowledge that the alleged untrue statements and omissions were in fact false at the time they purchased the Certificates and thus could not bring claims. Leahy Decl., ¶141.

-    ***Statute of Repose***. Defendants asserted that the Second Circuit's decision in *Police & Fire Ret. Sys. of Detroit v. IndyMac MBS, Inc.*, 721 F.3d 95 (2d Cir. 2013) limited the class action tolling doctrine adopted in *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538 (1974), and therefore the claims of all putative Settlement Class Members in the NECA Action were extinguished by the statute of repose. Leahy Decl., ¶132.

     In addition to the foregoing issues, many parts of the claims were expected to be litigated through the use of expert witnesses. While Plaintiffs expected to present persuasive expert

testimony, Defendants likely would also have been able to present experts who supported their

position.  Defendants, moreover, undoubtedly would assert *Daubert* challenges against each of

Plaintiffs' experts.  Even assuming that Plaintiffs prevailed in such challenges, Plaintiffs could not

be certain which experts' views would be credited by the jury and who would prevail at trial in this

"battle of the experts."[10]  This factor militates in favor of approval of the Settlement.

### 5.    The Risks of Maintaining the Class Action Through Trial

Had the Settlement not been reached, there is no assurance that Plaintiffs' pending motions

for class certification would be granted or that class status, if granted, would have been maintained

through trial.[11]  In the NECA Action, Defendants opposed NECA's motion for class certification on

various grounds, including that the statute of repose extinguished the class claims, and that NECA

had not satisfied various elements of Rule 23, including typicality, adequacy, and predominance.

Leahy Decl., ¶¶132-135.  Although other courts have granted motions to certify classes of RMBS

investors in this District, at least one court in this District had previously denied such a motion (*see*

*N.J. Carpenters Health Fund v. Residential Capital LLC*, 272 F.R.D. 160 (S.D.N.Y. 2011)), which

order was affirmed by the Second Circuit.  *N.J. Carpenters Health Fund v. Rali Series 2006-Q01*,

477 F. App'x 809 (2d Cir. 2012).  Moreover, even if Plaintiffs had obtained class certification,

---

[10]    *See, e.g.*, *In re Metlife Demutualization Litig.*, 689 F. Supp. 297, 332 (E.D.N.Y. 2010) ("The proof on many disputed issues – which involve complex financial concepts – would likely have included a battle of experts, leaving the trier of fact with difficult questions to resolve."); *In re Am. Bank Note Holographics*, 127 F. Supp. 2d 418, 426-27 (S.D.N.Y. 2001) ("In such a battle, Plaintiffs' Counsel recognize the possibility that a jury could be swayed by experts for Defendants.").

[11]    *See, e.g.*, *Charron v. Wiener*, 731 F.3d 241, 249 (2d Cir. 2013) ("[W]e cannot find that the district court abused its discretion in finding that the class faced significant risks of decertification, that decertification would drastically reduce the chances of any member of the class achieving meaningful relief, and that the litigation risks attendant to these possibilities weighed heavily in favor of the fairness of a settlement . . . ."), *cert denied*, *Suarez v. Charron*, ___ U.S. ___, 134 S. Ct. 1941 (2014).

Defendants would have doubtlessly sought Rule 23(f) review.[12]  This factor militates in favor of approval of the Settlement.

### 6.    The Ability of Defendants to Withstand a Greater Judgment

The ability of a defendant to pay a judgment greater than the amount offered in a settlement can be relevant to whether a settlement is fair.  *Grinnell*, 495 F.2d at 463.  The fact, however, that a defendant is able to pay more than it offers in settlement, does not, standing alone, indicate that the settlement is unreasonable or inadequate.  *See In re Sony SXRD Rear Projection Television Class Action Litig.*, No. 06 Civ. 5173 (RPP), 2008 WL 1956267, at *8 (S.D.N.Y. May 1, 2008) ("a defendant is not required to 'empty its coffers' before a settlement can be found adequate").

While Goldman Sachs has sufficient resources to pay a sum larger than the Settlement Amount, as a practical matter the prospects of recovering a substantially greater sum at trial would have been offset by the significant risks, massive costs, and years-long delay of any judgment that may have been obtained in the future.  And even if that judgment was successfully obtained for the Settlement Class, it would have been held up for numerous additional years on appeal and might even be reversed after all that time.  *See, e.g.*, *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408 (7th Cir. 2015).

---

[12]    In fact, as noted by the Second Circuit in the *NECA* opinion, the court's holding regarding class standing did not mean that the Court was required to certify a class:

> We emphasize that it is by no means a foregone conclusion that, because plaintiff has [class] standing to assert . . . claims on behalf of Certificate-holders from different tranches of Offerings (or within Offerings) . . . ***a putative class comprised of such Certificate-holders should be certified***.  The district court, after reviewing all of the Rule 23 factors, retains broad discretion to make that determination.

*NECA*, 693 F.3d at 165.

- 15 -

### 7.     The Reasonableness of the Settlement in Light of the Best Possible Recovery and the Attendant Risks of Litigation

The last two *Grinnell* factors dictate approval of the Settlement.  The adequacy of the amount offered in settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987).  The Court need only determine whether the Settlement falls within a "'range of reasonableness.'" *PaineWebber*, 171 F.R.D. at 130; *Newman*, 464 F.2d at 693 ("[I]n any case there is a range of reasonableness with respect to a settlement.").  In addition, in considering the reasonableness of the Settlement, the Court should consider that the Settlement provides for payment to the Settlement Class now, rather than a speculative payment many years down the road that might never happen.  *See AOL Time Warner*, 2006 WL 903236, at *13.

As discussed above, there were numerous risks involved in this litigation.  In light of the many difficult legal and factual issues present in the Actions, *e.g.*, liability, damages, affirmative defenses, a "battle of expert witnesses," class certification, summary judgment, a lengthy and complex trial, and an appellate process that would inevitably follow, the adequacy of the Settlement of $272,000,000 in cash represents an excellent recovery for the Settlement Class.

The approval of Plaintiffs – institutional investor pension funds overseeing billions of dollars for thousands of electrical workers, police officers and firefighters – further supports the fairness of the Settlement.  Representatives of Plaintiffs took an active role in supervising and participating in the Actions, as envisioned by the PSLRA, and believe the Settlement represents "a tremendous recovery for the Class, particularly in light of the substantial risks of continued litigation in this case."  NECA Decl., ¶16; PFRS Decl., ¶4.  A settlement, such as this one, reached "under the

- 16 -

supervision and with the endorsement of a sophisticated institutional investor . . . is 'entitled to an even greater presumption of reasonableness.'" *Veeco*, 2007 WL 4115809, at *5.

Considering the risk that the Settlement Class might not have been able to succeed on liability, the possibility that damages awarded by a jury could have been lower than those demanded by the Plaintiffs or zeroed out, and, assuming Plaintiffs prevailed at trial, the delays and further risks raised by an inevitable appeal, this Settlement is an excellent recovery.

In sum, the *Grinnell* factors collectively weigh strongly in favor of approval of the Settlement.

## IV. THE NOTICE OF PROPOSED SETTLEMENT SATISFIES DUE PROCESS REQUIREMENTS AND IS REASONABLE

Rule 23(c)(2) requires the "best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-75 (1974) (class notice is designed to fulfill due process requirements). The standard for measuring the adequacy of a class action settlement notice is reasonableness. *Wal-Mart*, 396 F.3d at 114. "There are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements; the settlement notice must 'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.'" *Id*. "Notice is 'adequate if it may be understood by the average class member.'" *Id*.

Here, in accordance with the Court's Preliminary Approval Order, starting on January 14, 2016, the Claims Administrator caused the Notice, Proof of Claim, and the Schedule of Exchanged Certificates, as approved by the Court, to be mailed by first class mail to potential Settlement Class Members. Sylvester Decl., ¶¶4-11. The Notice contains a description of the Settlement, the Plan of Allocation, and Settlement Class Members' rights to participate in and object to the Settlement, or to

- 17 -

exclude themselves from the Settlement Class.  *Id.*, Ex. A.  On January 26, 2016, the approved

Summary Notice was published in *Investor's Business Daily* and transmitted over the *PR Newswire*.

*Id.*, ¶14.  Information regarding the Settlement, including downloadable copies of the Notice, Proof

of Claim, Schedule of Exchanged Certificates, the Tables to the Plan of Allocation, was also posted

on    a    website    created    by    the    Claims    Administrator    for    the    case

(www.goldmansachsmbssettlement.com).  *Id.*, ¶13.

       The notice program, which combined an individual, mailed Notice and Proof of Claim packet

to all potential Settlement Class Members who could be reasonably identified, as well as to

custodial holders, and a Summary Notice published in one of the pre-eminent national business

publications and over the internet, contained all of the information required by the PSLRA, and is

adequate to meet due process and Fed. R. Civ. P. 23(c)(2) and (e) requirements for providing notice

to the Settlement Class.

## V.     THE PLAN OF ALLOCATION IS FAIR AND REASONABLE

       If the Court approves the proposed Settlement, upon completion of the claims filing process,

the Net Settlement Fund will be distributed to Authorized Claimants according to the Plan of

Allocation set forth in the Notice.  "[T]he adequacy of an allocation plan turns on whether counsel

has properly apprised itself of the merits of all claims, and whether the proposed apportionment is

fair and reasonable in light of that information." *PaineWebber*, 171 F.R.D. at 133; *Luxottica Grp.*,

233 F.R.D. at 316-17.  As with the Settlement, the opinion of experienced and informed counsel

carries considerable weight. *Am. Bank Note*, 127 F. Supp. 2d at 430.  District Courts enjoy "broad

supervisory powers over the administration of class-action settlements to allocate the proceeds

among the claiming class members . . . equitably." *Beecher v. Able*, 575 F.2d 1010, 1016 (2d Cir.

1978).

- 18 -

The Plan of Allocation, which was fully described in the Notice, has a rational basis and was formulated by Lead Counsel in consultation with their damages consultants, ensuring its fairness and reliability. *See Veeco*, 2007 WL 4115809, at *13. Under the proposed Plan of Allocation, each Authorized Claimant will receive a *pro rata* share of the Net Settlement Fund, with that share to be determined by the ratio that the Authorized Claimant's allowed claim bears to the total allowed claims of all Authorized Claimants. *See* Brandenberg Decl., ¶5.

The Plan of Allocation allocates the Settlement proceeds based principally on the statutory measure of damages set out in §11(e) of the Securities Act, 15 U.S.C. §77k(e). Plaintiffs engaged Brett Brandenberg, a Director at AlixPartners, LLP and a Chartered Financial Analyst, to examine the Plan of Allocation. The Brandenberg Declaration explains the methodology for determining each Authorized Claimant's Recognized Claim under the Plan of Allocation and the basis for the analysis. As explained more fully in the Notice – including through illustrative examples – and in the Brandenberg Declaration, a "Recognized Loss Amount" or "Recognized Gain Amount" will be calculated for each purchase or acquisition of a Certificate. Brandenberg Decl., ¶7. The calculation of a Claimant's Net Recognized Loss will depend on several factors, including: (i) the face value of the Certificates purchased; (ii) when the Certificates were purchased or acquired and the price paid; (iii) any principal payments received; (iv) whether the Certificates were sold, and if so, when they were sold and for how much; (v) if held on the applicable Date of Suit for the Certificates, the price of the Certificates on that date; and (vi) whether the Court sustained the claims asserted on behalf of purchasers of certain Certificates. *Id.*, ¶6.[13]

---

[13] For example, to account for the reduced likelihood of success on claims related to the dismissed Certificates, the Plan of Allocation applies a 70% discount to the value of those claims. This is consistent with plans of allocation approved in several other RMBS litigations. *See generally, Harborview*, No. 1:08-CV-5093-LAP (approving a plan of allocation that discounted claims of class members whose claims were either dismissed or whose purchases lay outside of the certified class);

- 19 -

Although the formula has a degree of complexity necessary to allocate the Net Settlement Fund fairly among Authorized Claimants, investors in mortgage-backed securities are typically familiar with the language utilized in the Plan of Allocation because it is consistent with industry terminology. Brandenberg Decl., ¶7. In addition, specific examples of how to calculate hypothetical examples under various scenarios are included in the Plan of Allocation for clarification. A similar approach has been accepted and used successfully in other RMBS class action settlements.[14]

To date, no objections to the Plan of Allocation have been made. Leahy Decl., ¶129; *see Veeco*, 2007 WL 4115809, at *14; *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 367 (S.D.N.Y. 2002). Accordingly, the Plan of Allocation is fair and reasonable to the Settlement Class as a whole, is supported by the Brandenberg Declaration and should be approved by the Court.

## VI.   CONCLUSION

For the foregoing reasons, Plaintiffs and Plaintiffs' Counsel respectfully request that the Court grant final approval of the Settlement and Plan of Allocation.

DATED:  February 18, 2016                Respectfully submitted,


                                          s/ Arthur C. Leahy
                                          ARTHUR C. LEAHY

---

*In re Morgan Stanley Mortg. Pass-Through Certificates Litig.*, No. 1:09-cv-2137-KBF (S.D.N.Y.) (discounting claims of dismissed certificates by 70%); *In re Lehman Bros. Mortg.-Backed Sec. Litig.*, No. 08-CV-6762-LAK (S.D.N.Y.) (21% of settlement fund to dismissed tranches at discounted rate); *In re Wells Fargo Mortg.-Backed Certificates Litig.*, No. 09-CV-1376-LHK (N.D. Cal.) (12% allocated to dismissed tranches).

[14]   *See, e.g., Morgan Stanley*, No. 09-cv-2137-KBF; *Plumbers' & Pipefitters' Local #562 Supplemental Plan & Tr. v. J.P. Morgan Acceptance Corp.*, No. 08-cv-1713-PKC (E.D.N.Y.); *Pub. Emps.' Ret. Sys. of Miss. v. Goldman Sachs Grp., Inc.*, No. 09-cv-1110-HB (S.D.N.Y.); *Pub. Emps.' Ret. Sys. of Miss. v. Merrill Lynch & Co. Inc.*, No. 08-cv-10841-JSR (S.D.N.Y.); *Wells Fargo*, No. 09-cv-1376-LHK.

1113689_2

ROBBINS GELLER RUDMAN
  & DOWD LLP
ARTHUR C. LEAHY
THEODORE J. PINTAR
LUCAS F. OLTS
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
DAVID A. ROSENFELD
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
drosenfeld@rgrdlaw.com

Lead Counsel for Plaintiff NECA-IBEW Health &
Welfare Fund

CAVANAGH & O'HARA
PATRICK J. O'HARA
407 East Adams Street
Springfield, IL  62701
Telephone:  217/544-1771
217/544-9894 (fax)

Additional Counsel for Plaintiff NECA-IBEW
Health & Welfare Fund

WOLF HALDENSTEIN ADLER
  FREEMAN & HERZ, LLP
LAWRENCE P. KOLKER
MICHAEL LISKOW


                    s/ Lawrence P. Kolker
                LAWRENCE P. KOLKER


- 21 -

270 Madison Avenue
New York, New York  10016
Telephone:  212/545-4600
212/545-4653 (fax)

Counsel for Plaintiff The Police and Fire
Retirement System of the City of Detroit

KOHN, SWIFT & GRAF, P.C.
JOSEPH C. KOHN
DENIS F. SHEILS
WILLIAM E. HOESE
BARBARA L. GIBSON

s/ Denis F. Sheils
DENIS F. SHEILS

One South Broad Street
Suite 2100
Philadelphia, PA  19107-3389
Telephone:  215/238-1700
215/238-1968 (fax)

Counsel for Plaintiff The Police and Fire
Retirement System of the City of Detroit

- 22 -

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 18, 2016, I caused the foregoing Memorandum of Law in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation to be served electronically on all ECF participants.

s/ Arthur C. Leahy
ARTHUR C. LEAHY