UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

—————————————————————— x

NECA-IBEW HEALTH & WELFARE FUND, :    Civil Action No. 1:08-cv-10783-LAP
Individually and On Behalf of All Others : 
Similarly Situated,                       :    "ECF Case"
                                         : 
                Plaintiff,    :    <u>CLASS ACTION</u>
                                         : 
      vs.                                : 
                                         : 
GOLDMAN, SACHS & CO., et al.,      : 
                                         : 
              Defendants.    : 

—————————————————————— x

POLICE AND FIRE RETIREMENT SYSTEM :    Civil Action No. 10 Civ. 4429-LAP
OF THE CITY OF DETROIT, Individually : 
and On Behalf of All Others Similarly Situated, :    "ECF Case"
                                         : 
                Plaintiff,    :    CLASS ACTION
                                         : 
      vs.                                : 
                                         : 
GOLDMAN, SACHS & CO., et al.,      : 
                                         : 
             Defendants.    : 

—————————————————————— x

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' COUNSEL'S MOTION
FOR AN AWARD OF ATTORNEY'S FEES AND EXPENSES**

1115655_1

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................................1

II.   THE REQUESTED ATTORNEYS' FEES ARE REASONABLE AND SHOULD
      BE GRANTED ......................................................................................................5

      A.    Plaintiffs' Counsel Are Entitled to an Award of Attorneys' Fees from the
            Common Fund .........................................................................................5

      B.    The Court Should Award a Reasonable Percentage of the Common Fund ............6

      C.    The Requested Attorneys' Fees Are Reasonable Under the Percentage-of-
            the-Fund Method........................................................................................7

      D.    The *Goldberger* Factors Confirm that the Requested 21% Fee Is Fair and
            Reasonable ..............................................................................................9

            1.    The Risks of the Litigation Support the Requested Fee ...........................9

            2.    The Time and Labor Expended by Plaintiffs' Counsel Support the
                  Requested Fee .............................................................................12

            3.    The Magnitude and Complexity of the Actions Support the
                  Requested Fee .............................................................................16

            4.    The Quality of Plaintiffs' Counsel's Representation Supports the
                  Requested Fee .............................................................................17

            5.    Second Circuit Precedent Supports the 21% Fee as a Reasonable
                  Percentage of the Total Recovery ...................................................18

            6.    Public Policy Further Supports the Requested Fee...................................18

            7.    Plaintiffs' Approval of the Requested Fee................................................18

III.  PLAINTIFFS' COUNSEL'S EXPENSES ARE REASONABLE AND SHOULD
      BE APPROVED FOR RECOVERY ...................................................................19

IV.   CONCLUSION...................................................................................................20

1115655_1

# TABLE OF AUTHORITIES

Page

## CASES

*Bateman Eichler, Hill Richards, Inc. v. Berner,*
    472 U.S. 299 (1985)...........................................................................5

*Blum v. Stenson,*
    465 U.S. 886 (1984)........................................................................6, 7

*Boeing Co. v. Van Gemert,*
    444 U.S. 472 (1980).........................................................................5

*Camden I Condo. Ass'n v. Dunkle,*
    946 F.2d 768 (11th Cir. 1991) .........................................................7

*City of Ann Arbor Emps. Ret. Sys. v. Citigroup Mortg. Loan Trust, Inc.,*
    No. 08-CV-1418, slip op.
    (E.D.N.Y. Dec. 5, 2012) ..................................................................8

*Davis v. J.P. Morgan Chase & Co.,*
    827 F. Supp. 2d 172 (W.D.N.Y. 2011)........................................6, 16

*Detroit v. Grinnell Corp.,*
    495 F.2d 448 (2d Cir. 1974)...............................................................9

*Goldberger v. Integrated Res., Inc.,*
    209 F.3d 43 (2d Cir. 2000)...................................................... *passim*

*Gottlieb v. Barry,*
    43 F.3d 474 (10th Cir. 1994) ...........................................................7

*Harman v. Lyphomed, Inc.,*
    945 F.2d 969 (7th Cir. 1991) ...........................................................7

*Hayes v. Harmony Gold Mining Co.,*
    509 F. App'x 21 (2d Cir. 2013) ........................................................6

*Hicks v. Morgan Stanley,*
    No. 01 Civ. 10071 (RJH), 2005 WL 2757792
    (S.D.N.Y. Oct. 24, 2005) ...........................................................6, 18

*In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.,*
    No. 03 MDL 1529 LMM, 2006 WL 3378705
    (S.D.N.Y. Nov. 16, 2006),
    *aff'd,* 272 F. App'x 9 (2d Cir. 2008)..........................................8, 17

**Page**

*In re AT&T Corp. Sec. Litig.*,
    455 F.3d 160 (3d Cir. 2006)...........................................................................7

*In re Buspirone Antitrust Litig.*,
    MDL No. 1413 (JGK), 2003 U.S. Dist. LEXIS 26538
    (S.D.N.Y. Apr. 17, 2003)................................................................................8

*In re Cardinal Health Inc. Sec. Litig.*,
    528 F. Supp. 2d 752 (S.D. Ohio 2007) .......................................................16

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d Cir. N.J. 2001) ..................................................................4

*In re China Sunergy Sec. Litig.*,
    No. 07 Civ. 7895 (DAB), 2011 WL 1899715
    (S.D.N.Y. May 13, 2011)..............................................................................19

*In re CIT Grp. Inc. Sec. Litig.*,
    No. 1:08-cv-06613-BSJ-THK, slip op.
    (S.D.N.Y. June 13, 2012)...............................................................................8

*In re Comverse Tech., Inc. Sec. Litig.*,
    No. 06CV1825(NGG)(RER), 2010 WL 2653354
    (E.D.N.Y. June 24, 2010) ..............................................................8, 9, 16, 18

*In re Deutsche Telekom AG Sec. Litig.*,
    No. 00-CV-9475 (NRB), 2005 U.S. Dist. LEXIS 45798
    (S.D.N.Y. June 14, 2005)................................................................................8

*In re Enron Corp. Sec. Litig.*,
    586 F. Supp. 2d 732 (S.D. Tex. 2008) ........................................................15

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
    No. 02-CV-3400 (CM)(PED), 2010 WL 4537550
    (S.D.N.Y. Nov. 8, 2010) ................................................................12, 16, 18, 20

*In re Global Crossing Sec. & ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y. 2004) .................................................................17

*In re Indymac Mortg. -Backed Sec. Litig.*,
    No. 09 Civ. 4583 (LAK), 2013 U.S. Dist. LEXIS 103576
    (S.D.N.Y. July 23, 2013) ..............................................................................11

*In re Initial Pub. Offering Sec. Litig.*,
    671 F. Supp. 2d 467 (S.D.N.Y. 2009)............................................................8

**Page**

*In re Marsh ERISA Litig.*,
265 F.R.D. 128 (S.D.N.Y. 2010) ...................................................................12, 17

*In re Morgan Stanley Mortg. Pass-Through Certificates Litig.*,
No. 09 Civ. 2137 (LTS)(MHD), 2013 U.S. Dist. LEXIS 5285
(S.D.N.Y. Jan. 11, 2013)...............................................................................11

*In re Nortel Networks Corp. Sec. Litig.*,
539 F.3d 129 (2d Cir. N.Y. 2008).................................................................4, 19

*In re Nortel Networks Corp. Sec. Litig.*,
No. 05-MD-1659, slip op.
(S.D.N.Y. Dec. 26, 2006) ...............................................................................15

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
991 F. Supp. 2d 437 (E.D.N.Y. 2014) ..............................................................6

*In re Sumitomo Copper Litig.*,
189 F.R.D. 274 (S.D.N.Y. 1999) .....................................................................16

*In re Telik, Inc. Sec. Litig.*,
576 F. Supp. 2d 570 (S.D.N.Y. 2008)...........................................................5, 7, 9

*In re Thirteen Appeals Arising out of the San Juan Dupont Plaza Hotel Fire Litig.*,
56 F.3d 295 (1st Cir. 1995)...............................................................................7

*In re Veeco Instruments Inc. Sec. Litig.*,
No. 05 MDL 01695 (CM), 2007 WL 4115808
(S.D.N.Y. Nov. 7, 2007) ........................................................................5, 17, 19

*In re WorldCom, Inc. Sec. Litig.*,
388 F. Supp. 2d 319 (S.D.N.Y. 2005)................................................................7

*Landmen Partners, Inc. v. Blackstone Group L.P.*,
No. 08-cv-03601-HB-FM, slip op.
(S.D.N.Y. Dec. 18, 2013) .................................................................................8

*Maley v. Del Global Techs. Corp.*,
186 F. Supp. 2d 358 (S.D.N.Y. 2002).............................................................18

*Mass. Bricklayers & Masons Trust Funds v. Deutsche Alt- A Sec., Inc.*,
No. 2:08-cv-3178-LDW-ARL, slip op.
(E.D.N.Y. July 11, 2012) ..................................................................................8

**Page**

*Missouri v. Jenkins*,
  491 U.S. 274 (1989) ............................................................................................7

*N.J. Carpenters Health Fund v. DLJ Mortg. Capital, Inc.*,
  No. 08 Civ. 5653 (PAC), 2013 U.S. Dist. LEXIS 12640
  (S.D.N.Y. Jan. 23, 2013) ..................................................................................11

*N.J. Carpenters Health Fund v. DLJ Mortg. Capital, Inc.*,
  No. 08 Civ. 5653 (PAC), 2014 U.S. Dist. LEXIS 35326
  (S.D.N.Y. Mar. 17, 2014) ...................................................................................3

*N.J. Carpenters Health Fund v. Rali Series 2006-Q01*,
  477 F. App'x 809 (2d Cir. 2012) ......................................................................11

*N.J. Carpenters Health Fund v. Residential Capital, LLC*,
  No. 08 CV 8781 (HB), 2013 U.S. Dist. LEXIS 61874
  (S.D.N.Y. Apr. 30, 2013) ..................................................................................11

*N.J. Carpenters Health Fund v. Residential Capital, LLC*,
  No. 08-cv-8781 (KPF), slip op.
  (S.D.N.Y. July 31, 2015) ....................................................................................8

*N.J. Carpenters Health Fund v. Royal Bank of Scot. Grp., PLC*,
  No. 08 Civ. 5310 (DAB), 2015 U.S. Dist. LEXIS 15980
  (S.D.N.Y. Feb. 5, 2015) ....................................................................................11

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*,
  693 F.3d 145 (2d Cir. 2012) ...................................................................... *passim*

*Petrovic v. AMOCO Oil Co.*,
  200 F.3d 1140 (8th Cir. 1999) ............................................................................7

*Plumbers' & Pipefitters' Local #562 Supplemental Plan & Trust v.*
*J.P. Morgan Acceptance Corp. I*,
  No. 08 CV 1713 (ERK)(WDW), 2012 U.S. Dist. LEXIS 132057
  (E.D.N.Y. Sept. 14, 2012) .................................................................................11

*Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp.*,
  No. 08-cv-10446-RGS, slip op.
  (D. Mass. Dec. 19, 2013) ....................................................................................8

*Rawlings v. Prudential-Bache Props.*,
  9 F.3d 513 (6th Cir. 1993) ..................................................................................7

Page

*Ret. Fund v. J.P. Morgan Chase & Co.*,
    No. 09-CV-3701 (JPO), slip op.
    (S.D.N.Y. Dec. 4, 2015) ...................................................................................... 15

*Ret. Fund v. J.P. Morgan Chase & Co.*,
    No. 09-CV-3701 (JPO), slip op.
    (S.D.N.Y. Jan. 4, 2013) ...................................................................................... 11

*Savoie v. Merchs. Bank*,
    166 F.3d 456 (2d Cir. 1999) .................................................................................. 6

*Swedish Hosp. Corp. v. Shalala*,
    1 F.3d 1261 (D.C. Cir. 1993) ................................................................................ 7

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) ............................................................................................... 5

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*,
    669 F.3d 632 (5th Cir. 2012) ................................................................................ 7

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) .............................................................................. 7

*Wal-Mart Stores, Inc. v. Visa U.S.A.*,
    396 F.3d 96 (2d Cir. 2005) .................................................................................... 6

## STATUTES, RULES AND REGULATIONS

15 U.S.C.
    §77z-1(a)(6) ........................................................................................................... 7

## SECONDARY AUTHORITIES

H.R. Conf. Rep. No. 104-369 (1995),
    *reprinted in* 1995 U.S.C.C.A.N. 730 ................................................................. 19

1115655_1

## I.    INTRODUCTION

Plaintiffs' Counsel have recovered $272 million in cash for the Settlement Class, which is one of the top four settlements ever obtained in this District in residential mortgage-backed securities ("RMBS") litigation in terms of average recovery per dollar of initial face value.[1] Leahy Decl., ¶6. In order to obtain this substantial recovery, Plaintiffs and Plaintiffs' Counsel overcame a number of significant challenges which existed from the filing of the first complaints, including issues of first impression and complex factual and legal questions surrounding RMBS class litigation.[2]

When the NECA Action was filed in 2008, there was no precedent and no roadmap for successfully asserting class-wide Securities Act of 1933 ("Securities Act") claims arising from multiple RMBS offerings. Plaintiffs faced substantial uncertainty and risks in establishing standing, obtaining class certification, establishing liability and damages, and defeating Defendants' affirmative defenses. Each of these challenges carried a high level of risk and could have resulted in dismissal of Plaintiffs' claims, a denial of class certification, a loss at trial or on appeal, or a

---

[1]    Unless otherwise stated or defined, all capitalized terms used herein shall have the meanings provided in the Stipulation and Agreement of Settlement (the "Stipulation"), dated as of August 12, 2015. Dkt. No. 216.  Plaintiffs' Counsel respectfully refers the Court to the accompanying Declaration of Arthur C. Leahy in Support of (1) Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation and (2) Plaintiffs' Counsel's Motion for an Award of Attorneys' Fees and Expenses ("Leahy Decl."), Declaration of Lawrence P. Kolker in Support of Plaintiffs' Counsel's Motion for Attorneys' Fees and Reimbursement of Expenses Filed on Behalf of Wolf Haldenstein Adler Freeman & Herz LLP ("Kolker Decl."), Declaration of Denis F. Sheils Filed on Behalf of Kohn, Swift, & Graf, P.C. in Support of Application for Award of Attorneys' Fees and Expenses ("Sheils Decl."), and Memorandum of Law in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation  (the "Final Approval Brief") for a detailed description of the two cases that are the subject of this Settlement.

[2]    As discussed in the Final Approval Brief, the Settlement is resolving two separate actions: (1) *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co., et al.*, No. 1:08-cv-10783-LAP (the "NECA Action"), and (2) *The Police & Fire Retirement System of the City of Detroit v. Goldman Sachs & Co., et al.*, No. 1:10-cv-04429-LAP (the "PFRS Action") (collectively, the "Actions").

reduction of recoverable damages. Plaintiffs' Counsel nevertheless undertook this representation on a contingency basis, with no guarantee of success or recovery.

The substantial risks that existed when the initial complaint in the NECA Action was filed soon became manifest. Judge Cedarbaum granted Defendants' first three motions to dismiss and eventually completely dismissed the NECA Action for lack of standing and failure to allege a cognizable injury. Leahy Decl., ¶¶26-45. Faced with the total loss of its case, NECA filed an appeal of the dismissal to the Second Circuit.

While that appeal was pending, NECA and the Defendants engaged in extensive settlement negotiations, during which a substantial offer to settle the case was made – an offer that at that time would have been the second largest recovery in any RMBS class action. Declaration of Steven L. Myers ("NECA Decl."), ¶9. After receiving advice from its counsel and carefully considering all of the risks, NECA declined to settle the case and instead pursued the appeal. *Id.*, ¶¶10-11.

Due solely to the extraordinary efforts of NECA's counsel, the appeal resulted in a resounding victory for Plaintiffs and the Settlement Class, leading to this Settlement of $272 million – a recovery that was many multiples higher than the settlement offer made during the pending appeal. The Second Circuit's opinion in the NECA Action is a landmark decision that not only reversed the District Court's order, but greatly expanded an RMBS plaintiff's standing to bring class claims, thereby expanding the number of investors able to recover as Settlement Class Members in the Actions, and in fact allowing thousands, if not tens of thousands, of other RMBS investors to participate in RMBS class settlements. *See NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145 (2d Cir. 2012) ("*NECA*"); Declaration of Arthur R. Miller ("Miller Decl."), ¶¶15-16. Indeed, as numerous courts and legal commentators have recognized, the *NECA* decision "'constitute[d] a change in controlling law' concerning class standing in securities cases" and "had a

*resoundingly favorable impact for RMBS investors involved in class actions pending throughout the country*." Miller Decl., ¶¶14-15 (citing *N.J. Carpenters Health Fund v. DLJ Mortg. Capital, Inc.*, No. 08 Civ. 5653 (PAC), 2014 U.S. Dist. LEXIS 35326, at *5 (S.D.N.Y. Mar. 17, 2014));[3] Leahy Decl., ¶55.

In the wake of *NECA*, numerous district courts reconsidered their previous orders dismissing RMBS claims for lack of standing and reinstated the plaintiffs' claims for billions of dollars in more than 130 RMBS offerings. Miller Decl., ¶15. Due to Plaintiffs' Counsel's efforts in shaping the law through *NECA*, settlements in those cases have now yielded more than $1.5 billion in recoveries for RMBS investors. *Id.*, ¶16.

When class counsel take on substantial risks, overcome overwhelming odds and obtain an extraordinary result, all on a contingency basis, it is important that they be rewarded in a manner that reflects those results. In this case, Plaintiffs' Counsel are respectfully applying for a reasonable award of attorneys' fees in the amount of 21% of the Settlement Amount. Plaintiffs' Counsel also seek $1,236,390.04 in litigation expenses that Plaintiffs' Counsel reasonably and necessarily incurred to prosecute the Actions. As set forth below, the relevant factors articulated in the Second Circuit's *Goldberger* decision strongly support the requested award. *See Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000).

Significantly, the requested fee is a product of a fee grid negotiated by NECA, the court-appointed lead plaintiff in the NECA Action, who has actively overseen the litigation from its inception. NECA Decl., ¶12. The Second Circuit has directed district courts to:

> give serious consideration to negotiated fees because PSLRA lead plaintiffs often have a significant financial stake in the settlement, providing a powerful incentive to ensure that any fees resulting from that settlement are reasonable. ***In many cases,***

---

[3]    Citations are omitted and emphasis is added throughout unless otherwise indicated.

*the agreed-upon fee will offer the best indication of a market rate, thus providing a good starting position for a district court's fee analysis.*

*In re Nortel Networks Corp. Sec. Litig.*, 539 F.3d 129, 133-34 (2d Cir. N.Y. 2008); *see also In re Cendant Corp. Litig.*, 264 F.3d 201, 220 (3d Cir. N.J. 2001) ("courts should afford a presumption of reasonableness to fee requests submitted pursuant to an agreement between a properly-selected lead plaintiff and properly-selected lead counsel").

Here, NECA negotiated a tier-structured fee agreement that would award Lead Counsel a fee based on the magnitude of the recovery obtained for the class, and is consistent with fees awarded in similar class action litigations. NECA Decl., ¶¶17-20; Miller Decl., ¶¶22-23. The tiered-structure negotiated by NECA allowed for a fee request of up to 19% of the first $40 million recovered on behalf of the Settlement Class, ***no fee on any recovery between $40-$55 million***, 21% on recovery amounts from $55-$75 million, 23% on recovery amounts from $75-$125 million, and 25% for recovery amounts over $125 million. NECA Decl., ¶18. As Professor Miller states, this fee agreement properly incentivized Lead Counsel to maximize the actual recovery received by the Settlement Class. Miller Decl., ¶22. Both NECA and the lead plaintiff in the PFRS Action, Police and Fire Retirement System of the City of Detroit ("PFRS"), fully endorse Plaintiffs' Counsel's fee and expense request. NECA Decl., ¶17; Declaration of Ronald King ("PFRS Decl."), ¶5.

In addition, as required by the Court's December 30, 2015 Order Certifying a Settlement Class, Preliminarily Approving the Settlement, and Providing for Notice (Dkt. No. 220, the "Preliminary Approval Order"), copies of the Notice have been mailed to more than 5,800 potential Settlement Class Members and their nominees, and a Summary Notice was published in *Investor's Business Daily* and transmitted over the *PR Newswire*.[4] The Notice advised potential Settlement

---

[4]    *See* Declaration of Carole K. Sylvester Regarding (A) Mailing of the Notice of Pendency of Class Action and Proposed Settlement and Final Approval Hearing and the Proof of Claim and

Case 1:08-cv-10783-LAP   Document 226   Filed 02/18/16   Page 12 of 30


Class Members that Lead Counsel would seek fees of up to 21% of the Settlement Fund and recovery of Plaintiffs' Counsel's litigation expenses in an amount not to exceed $1.5 million. *See* Sylvester Decl., Ex. A. While the deadline for Settlement Class Members to object to the requested attorneys' fees and expenses has not yet passed, to date, no one has objected to the application.

## II.  THE REQUESTED ATTORNEYS' FEES ARE REASONABLE AND SHOULD BE GRANTED

### A.  Plaintiffs' Counsel Are Entitled to an Award of Attorneys' Fees from the Common Fund

The Supreme Court has long recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Goldberger*, 209 F.3d at 47. Courts recognize that awards of fair attorneys' fees from a common fund "serve to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons." *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 585 (S.D.N.Y. 2008); *accord In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 01695 (CM), 2007 WL 4115808, at *2 (S.D.N.Y. Nov. 7, 2007). Indeed, the Supreme Court has repeatedly emphasized that private securities actions, such as this one, are "an essential supplement to criminal prosecutions and civil enforcement actions" brought by the SEC. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007); *accord Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) (private securities actions provide "'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] action'"). Fairly compensating Plaintiffs' Counsel for the risks they took in bringing these Actions is essential because "[s]uch actions could not be sustained if plaintiffs' counsel were not to receive remuneration from the settlement fund for their efforts on

---

Release Form, (B) Publication of the Summary Notice, (C) Internet Posting, and (D) Requests for Exclusion Received to Date ("Sylvester Decl."), ¶¶4-11, 14, filed herewith.

1115655_1

behalf of the class." *Hicks v. Morgan Stanley*, No. 01 Civ. 10071 (RJH), 2005 WL 2757792, at *9 (S.D.N.Y. Oct. 24, 2005).

### B.    The Court Should Award a Reasonable Percentage of the Common Fund

Courts routinely find that the "percentage-of-the-fund" method, under which counsel is awarded a percentage of the fund that they created, is the preferred means to determine a fee because it "'directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation.'" *Wal-Mart Stores, Inc. v. Visa U.S.A.*, 396 F.3d 96, 122 (2d Cir. 2005); *accord Hayes v. Harmony Gold Mining Co.*, 509 F. App'x 21, 24 (2d Cir. 2013). The percentage-of-the-fund approach also recognizes that the quality of counsel's services is best measured by the results achieved and is most consistent with the system typically used in the marketplace to compensate attorneys in non-class contingency cases.[5]

The Supreme Court has also indicated that attorneys' fees in common-fund cases generally should be based on a percentage of the fund. *See Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984) ("under the 'common fund doctrine,' . . . a reasonable fee is based on a percentage of the fund bestowed on the class"). The Second Circuit has expressly approved the percentage method, recognizing that "the lodestar method proved vexing" and results in "an inevitable waste of judicial resources." *Goldberger*, 209 F.3d at 48-50; *Savoie v. Merchs. Bank*, 166 F.3d 456, 460 (2d Cir. 1999). More recently, the Second Circuit also has acknowledged that the "trend in this Circuit is toward the percentage method." *Wal-Mart*, 396 F.3d at 122; *accord Davis v. J.P. Morgan Chase &*

---

[5]    *See, e.g.*, *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 991 F. Supp. 2d 437, 440 (E.D.N.Y. 2014) ("The percentage method better aligns the incentives of plaintiffs' counsel with those of the class members because it bases the attorneys' fees on the results they achieve for their clients, rather than on the number of motions they file, documents they review, or hours they work. . . . The percentage method also accords with the overwhelming prevalence of contingency fees in the market for plaintiffs' counsel . . . .").

*Co.*, 827 F. Supp. 2d 172, 183-85 (W.D.N.Y. 2011).  All federal courts of appeal to consider the matter have approved of the percentage method, with the Eleventh and District of Columbia Circuits **requiring** its use in common-fund cases.[6]

The PSLRA also supports the use of the percentage-of-the-fund method, providing that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a **reasonable percentage** of the amount" recovered for the class.  15 U.S.C. §77z-1(a)(6).[7]

### C.     The Requested Attorneys' Fees Are Reasonable Under the Percentage-of-the-Fund Method

The Supreme Court has recognized that an appropriate court-awarded fee is intended to approximate what counsel would receive if they were bargaining for the services in the marketplace. *See Missouri v. Jenkins*, 491 U.S. 274, 285-86 (1989).  If this were a non-class action, the customary fee arrangement would be contingent and in the range of 33% of the recovery.  *See Blum*, 465 U.S. at 904 ("In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers.  In those cases, therefore, the fee is directly proportional to the recovery.") (Brennan, J., concurring).

The requested 21% fee is well within the range of percentage fees awarded within the Second Circuit in other comparable securities and antitrust cases:

---

[6]     *See In re Thirteen Appeals Arising out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 305-07 (1st Cir. 1995); *In re AT&T Corp. Sec. Litig.*, 455 F.3d 160, 164 (3d Cir. 2006); *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 642-43 (5th Cir. 2012); *Rawlings v. Prudential-Bache Props.*, 9 F.3d 513, 515-17 (6th Cir. 1993); *Harman v. Lyphomed, Inc.*, 945 F.2d 969, 975 (7th Cir. 1991); *Petrovic v. AMOCO Oil Co.*, 200 F.3d 1140, 1157 (8th Cir. 1999); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002); *Gottlieb v. Barry*, 43 F.3d 474, 483 (10th Cir. 1994); *Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991); *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1269-71 (D.C. Cir. 1993).

[7]     Courts have concluded that Congress, in using this language, expressed a preference for the percentage method to determine attorneys' fees in securities class actions.  *See, e.g.*, *Telik*, 576 F. Supp. 2d at 586; *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 355 (S.D.N.Y. 2005).

| Case/Fee Order | Percentage of the Fund | Settlement Amount |
|---|---|---|
| *Landmen Partners, Inc. v. Blackstone Group L.P.*, No. 08-cv-03601-HB-FM, slip op. (S.D.N.Y. Dec. 18, 2013) (Dkt. No. 191) (Baer, J.) | 33.33% | $85 million |
| *In re CIT Grp. Inc. Sec. Litig.*, No. 1:08-cv-06613-BSJ-THK, slip op. (S.D.N.Y. June 13, 2012) (Dkt. No. 184) (Jones, J.) | 26.5% | $75 million |
| *In re Converse Tech., Inc. Sec. Litig.*, No. 06CV1825(NGG)(RER), 2010 WL 2653354, at *6 (E.D.N.Y. June 24, 2010) (Garaufis, J.) | 25% | $225 million |
| *In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467, 516 (S.D.N.Y. 2009) (Scheindlin, J.) | 33-1/3% | $586 million |
| *In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*, No. 03 MDL 1529 LMM, 2006 WL 3378705, at *3 (S.D.N.Y. Nov. 16, 2006) (McKenna, J.), *aff'd*, 272 F. App'x 9 (2d Cir. 2008) | 21.4% | $455 million |
| *In re Deutsche Telekom AG Sec. Litig.*, No. 00-CV-9475 (NRB), 2005 U.S. Dist. LEXIS 45798, at *12-*13 (S.D.N.Y. June 14, 2005) (Buchwald, J.) | 28% | $120 million |
| *In re Buspirone Antitrust Litig.*, MDL No. 1413 (JGK), 2003 U.S. Dist. LEXIS 26538, at *11 (S.D.N.Y. Apr. 17, 2003) (Koeltl, J.) | 33-1/3% | $220 million |

A 21% fee is also in line with the fee awards granted in a number of RMBS class actions in

this District and elsewhere:

| Case/Fee Order | Percentage of the Fund | Settlement Amount |
|---|---|---|
| *N.J. Carpenters Health Fund v. Residential Capital, LLC*, No. 08-cv-8781 (KPF), slip op. (S.D.N.Y. July 31, 2015) (Dkt. No. 353) (Failla, J.) | 20.75% | $335 million |
| *Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp.*, No. 08-cv-10446-RGS, slip op. (D. Mass. Dec. 19, 2013) (Dkt. No. 210) (Stearns, J.) | 25% | $21.2 million |
| *City of Ann Arbor Emps. Ret. Sys. v. Citigroup Mortg. Loan Trust, Inc.*, No. 08-CV-1418, slip op. (E.D.N.Y. Dec. 5, 2012) (Dkt. No. 178) (Wexler, J.) | 20.40% | $24.975 million |
| *Mass. Bricklayers & Masons Trust Funds v. Deutsche Alt- A Sec., Inc.*, No. 2:08-cv-3178-LDW-ARL, slip op. (E.D.N.Y. July 11, 2012) (Dkt. No. 147) (Wexler, J.) | 26.5% | $32.5 million |

**D.    The *Goldberger* Factors Confirm that the Requested 21% Fee Is Fair and Reasonable**

The Second Circuit has identified six factors that courts should consider in reviewing a request for attorneys' fees in a common-fund case.  *Goldberger*, 209 F.3d at 50.  Each of the *Goldberger* factors indicate that the requested fee is appropriate, fair and reasonable.

**1.    The Risks of the Litigation Support the Requested Fee**

The risk undertaken in the litigation is often considered the most important *Goldberger* factor. *Goldberger*, 209 F.3d at 54; *see also Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974); *Comverse*, 2010 WL 2653354, at *5; *Telik*, 576 F. Supp. 2d at 592.  In particular, the Court must consider the risks of the litigation at the time the suit was brought.  *See Goldberger*, 209 F.3d at 55.

When the NECA and PFRS Actions were filed in December 2008 and June 2010, respectively, there were substantial risks and uncertainties which made it far from certain that any recovery – let alone the very substantial recovery of $272 million – would ultimately be obtained for the Settlement Class.  In December 2008, almost none of the evidence regarding Goldman Sachs' and the other Wall Street firms' underwriting of toxic RMBS had been made public.  It was not until 2013 – five years after the NECA Action was commenced – that the U.S. Department of Justice first formed a task force to investigate the role of investment banks in the sale of RMBS.

Moreover, when the Actions were filed, there was very little established legal precedent for RMBS class action litigation, and no court had sustained claims under the federal securities laws for purchasers of RMBS securities.  Miller Decl., ¶¶8-9.  Due to the lack of controlling precedent, there was substantial uncertainty concerning issues related to standing, materiality, falsity, causation, damages and class certification, among other things.  These uncertainties created major risks for Plaintiffs and Plaintiffs' Counsel, which were magnified by the fact that Plaintiffs' Counsel took the cases on a contingent basis.  Leahy Decl., ¶¶130-142.  If Defendants were to prevail on any of the

- 9 -

aforementioned and unsettled issues, the Settlement Class – and Plaintiffs' Counsel – would receive nothing, even though Plaintiffs' Counsel undertook the cases knowing they would require the investment of tens of thousands of hours and millions of dollars in expenses.

In fact, several of these substantial risks materialized early on in the litigation, as Judge Cedarbaum granted Defendants' first *three* motions to dismiss in the NECA Action, and eventually dismissed *all* of NECA's claims due to lack of standing and failure to allege a legally cognizable injury.  Leahy Decl., ¶¶26-45.  Judge Cedarbaum also dismissed the PFRS Action twice.  Sheils Decl., ¶13.

Indeed, as the law developed after 2008, the risks to Plaintiffs' Counsel only increased.  As set forth in Professor Miller's declaration, in 2009 and 2010, courts were deciding issues related to class standing, class certification, and proving material misrepresentations in a manner that was unfavorable to Plaintiffs and RMBS investors.  Miller Decl., ¶¶9-10.  In fact, in at least 11 different RMBS litigations, district courts dismissed a substantial portion of the plaintiffs' claims for a lack of standing or for failure to adequately plead that the plaintiffs were damaged.  *Id*., ¶9.

Faced with having all of its claims dismissed, and against the overwhelming tide of contrary RMBS-related case law, NECA and Lead Counsel undertook the difficult appeal to the Second Circuit.  The resulting opinion, *NECA*, 693 F.3d 145, was a watershed decision in the context of RMBS class action litigation.  Lead Counsel's victory in the Second Circuit allowed the Plaintiffs to settle the Actions for an amount many multiples higher than what they could have settled for prior thereto.  In addition, the *NECA* decision obtained by Lead Counsel "had a resoundingly favorable impact for RMBS investors involved in class actions pending throughout the country."  Miller Decl., ¶15.  As the following chart demonstrates, after the *NECA* decision more than 130 offerings of

RMBS were reinstated in class action litigations, and those cases have resulted in more than $1.5 billion in recoveries for RMBS investors:

| Case | Offerings Reinstated After *NECA* | Settlement Amount After *NECA* |
|---|---|---|
| *In re Indymac Mortg. -Backed Sec. Litig.*, No. 09 Civ. 4583 (LAK), 2013 U.S. Dist. LEXIS 103576 (S.D.N.Y. July 23, 2013) | 42 | $340,000,000 |
| *N.J. Carpenters Health Fund v. Residential Capital, LLC*, No. 08 CV 8781 (HB), 2013 U.S. Dist. LEXIS 61874 (S.D.N.Y. Apr. 30, 2013) | 37 | $335,000,000 |
| *Plumbers' & Pipefitters' Local #562 Supplemental Plan & Trust v. J.P. Morgan Acceptance Corp. I*, No. 08 CV 1713 (ERK)(WDW), 2012 U.S. Dist. LEXIS 132057 (E.D.N.Y. Sept. 14, 2012) | 30 | $280,000,000 |
| *In re Morgan Stanley Mortg. Pass-Through Certificates Litig.*, No. 09 Civ. 2137 (LTS)(MHD), 2013 U.S. Dist. LEXIS 5285 (S.D.N.Y. Jan. 11, 2013) | 13 | $90,000,000 |
| *Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*, No. 09-CV-3701 (JPO), slip op. (S.D.N.Y. Jan. 4, 2013) (Dkt. No. 197) | 10 | $388,000,000 |
| *N.J. Carpenters Health Fund v. Royal Bank of Scot. Grp., PLC*, No. 08 Civ. 5310 (DAB), 2015 U.S. Dist. LEXIS 15980 (S.D.N.Y. Feb. 5, 2015) | 5 | case currently pending |
| *N.J. Carpenters Health Fund v. DLJ Mortg. Capital, Inc.*, No. 08 Civ. 5653 (PAC), 2013 U.S. Dist. LEXIS 12640 (S.D.N.Y. Jan. 23, 2013) | 1 | $110,000,000 (settlement pending) |

Nevertheless, even after Lead Counsel prevailed in litigating the *NECA* appeal, there was still substantial risk that the case would not be certified as a class action.  In fact, at that time the only Second Circuit authority addressing class certification in an RMBS case had affirmed the district court's **denial** of certification.  *See N.J. Carpenters Health Fund v. Rali Series 2006-Q01*, 477 F. App'x 809 (2d Cir. 2012).  Moreover, Defendants put forth several viable arguments against class certification in the NECA Action, including a novel standing argument that no class may be certified because claims of all class members, other than NECA, were barred by the three-year statute of repose under §13 of the Securities Act. Dkt. No. 209 at 18-23; Leahy Decl., ¶74.

In the face of all these uncertainties, Plaintiffs' Counsel nonetheless undertook the Actions on a wholly contingent basis, knowing that the Actions could last for years, would require substantial

attorney time and significant expenses, and provided no guarantees of compensation.  Leahy Decl., ¶¶147-152.  Plaintiffs' Counsel's assumption of this huge contingency-fee risk, and their unwavering tenacity in the face of numerous litigation risks, strongly supports the reasonableness of the requested fee.  *See In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400 (CM)(PED), 2010 WL 4537550, at *27 (S.D.N.Y. Nov. 8, 2010) ("the risk associated with a case undertaken on a contingent fee basis is an important factor in determining an appropriate fee award"); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 148 (S.D.N.Y. 2010) ("There was significant risk of non-payment in this case, and Plaintiffs' Counsel should be rewarded for having borne and successfully overcome that risk.").

The substantial risks throughout the litigation strongly support the requested fee.

### 2.    The Time and Labor Expended by Plaintiffs' Counsel Support the Requested Fee

Over the past seven years, Plaintiffs' Counsel dedicated an enormous amount of time and money to the successful resolution of the Actions.  In total, Plaintiffs' Counsel spent over 28,173 hours litigating the Actions.  *See* Declaration of Arthur C. Leahy Filed on Behalf of Robbins Geller Rudman & Dowd LLP in Support of Application for Award of Attorneys' Fees and Expenses ("RGRD Decl."), ¶3; Kolker Decl., ¶14; Sheils Decl., ¶15.  Plaintiffs' Counsel's efforts included a thorough investigation of the facts that led to the filings of eight different complaints (initial and amended) in the Actions.  The investigation included, among other things, locating and interviewing witnesses; carefully analyzing the offering documents; finding and consulting with RMBS experts; and locating, reviewing and analyzing additional sources such as court filings, government investigations, media reports, performance and ratings downgrade data, Congressional testimony, SEC filings, press releases, and public statements made by Goldman Sachs, the rating agencies, and the loan originators.  Leahy Decl., ¶79; Kolker Decl., ¶13; Sheils Decl., ¶12.  Plaintiffs' Counsel also

- 12 -

opposed seven motions to dismiss in the Actions (and moved for reconsideration in the NECA Action), which required extensive briefing on myriad complex and novel legal issues. Leahy Decl., ¶¶26-45; Kolker Decl., ¶13.

Lead Counsel also prosecuted the Second Circuit appeal in the NECA Action, which, as set forth in the Leahy Declaration, dealt with a number of highly complex legal issues of first impression in this Circuit. Leahy Decl.,¶¶46-59. Lead Counsel spent significant time conducting legal research, preparing briefing, and preparing for and conducting oral argument on the appeal. *Id.* As discussed above, the Second Circuit's resulting opinion was a resounding victory for Plaintiffs, Lead Counsel, the Settlement Class, and RMBS investors across the country.

Plaintiffs' Counsel also devoted considerable resources to developing the evidentiary record necessary to establish that class certification was appropriate. In support of their motions, both NECA and PFRS submitted extensive briefing, deposition testimony, documentary evidence, and expert declarations, concerning the RMBS at issue and the interconnectedness of each Offering. *Id.*, ¶¶69-75; Kolker Decl., ¶13. This evidence supported Plaintiffs' contentions that each of the elements of Rule 23 were met and that the Actions were appropriate to certify as class actions. After the motions for class certification were filed, Plaintiffs' Counsel prepared for and defended their class certification experts' depositions and prepared for and defended NECA's and PFRS' depositions and those of their investment managers. Leahy Decl., ¶73; Kolker Decl., ¶13; Sheils Decl., ¶12. Lead Counsel also deposed Defendants' expert witness, and researched and drafted NECA's class certification reply brief. Leahy Decl., ¶75. Plaintiffs' Counsel sought and obtained evidence related to all of the relevant components of Goldman Sachs' securitization operation, including origination and acquisition of mortgage loans, review and due diligence of loans, structuring of the Offerings, and the sale of the resultant RMBS to investors.

- 13 -

In total, fact discovery in the Actions lasted nearly two years.  Leahy Decl., ¶¶84-104; Kolker Decl., ¶11.  Each step in the fact discovery process was contested and hard-fought.  Plaintiffs' Counsel spent significant time and resources negotiating production of millions of pages of documents from Defendants.  Leahy Decl., ¶¶83-102; Kolker Decl., ¶¶9-12.  Discovery further required the service of 68 non-party subpoenas seeking critical information about the number and identity of investors in the Certificates for class certification "numerosity" purposes, companies that provided due-diligence services for Defendants, and companies that originated the loans underlying the Offerings.  Leahy Decl., ¶¶101-102; Kolker Decl., ¶11; Sheils Decl., ¶12.  Plaintiffs' Counsel obtained over 8.1 million pages of documents from Defendants, their affiliates and non-parties.  Leahy Decl., ¶90; Kolker Decl., ¶¶8-9; Sheils Decl., ¶9.  Plaintiffs' Counsel developed a sophisticated system to categorize the documents by issue, custodian, and relevance; identify and prepare witness files for prospective deponents; and identify the best documents that supported Plaintiffs' claims.  Plaintiffs' Counsel were also in the process of obtaining the original loan files for the loans backing the Certificates and had retained a team of experts to re-underwrite a sample of the loans.  Leahy Decl., ¶¶101-102; Kolker Decl., ¶9; Sheils Decl., ¶10.

These efforts led directly to the ultimate result – the documents and testimony Plaintiffs' Counsel spent years obtaining established, we believe, that the loans in each Offering were not originated in compliance with the stated underwriting guidelines, that data provided in the Offering documents was false and misleading, that Goldman Sachs' due diligence processes and practices were insufficient, and, thus, that Defendants had violated the Securities Act.  This, in turn, provided Plaintiffs' Counsel with leverage during the settlement negotiations, and that led to the excellent Settlement herein.

- 14 -

Plaintiffs' Counsel also defended against Defendants' aggressive discovery by working with Plaintiffs in responding to multiple document requests and interrogatories and coordinating the collection and production of documents.  Leahy Decl., ¶¶87-89; Kolker Decl., ¶8.

Plaintiffs' Counsel also worked extensively with investigators, experts and consultants at various stages of the litigation to help investigate the cases; help formulate the allegations; analyze the subject loans and borrowers; design an ESI search protocol; analyze class certification issues; analyze estimated damages; review Defendants' affirmative defenses; and prepare for eventual trial. Leahy Decl., ¶79; Kolker Decl., ¶¶10, 12.  Plaintiffs' Counsel spent significant time and resources working with consultants and experts in connection with their reports concerning the RMBS industry, negative loss causation, due diligence, materiality, statistical sampling, loan re-underwriting, and damages.  Leahy Decl., ¶¶79-82; Kolker Decl., ¶¶11, 12.

In total, Plaintiffs' Counsel expended 28,173.25 hours of attorney and other professional support time prosecuting the Actions.  *See* RGRD Decl., ¶3 (21,004.35 hours); Kolker Decl., ¶14 (2,325.50 hours); Sheils Decl., ¶15 (4,843.40 hours).  The significant amount of time and effort devoted to the Actions by Plaintiffs' Counsel confirms that the fee requested here is reasonable. Plaintiffs' Counsel's total lodestar is $14,580,626.50.  *See* RGRD Decl., ¶3 ($10,477,341.00); Kolker Decl., ¶14 ($1,571,335.50); Sheils Decl., ¶15 ($2,531,950.00).  The requested fee of 21% of the Settlement Amount represents a multiplier of 3.9 on Plaintiffs' Counsel's lodestar amount.  This multiplier falls squarely within the range of multipliers found appropriate by this District and others. *See, e.g.*, *In re Nortel Networks Corp. Sec. Litig.*, No. 05-MD-1659, slip op. (S.D.N.Y. Dec. 26, 2006) (awarding a fee equal to a 4.93 lodestar multiplier); *Forth Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*, No. 09-CV-3701 (JPO), slip op. at 2 (S.D.N.Y. Dec. 4, 2015) (4.57 multiplier); *In re Enron Corp. Sec. Litig.*, 586 F. Supp. 2d 732, 803 (S.D. Tex. 2008) (5.2

- 15 -

multiplier); *In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d 752, 768 (S.D. Ohio 2007) (5.85 multiplier).  In light of the excellent recovery here, the risks which existed at the time of the filing of the Actions, NECA's negotiated fee agreement, counsel's efforts in obtaining the landmark *NECA* decision and the resulting Settlement that was many multiples larger than the settlement offer during the pendency of the appeal, a multiplier of 3.9 is wholly justified.

While the time Plaintiffs' Counsel devoted to the case was substantial, they were nonetheless able to prosecute the Actions extremely efficiently.  Courts in this Circuit have regularly emphasized that the efficient prosecution of litigation serves both plaintiffs' and the public's interests, and should be encouraged.  *See Davis*, 827 F. Supp. 2d at 184 (noting that the percentage-of-the-fund method "provides an incentive to attorneys to resolve the case efficiently and to create the largest common fund out of which payments to the class can be made").  Because efficiency is prized in the Second Circuit, Courts implementing a lodestar crosscheck must be careful not to penalize counsel for their competence and efficiency.  *See Comverse*, 2010 WL 2653354, at *2 (noting that the lodestar method "'creates an incentive for attorneys to bill as many hours as possible, to do unnecessary work, and for those reasons can also create a disincentive to early settlement'").  Again, in light of the ***exceptional*** results obtained for Plaintiffs and the Settlement Class, Plaintiffs' Counsel should be rewarded for the substantial result achieved, and for resisting the urge to "bill as many hours as possible." *Comverse*, 2010 WL 2653354, at *2.

### 3. The Magnitude and Complexity of the Actions Support the Requested Fee

Courts have long recognized that securities class actions are "'notably difficult and notoriously uncertain.'" *FLAG Telecom*, 2010 WL 4537550, at *27 (quoting *In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 281 (S.D.N.Y. 1999)).  These Actions were no exception and in fact were even more complex than the usual complex class action.  As discussed above, the Actions raised

- 16 -

numerous novel and complex issues related to RMBS, any of which could have terminated the Actions and resulted in no recovery for the Settlement Class. *See* §II.D.1, *supra*. Accordingly, the magnitude and complexity of the Actions support the 21% fee request.

### 4. The Quality of Plaintiffs' Counsel's Representation Supports the Requested Fee

The quality of the representation is another important factor concerning fee awards. The quality of the representation here is best evidenced by the quality of the result achieved. *See Goldberger*, 209 F.3d at 55; *Veeco*, 2007 WL 4115808, at *7; *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 467 (S.D.N.Y. 2004). Lead Counsel developed the law in a very favorable way for the Settlement Class herein (and all RMBS investors) via the *NECA* decision. In addition, the skill of Plaintiffs' Counsel in litigating the Actions, together with their substantial experience in securities class actions,[8] and their underlying commitment to the litigation, provided Plaintiffs with the leverage necessary to negotiate one of the top RMBS settlements in this District. The high quality of Plaintiffs' Counsel's representation of Plaintiffs in the Actions, as well as their skill and experience in the specialized field of securities litigation, support the requested fee.

Finally, courts repeatedly have recognized that the quality of the opposition faced by Plaintiffs' Counsel should also be taken into consideration in assessing the quality of counsel's performance.[9] Here, Plaintiffs' Counsel achieved the excellent Settlement notwithstanding the

---

[8]    Plaintiffs' Counsel specialize in complex securities litigation and are highly experienced in RMBS litigation, with a successful track record of significant recoveries in securities cases throughout the country. *See* RGRD Decl., ¶9, Ex. J; Kolker Decl., ¶2, Ex. I; Sheils Decl., ¶2., Ex. L.

[9]    *See, e.g.*, *Marsh*, 265 F.R.D. at 148 ("The high quality of defense counsel opposing Plaintiffs' efforts further proves the caliber of representation that was necessary to achieve the Settlement."); *Veeco*, 2007 WL 4115808, at *7 (among the factors supporting a 30% award of attorneys' fees was that defendants were represented by "one of the country's largest law firms"); *Adelphia*, 2006 WL 3378705, at *3 ("The fact that the settlements were obtained from defendants represented by 'formidable opposing counsel from some of the best defense firms in the country' also evidences the high quality of lead counsels' work.").

formidable opposition of two of the nation's foremost defense firms – Sullivan & Cromwell LLP and Gibson Dunn & Crutcher – that presented a top-notch defense, and spared no effort in representing their clients.  *See* Leahy Decl., ¶161.

### 5.    Second Circuit Precedent Supports the 21% Fee as a Reasonable Percentage of the Total Recovery

As discussed above, the requested 21% fee is well within the range of fees that courts in the Second Circuit and around the country have awarded in comparable complex cases.  *See supra,* §II.C.; *Comverse*, 2010 WL 2653354, at *3.  Accordingly, a 21% fee is reasonable in relation to the size of the Settlement.

### 6.    Public Policy Further Supports the Requested Fee

Public policy strongly favors rewarding firms for bringing successful securities actions like the Actions.  *See Flag Telecom*, 2010 WL 4537550, at *29 (if the "important public policy [of enforcing the securities laws] is to be carried out, the courts should award fees which will adequately compensate [Plaintiffs'] Counsel for the value of their efforts, taking into account the enormous risks they undertook"); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 373 (S.D.N.Y. 2002) (same); *Hicks*, 2005 WL 2757792, at *9 (same). Plaintiffs' Counsel should be rewarded, not only for bringing the Actions, but for successfully pursuing and prevailing in the *NECA* appeal, which involved several issues of first impression and which favorably affected not only the Actions but ***all*** RMBS class actions with class standing issues.  Given this extraordinarily beneficial impact on not only the Actions but most RMBS class actions, public policy favors rewarding Plaintiffs' Counsel.

### 7.    Plaintiffs' Approval of the Requested Fee

As discussed above, the requested fee is based upon the tiered-structure fee agreement negotiated by NECA.  NECA Decl., ¶18.  The tiered-structure results in a fee based on the amount of the recovery obtained for the Settlement Class and incentivized Plaintiffs' Counsel to recover the

greatest amount possible for the Settlement Class. *Id.* NECA specially retained Professor Miller to advise it with regard to merits, settlement, and attorney's fee issues. *Id.*, ¶12. Both NECA and PFRS have approved and fully endorse Plaintiffs' Counsel's fee and expense request. NECA Decl., ¶17; PFRS Decl., ¶5.[10]

In such circumstances, the Second Circuit has directed district courts to "give serious consideration to negotiated fees because . . . the agreed-upon fee will offer the best indication of a market rate." *In re Nortel,* 539 F.3d at 133. This reasoning is consistent with the PSLRA, which was intended to encourage sophisticated and financially interested investors like Plaintiffs to assume control of securities class actions. H.R. Conf. Rep. No. 104-369, at *32 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 731. Congress believed that these institutions would be in the best position to monitor the prosecution of the Actions, to assess the quality of counsel's representation, and to determine a fair fee. Here, Plaintiffs played an active role in the litigation and closely supervised the work of Plaintiffs' Counsel. *See* NECA Decl., ¶¶2, 8; PFRS Decl., ¶1. Accordingly, Plaintiffs' endorsement of the fee request supports its approval. *See, e.g.*, *Veeco*, 2007 WL 4115808, at *8 ("public policy considerations support the award in this case because the Lead Plaintiff . . . – a large public pension fund – conscientiously supervised the work of lead counsel and has approved the fee request").

### III. PLAINTIFFS' COUNSEL'S EXPENSES ARE REASONABLE AND SHOULD BE APPROVED FOR RECOVERY

Plaintiffs' Counsel's application includes a request for charges and expenses that were reasonably incurred in litigating the claims of the Settlement Class. Plaintiffs' Counsel's charges and expenses are reasonable and properly recovered by counsel. *See, e.g.*, *In re China Sunergy Sec.*

---

[10] Under the fee agreement, Lead Counsel are actually entitled to seek more than 22% of the Settlement Amount. *See* NECA Decl., ¶19. However, as a concession to the Settlement Class, Plaintiffs' Counsel seeks less than they were entitled to under the agreement. *Id.*

*Litig.*, No. 07 Civ. 7895 (DAB), 2011 WL 1899715, at *6 (S.D.N.Y. May 13, 2011) (in a class action, attorneys should be compensated "'for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were "incidental and necessary to the representation"'"); *Flag Telecom*, 2010 WL 4537550, at *30.

As set forth in detail in Plaintiffs' Counsel's fee and expense declarations, Plaintiffs' Counsel requests an award of $1,236,390.04 in expenses for prosecuting the Actions for the benefit of the Settlement Class.  RGRD Decl., ¶6; Kolker Decl., ¶20; Sheils Decl., ¶18.  These expenses are the type that are customarily incurred in litigation and routinely charged to clients billed by the hour. They include expert fees, document-management/litigation support, computerized research, mediation costs, travel expenses, photocopying, long distance telephone and facsimile charges, postage, delivery expenses, and filing fees.[11]

## IV.   CONCLUSION

For all of the foregoing reasons, Plaintiffs and Plaintiffs' Counsel respectfully request that the Court award Plaintiffs' Counsel attorneys' fees of 21% of the Settlement Amount and $1,236,390.04 in expenses, with interest on both amounts at the same rate as earned by the Settlement Fund.

DATED:  February 18, 2016                Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
ARTHUR C. LEAHY
THEODORE J. PINTAR
LUCAS F. OLTS

s/ Arthur C. Leahy
ARTHUR C. LEAHY

---

[11]   The Notice informed Settlement Class Members that Plaintiffs' Counsel would apply for expenses in an amount not to exceed $1.5 million, plus interest.  Sylvester Decl., Ex. A.  The expenses actually requested, $1,236,390.04, are well below that amount.

1115655_1

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
DAVID A. ROSENFELD
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
drosenfeld@rgrdlaw.com

Lead Counsel for Plaintiff NECA-IBEW Health &
Welfare Fund

CAVANAGH & O'HARA
PATRICK J. O'HARA
407 East Adams Street
Springfield, IL  62701
Telephone:  217/544-1771
217/544-9894 (fax)

Additional Counsel for Plaintiff NECA-IBEW
Health & Welfare Fund

WOLF HALDENSTEIN ADLER
  FREEMAN & HERZ, LLP
LAWRENCE P. KOLKER
MICHAEL LISKOW


                s/ Lawrence P. Kolker
                LAWRENCE P. KOLKER

270 Madison Avenue
New York, New York  10016
Telephone:  212/545-4600
212/545-4653 (fax)

Counsel for Plaintiff The Police and Fire
Retirement System of the City of Detroit

- 21 -

KOHN, SWIFT & GRAF, P.C.
JOSEPH C. KOHN
DENIS F. SHEILS
WILLIAM E. HOESE
BARBARA L. GIBSON


                      s/ Denis F. Sheils
                    DENIS F. SHEILS

One South Broad Street
Suite 2100
Philadelphia, PA  19107-3389
Telephone:  215/238-1700
215/238-1968 (fax)

Counsel for Plaintiff The Police and Fire
Retirement System of the City of Detroit

- 22 -

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 18, 2016, I caused the foregoing Memorandum of Law in

Support of Plaintiffs' Counsel's Motion for an Award of Attorney's Fees and Expenses to be served

electronically on all ECF participants.

s/ Arthur C. Leahy

ARTHUR C. LEAHY

1115655_1